**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **RANDY COLE and KAREN COLE,** | § | |
| **INDIVIDUALLY and as NEXT FRIENDS** | § | |
| **OF RYAN COLE,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 2:12-cv-00607** |
| | § | |
| **MICHAEL HUNTER, MARTIN** | § | |
| **CASSIDY, CARL CARSON, and THE** | § | |
| **CITY OF SACHSE, TEXAS,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' SECOND MOTION & BRIEF TO DISMISS FOR FAILURE TO STATE A CLAIM & ALTERNATIVE REQUEST FOR RELIEF BASED ON IMMUNITY FROM SUIT

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................................ii

INDEX OF AUTHORITIES ...........................................................................................................iv

I.    SUMMARY OF ARGUMENT ...........................................................................................1

II.   FACTUAL AND LEGAL BACKGROUND........................................................................2

III.  ARUGMENT AND AUTHORITIES ..................................................................................3

    A. The Court can Properly Consider Attachments to the Pleadings in the Fifth
       Circuit. ...........................................................................................................................4

    B. The First Amended Complaint, Taken by Itself, Satisfies the 12(b)(6)
       Requirements ................................................................................................................5

        1. The First Amended Complaint validly states a claim for clearly excessive
          deadly force ..........................................................................................................5

        2. "Spinning" the allegations of the First Amended Complaint does not change
          them. ....................................................................................................................7

        3. The First Amended Complaint's allegations are supported by Hunter's
          previous sworn statement ....................................................................................8

        4. Judicial estoppel prohibits the Defendants' latest "perception" theory ..............9

        5. The physical evidence establishes the events did not occur as Defendants
          claim ..................................................................................................................10

    C. The First Amended Complaint Properly Alleges a Fourth Amendment Violation.12

        1. The Defendants' latest argument does not marry with their earlier sworn
          stance. ................................................................................................................13

        2. The cases cited by Defendants have no meaningful application to this case......14

        3. While not cited by Defendants, Fifth Circuit precedent supports the
          Plaintiffs. ...........................................................................................................15

    D. The First Amended Complaint Validly States a Claim for Unconstitutional
       Policies, Training, and Supervision ...........................................................................18

    E. The First Amended Complaint Validly States a Claim for Conspiracy to
       Manufacture Evidence and to Use Perjured Testimony. ...........................................19

1.  **The Fifth Circuit's decision in Castellano permits Plaintiffs' claim and denies Defendants absolute immunity.** .................................................................**20**

2.  **Ryan Cole's plea bargain on the firearm charge does not bar this claim, as the focus is on the dismissal of his aggravated assault of a peace officer.** .................**22**

F.  **The Defendants Are Not Entitled to Qualified Immunity at This Stage.** .................**23**

G.  **Randy and Karen Cole Have Stated Constitutional Violations and Bystander Claims Under Texas Law.** ...........................................................................................**24**

IV.  **CONCLUSION AND PRAYER** ...........................................................................................**25**

# INDEX OF AUTHORITES

## **Cases**

*Atterberry v. Nicona gen. Hosp.*,
430 F.3d 245 (5th Cir. 2005) ............................................................................. 17, 24

*Bell Atlantic Corp. v. Twombly*,
550 U.S.544 (2007)...................................................................................................... 3, 5

*Brosseau v. Haugen*,
543 U.S. 194 (2004)..................................................................................................... 13, 24

*Buckley v. Fitzsimmons*,
509 U.S. 259 (1993)............................................................................................................ 22

*Bustos v. Martini Club, Inc.*,
599 F.3d 458 (5th Cir. 2010) ...................................................................................... .20

*Castellano v. Fragozo*,
352 F.3d 939 (5th Cir. 2003) ............................................................................. 19, 20, 21

*Chapa v. Traciers & Assoc.*,
267 S.W.3d 386 (Tex. App. —Houston [14th Dist.] 2008, no pet.)............................. 25

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ........................................................................................ 3, 4

*Coon v. Ledbetter*,
780 F.2d 1158 (5th Cir. 1986) ........................................................................................ 24

*Crowe v. Henry*,
43 F.3d 198 (5th Cir. 1995) ............................................................................................... 4

*Cuvillier v. Taylor*,
503 F.3d 397 (5th Cir. 2007) ............................................................................................. 3

*Franka v. Velasquez*,
332 S.W.3d 367 (Tex. 2011)..................................................................................... 19, 20

*Freeman v. Gore*,
483 F.3d 404 (5th Cir. 2007) ......................................................................................... 15

*Garczynski v. Bradshaw*,
573 F.3d 1158 (11th Cir 2009) ....................................................................................... 14

*Gonzalez v. City of Corpus Christi*,
2011 WL 147741 (S.D. Tex. 2011) .............................................................................. 21

iv

*Good v. Curtis*,
601 F.3d 393 (5th Cir. 2010) ................................................................. 20

*Graham v. Connor*,
490 U.S. 386 (1989) ............................................................................... 13

*Green v. Montgomery*,
219 F.3d 52 (2d Cir. 2000) ..................................................................... 23

*Harris v. Rivera*,
2013 WL 246709 (N.D. Tex. 2013) ........................................................ 22

*Houston v. Partee*,
978 F.2d 362 (7th Cir. 1992) .................................................................. 22

*In re Oparaji*,
698 F.3d 231 (5th Cir. 2012) .................................................................... 9

*In re Radioshack Corp. ERISA Lit.*,
547 F.Supp.2d 606 (N.D. Tex. 2008) ....................................................... 4

*Johnson v. Morel*,
876 F.2d 477 (5th Cir. 1989) .................................................................. 14

*Johnson v. Waters*,
317 F.Supp.2d 726 (E.D. Tex 2004) ....................................................... 13

*Landreth v. Reed*,
570 S.W.2d 486 (Tex. Civ. App. —Texarkana 1978, no writ) ................... 25

*Manis v. Lawson*,
585 F.3d 839 (5th Cir. 2009) ..................................................... 15, 16, 17

*Malley v. Briggs*,
475 U.S. 335 (1986) ............................................................................... 21

*Newman v. Guedry*,
703 F.3d 757 (5th Cir. 2012) ............................................................ 23, 24

*Neville v. Amer. Republic Ins. Co.*,
912 F.2d 813 (5th Cir. 1990) .................................................................... 4

*Ontiveros v. City of Rosenberg, Tex.*,
464 F.3d 379 (5th Cir. 2009) .................................................................. 15

*Pegram v. Herdrich*,
530 U.S. 211 (2000) ................................................................................. 9

*Posr v. Doherty*,
944 F.2d 91 (2d Cir. 1991) ........................................................................... 23

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000) ....................................................................................... 4

*Rehberg v. Paulk*,
132 S.Ct. 1497 (2012) ................................................................................... 21

*Reyes v. Bridgewater*,
362 Fed. Appx. 403 (5th Cir. 2010) ...................................................... 16, 24

*Saucier v. Katz*,
533 U.S. 194 (2001) ...................................................................................... 13

*Scanlan v. Tex. A&M Univ.*,
343 F.3d 533 (5th Cir. 2003) .......................................................................... 8

*Scott v. Harris*,
550 U.S. 372 (2007) ...................................................................................... 14

*Tennessee v. Garner*,
471 U.S. 1 (1985) .............................................................................. 12, 13, 23

*Thomson v. Salt Lake Co.*,
584 F.3d 1304 (10th Cir. 2009) .................................................................... 15

*United Serv. Auto. Ass'n v. Keith*,
970 S.W.2d 540 (Tex. 1998) ......................................................................... 25

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*,
355 F.3d 370 (5th Cir. 2004) .......................................................................... 4

## Statutes

42 U.S.C. § 1983 ...................................................................................... 2, 17

Tex. Penal Code Ann. § 9.34 ....................................................................... 17

## Rules

Fed. R. Civ. P. 12 .............................................................................. 1, 3, 5, 23

## Secondary Authority

5A Wright & Miller, *Federal Practice & Proceedure* § 1327 (3d ed. Supp. 2013) ...................... 4

**TO THE HONORABLE REED O'CONNOR, UNITED STATES DISTRICT JUDGE:**

**COME NOW** Plaintiffs and file their *Brief in Opposition to Defendants' Second Motion & Brief to Dismiss for Failure to State a Claim & Alternative Request for Relief Based on Immunity from Suit*, and would respectfully show the Court the following:[1]

## I.    SUMMARY OF ARGUMENT

Under Rule 12(b)(6), the legal issue before the Court is a narrow one:  do the allegations of the First Amended Complaint – which must be accepted as true and which must be given every reasonable intendment and inference – state a claim upon which relief can granted by this Court?  Nothing less, nothing more.  In the end, the dispositive issues in this case are factual, not legal – focused on hotly contested versions of the events surrounding Ryan Cole's shooting.

The Defendants' version of events is as follows. When Hunter first saw Cole, Cole was facing away from him and was holding a dark colored pistol to the right side of his head. Before Hunter could give any commands or identify himself, Cole suddenly turned around and pointed the dark colored hand gun directly at Hunter causing Hunter to be in fear of his life and the lives of his fellow officers.  According to Hunter, this was the act that justified his shooting of Ryan Cole.  Cassidy essentially corroborates Hunter's account.  Defendant Carson, who did not fire his weapon, states in substance that his view of Cole was obscured during the relevant time period and he did not fire because of a cross-fire concern.

The allegations in the First Amended Complaint are that Cole was actually facing ***away*** from Hunter when he was shot, that Cole was ***unaware*** of the presence of the Defendants, that Cole was pointing a pistol ***at his own head*** at the time he was shot (not at Hunter), and that Cole's weapon discharged as the result of Cole being shot by the Defendants.

---

[1] Plaintiffs shall refer to this pleading as their "Response" and *Defendants' Second Motion & Brief to Dismiss for Failure to State a Claim & Alternative Request for Relief Based on Immunity from Suit* (Doc. 70) as "Defendants' Motion" or the "Motion."

Attached and incorporated into the First Amended Complaint and properly considered by the Court is the Affidavit of Mr. Tom Bevel, a board-certified crime scene reconstruction consultant. Mr. Bevel's investigation included a trajectory analysis from the relative positions of the participants at the time of the shooting and concluded as follows: (1) there was no warning given by any of the Defendants to Cole prior to the shooting; (2) the bullet wounds to the right side of Cole's head were ***inconsistent with the scenario claimed by the Officers*** to the effect that Cole was pointing a dark colored handgun directly at them at the time the shooting occurred and ***instead establishes that Cole was pointing the weapon in question at his own head*** at the time he was shot; (3) that there was no evidence that Cole was or could have been aware of the Officers' presence before he was shot; and (4) that the bullet wounds to Cole's left arm and back are ***inconsistent with the Defendants' claim*** that Cole was facing them at the time he was shot.

Also attached and adopted into the First Amended Complaint is the Affidavit of Mr. Timothy Braaten, the former Director of the Texas Commission on Law Enforcement Standards and Education. Mr. Braaten testified that the ***Officers' account*** of the shooting was ***contrary to the physical evidence***, that ***Cole was not a threat*** to any of the Officers when he was shot, and that the shooting of Cole ***was not justified*** and was ***objectively unreasonable***.

These fact issues will exist until the jury returns its verdict in this case. Because Plaintiffs have properly pleaded their claims, the Defendants' Motion and its request for dismissal should be denied, as should their claim of qualified immunity.

## II.    FACTUAL AND LEGAL BACKGROUND

This case is a 42 U.S.C. § 1983 claim based on the shooting of 17-year-old Ryan Christopher Cole by Sachse Police Officers on October 25, 2010. Plaintiffs have alleged causes of action based on an unconstitutional use of deadly force, failure to train and to supervise, and a

subsequent conspiracy to manufacture evidence and make use of perjured testimony. This cause was transferred to the Northern District on July 15, 2013. (Doc. No. 76). This Court gave Plaintiffs the option to rely upon their existing Complaint or file additional documents in the form of a Rule 7 Reply or First Amended Complaint. (Doc. No. 65).

Subsequently, to afford Defendants complete factual detail of their claims, Plaintiffs filed a thirty-two page First Amended Complaint. (Doc. No. 67). Attached to the First Amended Complaint were five exhibits: three detailing the City of Sachse's policies regarding the use of deadly force and two affidavits of expert witnesses. In forming their opinions, Plaintiffs' experts relied upon the statements of Defendants Cassidy and Hunter, each of whom gave detailed, sworn accounts of the shooting in an attempt to prosecute Ryan Cole for Aggravated Assault on a Public Servant. Those statements are attached as Exhibits 1 and 2 to the Appendix filed in support of this Response (hereinafter, "Appendix") at pages 1 and 24, respectively.

### III. ARGUMENT AND AUTHORITIES

Rule 12(b)(6) motions are viewed with disfavor in the Fifth Court and are rarely granted or upheld. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). In considering a motion to dismiss the Court presumes that all general allegations of the First Amended Complaint embrace all specific facts that are necessary to support the claim. *See Steele Company v. Citizens for a Better Environment*, 523 U.S. 83, 98 (1998). The well-pleaded allegations of fact contained in the First Amended Complaint and every inference that is fairly deducible from the facts alleged must be accepted as true for purposes of the Motion, even including facts that are alleged on information and belief. *Bell Atlanta Corporation v. Twombly*, 550 U.S. 544, 556 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

In the Fifth Circuit, a motion to dismiss for failure to state a claim essentially admits all the facts alleged in the First Amended Complaint and, in effect, challenges the plaintiff's right to

any relief whatsoever based on the case as pleaded. *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995). Finally, as with any dispositive motion, the Court cannot weigh evidence, decide fact questions, or determine what reasonable inferences a jury might draw from the pleaded facts or evidence. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-47 (2000).

A.      **The Court Can Properly Consider Attachments to the Pleadings in the Fifth Circuit.**

Although the Defendants have on several previous occasions requested the filing of a Rule 7 Reply, they now object to the Court's consideration of the Affidavits of Mr. Bevel and Chief Braaten as well as the other exhibits attached to the First Amended Complaint. *See* Motion, n.1. Likewise, without any authority, the Defendants suggest the Court disregard or strike the exhibits to the First Amended Complaint for an alleged violation of Rule 8(a)(2). *Id.*

The Defendants' footnote specifically references the well-known text of Wright & Miller in connection with the Defendants' assertions that the items attached to the First Amended Complaint may not be considered by this Court. The applicable section of Wright & Miller, Federal Practice & Procedure, Section 1327, n.10 (3d ed. Supp. 2013) ***actually*** states: "[T]he contents of any attached writing ***must*** be considered by the Court in a wide variety of contexts— for example, in determining the sufficiency of the statement of a claim for relief or a defense on motion to dismiss under Rule 12(b)(6)." (emphasis supplied).

Likewise, the rule in the Fifth Circuit is well settled that a document attached to or incorporated in the First Amended Complaint ***is*** to be considered a part of the Plaintiffs' First Amended Complaint for all purposes. *Collins v. Morgan Stanley Dean Witter*, supra; *Accord. Neville v. Amer. Republic Ins. Co.*, 912 F.2d 813, 814 n.1 (5th Cir. 1990); *U.S. ex re. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). The rule is the same in the Northern District. *In re RadioShack Corp. ERISA Lit.*, 547 F.Supp.2d 606, 610 (N.D. Tex 2008).

Plaintiffs assume that the failure to cite any of this directly adverse authority in the Motion resulted from oversight.  Regardless, a basic review of these cases makes it abundantly clear that the Exhibits attached to Plaintiffs' First Amended Complaint are properly, if not mandatorily, considered in the context of a 12(b)(6) motion to dismiss

**B.      The First Amended Complaint, Taken by Itself, Satisfies the 12(b)(6) Requirements.**

Although the First Amended Complaint's attachments are properly considered, in the context of this motion, the First Amended Complaint is more than able to stand on its own.  In satisfying Rule 12(b)(6)'s requirements, all that is required is good faith factual plausibility. *Bell Atlantic Corp. v. Twombly*, supra. Neither factual **_probability_**, nor even factual detail need be pled in order to survive a motion to dismiss for failure to state a claim. *Twombly* at 553-556. However, Plaintiffs respectfully submit that their thirty-two page First Amended Complaint is in fact not only plausible, but probable and is accurate and detailed as well.

> 1.    **The First Amended Complaint validly states a claim for clearly excessive deadly force.**

For the convenience of the Court, Plaintiffs will set forth certain operative allegations of the First Amended Complaint. After setting forth relevant background information in ¶¶ 4.1 through 4.8, Plaintiffs' First Amended Complaint alleges as follows:

> 4.9   Later, Ryan emerged from the woods within view of his grandparents who were waiting for him in the parking lot of the CVS Drugstore. At the time he left the wooded area, Ryan had his back turned to Murphy Road and was facing toward the woods from which he had just exited. At that time, Ryan Cole was still holding the 9 mm handgun in his right hand with the weapon close to the right side of his head. Although it was unknown to Ryan Cole at the time, three Sachse police officers were also present in that area. One was Michael Hunter, who was a motorcycle police officer who was armed with two weapons. One was a Taser, an immobilizing device and the other was a .40 caliber semi-automatic Glock handgun. Both of these weapons had been issued to Hunter by the City of Sachse Police Department. A second officer, Lt. Martin Cassidy was a patrol supervisor and was also armed with a .40 caliber semiautomatic Glock handgun issued to him by the City of Sachse Police Department. A third officer, Carl Carson was a patrol officer who was also

armed with a Taser immobilizing device and a .40 caliber semi-automatic handgun issued to him by the City of Sachse Police Department.

4.10  At the time Defendant Hunter first observed Ryan Cole emerge from the woods, Ryan Cole was facing away from the Defendant Hunter, still holding the 9 mm handgun in his right hand with the weapon pointing toward his own head. At that time, Ryan Cole posed no immediate threat of death or serious injury to anyone. The Defendant Hunter did not identify himself as a police officer or give any command or instruction of any kind to Ryan Cole. The Defendant Hunter also gave no warnings of any kind to Ryan Cole. At all times relevant to this suit, it was both feasible and necessary for the Defendant Hunter to identify himself as a police officer and give a warning to a citizen prior to the use of deadly force. Instead, the Defendant Hunter immediately opened fire on Ryan Cole with his handgun firing several shots, at least two of which stuck Ryan Cole. One struck Ryan Cole in his left upper arm and the second struck Ryan Cole in the lower portion of his left arm. The lower shot went through Ryan Cole's left arm and then entered the left side of his back completely incapacitating him.

4.11  At the time he was shot by the Defendant Hunter, Ryan Cole, who had little or no formal firearms training, was holding the 9mm handgun with his finger inside the trigger guard of the weapon. At the time he was struck by Defendant Hunter's gunfire, Ryan Cole involuntarily grasped or clutched his fingers resulting in the involuntary discharge of one round from that weapon into Ryan Cole's skull and brain. The involuntary discharge of the weapon in Ryan Cole's possession was directly caused by the action of Defendant Hunter in shooting him.

4.12  As Ryan Cole was falling to the ground from Defendant Hunter's gunfire, Defendant Martin Cassidy also opened fire on Ryan Cole, also without identifying himself as a police officer or giving any warning, at a distance of well over 100 feet. At the time the Defendant Cassidy opened fire on Ryan Cole, Ryan Cole still posed no immediate threat of death or serious injury to anyone. Upon information and belief, Defendant Carson did not fire his handgun but made no effort to intervene to stop either Defendant Cassidy or Defendant Hunter from unlawfully firing their respective weapons.

4.13  At all times relevant to this suit, Defendants Hunter, Cassidy and Carson were licensed peace officers under the laws of the State of Texas and were purportedly acting within the course and scope of their employment for the City of Sachse, Texas Police Department. Defendants Hunter, Cassidy and Carson each acted under color of state law and Defendants Hunter and Cassidy each participated directly or indirectly in the unlawful and unprovoked shooting of Ryan Cole.

4.14  While Ryan Cole lay unconscious and presumably bleeding to death from potentially fatal wounds to his brain, to his left side and back, and to his left arm, none of the individual Defendants offered or provided Ryan Cole any first aid or medical attention whatsoever. Although they were trained to do so, they neither

attempted to control his profuse bleeding nor did anything to protect his airway or maintain his ability to breathe. Instead, the individual Defendants left Ryan Cole lying in a partially facedown position on the ground. From the time he was shot until Garland Fire Department paramedics arrived on the scene, a period of several minutes, none of the individual Defendants did anything to attempt to save Ryan Cole's life.

## 2. **"Spinning" the allegations of the First Amended Complaint does not change them.**

Instead of engaging these allegations, Defendants attempt to construe, interpret, or "spin" them. Worse still, the Motion attempts, inexplicably, to state its own ***competing*** factual version of events throughout its presentation. After discussing generally portions of ¶ 4.9, the Defendants make the following statement:

Again, according to Plaintiffs' own admissions, Ryan Cole was pointing his handgun in a raised and upright position, against or towards his own right temple. (First Amended Complaint, Doc. 67 pp. 5-6 ¶ 4.9). (Obviously if Plaintiff's version of events is true, Ryan Cole had to move the gun or raise it upwards to reach his head.) It should come as no surprise, *based on Plaintiffs' own admissions*, that Ryan Cole's actions of holding a firearm in a pointing position or moving it was simultaneously perceived by Defendant Police Officer Hunter and Defendant Police Lieutenant Cassidy as being such dangerous and potentially deadly conduct that the two Officers – who had never met Ryan Cole before – independently yet virtually simultaneously fired shots at Ryan Cole.

Motion at p. 4 (original emphasis).

These allegations are remarkable for several reasons. First, they are contrary to the allegations of the First Amended Complaint, which must be taken as true at this stage of the proceeding. Second, there is no pleading by the Plaintiffs that Ryan Cole ever pointed the gun at anyone other than himself or that he in any manner raised it or positioned it in the direction of either of the Defendant Officers. Further, the allegations of the Motion contain apparent statements of evidence ***by the Defendants***, such as the Defendants' claim they had never met Ryan Cole before, which are not factually supported in the record and are merely self-serving characterizations of the shooting by the Officers that are likewise unsupported in the record.

**3.   The First Amended Complaint's allegations are supported by Hunter's previous sworn statement.**

In the Fifth Circuit, if a document is central to the claim and is incorporated by reference into the First Amended Complaint, it is not considered "outside the pleading" and can be considered by the Court.  *See Scanlan v. Tex. A&M Univer.*, 343 F.3d 533, 536 (5th Cir. 2003). The First Amended Complaint directly alleges and refers to the contents of the sworn statements of the three Officers given to the Garland Police Department immediately following the investigation, including the contention in the statements that "[a]t the time of the shooting, Ryan Cole was facing Defendant Hunter and that Ryan Cole had lowered and pointed his weapon directly at Defendant Hunter."  First Amend. Compl, ¶¶ 4.15 – 4.16.

Attached as Exhibit 3 to the Appendix at page 56 is a copy of the sworn statement of Defendant Hunter to the Garland Police.  In his sworn statement, Defendant Hunter stated, in relevant part:

> As I was moving toward the tree line, the suspect walked out from the brush approximately 10 to 20 feet from me with his back to me.  Before I had a chance to give any commands, ***the suspect suddenly turned towards me and pointed a dark colored handgun directly at me.***  I was in fear of my life as well as the lives of Lt Cassidy and Officer Carson.  I then immediately fired four rounds at him with my duty weapon…

Appendix at p. 58 (emphasis supplied).[2]  The Court can now compare this to a portion of the Motion:

> [R]yan Cole's actions of holding a firearm in a pointing position or moving it was [sic] simultaneously ***perceived*** by Defendant Police Officer Hunter and Defendant Police Lieutenant Cassidy as being such dangerous and ***potentially deadly conduct***…

---

[2] Under *Scanlan*, the Court can certainly consider this Exhibit, should it wish to do so.  Alternatively, it can simply rely on Plaintiffs' characterization and discussion of it in the First Amended Complaint at ¶ 4.15-4.16.

Motion at p. 3 (emphasis supplied).   Defendants continue, "[R]yan Cole's conduct was so dangerous that two Police Officers virtually ***simultaneously perceived a deadly danger*** and therefore independently but simultaneously fired at Ryan Cole."   *Id*. at p. 8.

All these self-serving statements as to the "perceptions" of the Defendants, although completely irrelevant legally at this stage of the proceeding, are intended to set the stage for a frantic effort by all the Defendants to distance themselves from the actual sworn statements the Defendants Hunter and Cassidy gave the Garland Police immediately after the incident.   As previously noted in that statement, neither Hunter nor Cassidy claimed any error, mistake of perception, misunderstanding, or confusion of any kind.   Instead, they unambiguously attempted to justify the shooting of Ryan Cole by stating that Cole had turned toward Hunter and, while facing him, had directly pointed a dark colored handgun at Hunter.

The Motion's "perception" notion is nothing more than an after-the-fact attempt at damage control by the Defendants to salvage matters.   Caught with their hand in the cookie jar, the Defendants now know they have been caught, as the physical evidence and forensic science prove that Defendants were simply not truthful or accurate in recounting their interaction with Ryan Cole.   The Defendants cannot simply re-create history for their own benefit.

### 4.   Judicial estoppel prohibits the Defendants' latest "perception" theory.

The doctrine of judicial estoppel prevents a party from asserting a position in a legal proceeding that is inconsistent with a position previously taken by the same party under oath in prior litigation, especially when allowing the party to take an inconsistent position would prejudice the opposing party.   *Pegram v. Herdrich*, 530 U.S. 211, 228 (2000).   Judicial estoppel not only applies to the same proceeding, but also prevents a person from assuming a position in one court entirely different from, and inconsistent with, that taken by him or her under oath in another court or proceeding. *In re Oparaji*, 698 F.3d 231, 235 (5th Cir. 2012).

The latter situation is precisely the one presented here.  To avoid prosecution themselves, in the criminal proceedings against Ryan Cole, Officers Hunter and Cassidy sought to persuade the prosecuting attorney, the grand jury, and (had it proceeded to trial) the presiding judge that the version of the events given in their sworn statements was factually true. They cannot now avoid those assertions given under oath. The doctrine of judicial estoppel requires them to be bound to those positions for all purposes in this litigation, including this Motion.

### 5.   **The physical evidence establishes the events did not occur as Defendants claim.**

The Defendants feign an inability to understand the allegations of the First Amended Complaint as somehow being "conclusory," as opposed to being straightforward statements of fact. The First Amended Complaint alleges at all times relevant to the suit, Ryan Cole was pointing a handgun at his own head.  First Amend. Compl. at ¶¶ 4.8 - 4.10. The First Amended Complaint does not allege or even mention that Ryan Cole pointed or positioned the gun in any manner other than that stated in the First Amended Complaint. *See Id*. The First Amended Complaint alleges that Ryan Cole had his back turned to the Officers as he emerged from the woods. *Id.* at ¶ 4.10.   This specific allegation of the First Amended Complaint is virtually identical to the statement Hunter made to the Garland Police. *See* Appendix at p. 58.

The Defendants claim to be unable to understand how the position of Cole's body and related physical evidence affects the Defendants' claimed justification for use of deadly force. *See* Motion, pp. 5-6.  Defendants do not engage or even attempt to refute the operative portions of the First Amended Complaint which are restated here again for the Court's convenience.

4.19 In the medical records, the doctors who cared for Ryan Cole described what they referred to as "stippling" or what is also known as "tattooing" around the entrance wound on the right side of Ryan Cole's head. The "stippling" or "tattooing" of human skin is an injury to the skin that is caused by the penetration of gunshot residue that has been recently discharged from the barrel of a firearm. Stippling or tattooing cannot occur unless the firearm that caused it was discharged in close and immediate proximity to the skin that is stippled or tattooed. This objective physical

finding by Ryan Cole's surgeons conclusively establishes that Ryan Cole's weapon was not pointed at Defendant Hunter when he was shot as Defendants Hunter, Cassidy and Carson falsely claimed but, in fact, was pointed at his own head.

4.20  Further, the physical evidence directly contradicts the individual Defendants' sworn version of events. Defendant Hunter, supported by Defendants Cassidy and Carson, told the investigating Garland detectives that when Defendant Hunter first observed Ryan Cole, Ryan Cole was facing away from Defendant Hunter. Further, Defendant Hunter told the Garland investigators before he had the opportunity to give any command or warning to Ryan Cole, Ryan Cole suddenly turned in a counterclockwise fashion to Ryan Cole's left toward Defendant Hunter and "lowered" his handgun pointing it directly at Defendant Hunter. However, in actual fact, the rounds fired by Defendant Hunter struck Ryan Cole in his left arm. One of Defendant Hunter's rounds went through Ryan Cole's left arm and entered the left side of his back fracturing his rib, bruising his left lung and lodged in an area above his liver underneath the skin on the right side of his back. The location of these gunshot wounds and their trajectory within Ryan Cole's body established that it would have been impossible for Ryan Cole to sustain such injuries if he had either been facing the Defendant Hunter at the time he was shot or if he had been pointing a weapon at Defendant Hunter at the time he was shot. Ryan Cole could not have been facing Defendant Hunter because the wounds and their trajectory established that Ryan Cole was standing at roughly a 90 degree angle in relation to Defendant Hunter when he was shot. Further, the bullet wounds and the "stippling" or "tattooing" on Ryan Cole's head would have made it impossible for Ryan Cole to have been pointing the weapon at Defendant Hunter.

All this evidence is explained in even greater detail by Mr. Tom Bevel in his affidavit. (Doc. No. 67-4, also attached to the Appendix at pps. 6-7). Although the Plaintiffs will offer expert testimony on these subjects, a reasonable inference from the evidence as pleaded is that because Cole sustained the tattooing of his skin on the right side of his head from the discharge of the firearm, _**he could not and was not pointing the weapon at Hunter, as Hunter and Cassidy claim**_.  Further, it is _**not physically possible**_ for a person who is shot in the left upper back to be facing the person who shot him, as Hunter claimed in his statements to the police. The physical evidence and forensic science lead to one conclusion: Ryan Cole was not pointing the gun at the Officers, he had the gun pointed to his head, and he posed no immediate threat.

The Officers were objectively unreasonable in their use of deadly force and then lied about why they did so.

## C.       The First Amended Complaint Properly Alleges a Fourth Amendment Violation.

The nature of a citizen's Fourth Amendment rights in connection with the use of deadly force by law enforcement officers has been settled in the United States and in this Circuit since the Supreme Court's decision in *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).  In the context of this case, there are two requirements of the Constitution in such cases. First, if it is feasible to do so, a warning must be given to a citizen by a law enforcement officer before using deadly force at all.  *See Garner*, 471 U.S. at 12.   The First Amended Complaint unambiguously alleges it was feasible to do so.   *See* First Amend. Compl., ¶ 4.10.   The Court will note when Hunter's statement is compared even to the Defendants' cobbled version of events in its motion, ***Hunter admits that he gave no such warning***.  *See* Appendix at p. 58.  Both Plaintiffs' expert witnesses carefully analyzed the digital recording from the body microphone of one of the officers who was present.  *See* Appendix at pps. 5 and 44.[3]   Both confirmed that Hunter did not give any warning and that an unintelligible utterance which could have been the beginning of the word "drop" was made simultaneously with the commencement of fire on Cole by the Officers. *Id*. Even if the Defendants were able to maintain this assertion that is demonstrably false and is also contrary to their prior sworn statements, it would have availed them nothing. The requirement that a peace officer warn a citizen prior to using deadly force if it is feasible to do so is not

---

[3] Texas law requires a police officer to identify himself and announce his presence if it is feasible to do so.  *See* Texas Penal Code, Section 9.51(2).

aspirational but legally required if feasible. In *Johnson v. Waters*, 317 F.Supp.2d 726, 737 (E.D.

Tex. 2004),[4] Chief Judge Leonard Davis stated:

> When Constable Waters did encounter the plaintiff, he reacted by firing off a shot
> rather than reasonably assessing the situation.  While the record bears out the fact
> that Constable Waters yelled "Tyler PD Freeze!" at the door, the record also
> shows the warning was giving at the same time sparks came from Constable
> Waters' gun.  Such is hardly an adequate warning, as required by *Garner*, before
> employing the use of deadly force…"

*Id.* 735-736.

The second requirement of *Tennessee v. Garner* is that a law enforcement officer may

use deadly force only when there is an imminent threat to the life or safety of the officer or some

third person.  *See Garner*, 471 U.S. at 12. The First Amended Complaint unambiguously alleges

that Ryan Cole was ***not*** an imminent threat to the life of Hunter or Cassidy or anyone else at the

time he was shot. *See* First Amended Complaint*, ¶¶* 4.9, 4.12.  Accordingly, Plaintiffs have no

quarrel at all with *Graham v. Connor*, 490 U.S. 386 (1989); *Saucier v. Katz*, 533 U.S. 194

(2001); or *Brosseau v. Haugen*, 543 U.S. 194 (2004).

**1.   The Defendants' latest argument does not marry with their earlier sworn stance.**

The difficulty with the Defendants' argument here is that it is factually groundless.

Neither Hunter nor Cassidy even claimed in their statements that they were reasonably or

otherwise ***mistaken*** as to the conduct of Cole.  Instead, both stated under oath, clearly and

unambiguously that they ***observed*** Cole turn and face Hunter and point a gun directly at Hunter.

Indeed, this was and is their sole and only justification for the use of deadly force.  Try as they

might, Defendants cannot avoid or recreate the actual facts. Moreover, Defendants' allegations

---

[4] The Fifth Circuit dismissed Waters' subsequent appeal because it agreed with the District Court that questions of
fact were presented as to excessive force and qualified immunity.  *Johnson v. Waters*, 120 Fed. Appx. 555, 555 (5th
Cir. 2005).

are irrelevant because the Plaintiffs unambiguously allege that each of the Defendants intentionally shot Cole without probable cause. *See First Amended Complaint*, ¶¶ 4.9, 4.12.

### 2.   <u>The cases cited by Defendants have no meaningful application to this case.</u>

The Fifth Circuit utilizes a three-part test for a 1983 excessive force claim requiring the plaintiff to prove: (1) a significant injury, (2) which resulted directly and only from the use of force that was clearly excessive to the need, and (3) the excessiveness of which was objectively unreasonable. *See Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir. 1989) (*en banc*).

Defendants travel far and wide to attempt to find ***anything*** interpreting the Fourth Amendment to help them. They first visit *Scott v. Harris*, 550 U.S. 372 (2007), where police officers who had been in an extended high speed chase with a suspect intentionally rammed his vehicle knowing that it might kill the suspect inside. *Scott* does not have the slightest relevance to the facts of this case and Defendants cannot seriously contend otherwise. *See* Motion, pp. 5-6.

The Defendants fare no better in their resort to *Garczynski v. Bradshaw*, 573 F.3d 1158 (11th Cir. 2009). Unfortunately, again, Defendants take liberties with distinguishing critical facts. First, there were a variety of visual obstructions to the officers' views. *Id.* at 1162. There was also direct testimony that the deceased pointed the gun at the police officer who then shot him. *Id.* at 1164. Further, there were confusing circumstances in which one officer fell down and was thought by other officers to have been shot by the suspect. *Id.* According to the Court, the officers at the very time of the shooting commanded the suspect to drop the gun. *Id.* at 1168. At that time, the suspect swung the gun from his head in the direction of the officer at which point they fired. *Id.* Under those unique facts, the Court held the shooting was justified. Such is not the case here. Here, there was no confusion and there was no mistake. Here, the Officers claimed they were justified in shooting Cole because he turned and faced Hunter and pointed his gun directly at Hunter in a firing position. *Garczynski* does not aid them.

Equally inapposite is the Defendants' reliance on *Thomson v. Salt Lake County*, 584 F.3d 1304 (10th Cir. 2009). Unmentioned by the Defendants, that case involved officers who were using a police dog in a driving rain storm. *Id.* at 1310. Apparently, the police dog alerted on the suspect who was armed and specifically refused the officer's immediate command to drop the weapon. *Id.* According to the Court, it was undisputed that at some point shortly before Thompson was killed, ***he aimed the gun in the direction of the officers.*** *Id.* at 1311. The ***undisputed*** facts in *Thomson* are the very facts ***disputed*** here, as Plaintiffs set forth previously.

### 3.   While not cited by Defendants, Fifth Circuit precedent supports the Plaintiffs.

The Court may find it strange the Defendants do not cite or refer to a single Fifth Circuit case remotely supporting the Defendants' position. This is because the Fifth Circuit adopts a case-by-case approach that requires specific proof of a specific act by an individual to create an imminent threat to the officers or others so as to justify what would otherwise be murder. It is unclear whether the Defendants in their Motion attempt to imply there was no constitutional violation or that the Plaintiffs' pleading is not, on its face, sufficient to overcome their pleaded defense of qualified immunity. In an abundance of caution, the Plaintiffs will address both.

In general, to prevail on a Fourth Amendment excessive force claim, the plaintiff must show an injury which resulted directly from the use of force that was clearly excessive, and that the excessiveness of the force was clearly unreasonable. *See Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009) (citing *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007).

In regard to the specific application of these standards, the Court first addresses the objective reasonableness of the officers' conduct. In *Manis v. Lawson*, 585 F.3d 839 (5th Cir. 2009), going directly to the reasonableness of the officer's action, Judge Jones stated:

> None of these assertions, however, bear on whether Manis, in defiance of the officers' contrary orders, reached under the seat of his vehicle and appeared to retrieve an object that Zemlik [the police officer] reasonably believed to be a weapon. This was the act that led Zemlik to discharge his weapon and it is undisputed. ***In light of Manis's undisputed actions*** Zemlik's use of force was not excessive.

*Id.* at 845.  (emphasis added.)  The Manis "act" that was required to justify the use of deadly force ***is the very "act" that is hotly disputed in this case***.  Specifically, the Defendants allege the act that justified their action was Cole's turning toward them facing and pointing his pistol at them, while the First Amended Complaint and the physical evidence show otherwise.

One of the most recent cases applying these standards is *Reyes v. Bridgwater*, 362 Fed.Appx. 403, 2010 WL 271422 (5th Cir. 2010), which is cited here for its persuasive value.  In *Reyes* as here, there was a factual dispute as to what actually transpired.  In *Reyes*, the officers testified that after they broke the door down to the deceased's apartment, the deceased, who was holding a knife by his side some distance away from the officer, stepped forward, threw his cigarette at the officer and raised the knife he was holding in a threatening manner at which time the officer shot and killed him.  *See Reyes* at *2-3, slip opinion.  Other witnesses disputed the officer's account.  *Id.* at *4. In that case, as here, the officer sought to justify his conduct ***by virtue of the action of the decedent*** in allegedly stepping forward and raising the knife which caused the shooting, and, but for that specific justification, Officer Bridgwater admitted he would not have shot the deceased.  *See* *3. Regarding the question of a constitutional violation, Judge Haynes writing for the majority in *Reyes* held:

> The Supreme Court has required courts to be differential to the choices made by police officers in high-risk situations.  That deference, however, cannot extend so far as to ignore an officer's violation of the core, established rule that deadly force may not be used "[w]here the suspect poses no immediate threat to the officer and no threat to others." It violates the Fourth Amendment to use deadly force absent such a threat.

Here, there was no "immediate threat" as *Garner* requires.  The evidence, viewed as required in this procedural posture, does not support the district court's conclusion that there was no constitutional violation.  At the summary judgment stage, where the courts should resolve conflicting evidence in favor of the plaintiff, the Court must assume that Ceballos (the deceased) stood, in his own home, with a kitchen knife at his side, swaying slightly from side to side at a safe distance away from the officer when Bridgwater opened fire. When Bridgwater arrived on the scene, furthermore, he was responding to a 911 call reporting a "domestic disturbance with possible violence," he was not, that is anticipating making a felony arrest or necessarily any arrest at all.  …Such a threat is by definition not "immediate" because the individual must still ***do*** something—the Manis act—before the latent threat materializes into any risk of harm.  In that interval, there would have been time for Bridgwater to respond.  Under the facts and in this situation, Bridgwater's use of deadly force absent an ***immediate*** threat from Ceballos was a constitutional violation.

The cases on deadly force are clear: an officer cannot use deadly force without an immediate serious threat to himself or others.  Here, the facts, are unclear; was there such an immediate threat? Bridgwater's version of the facts would say "yes," while the other witnesses' versions would say "no." The case presented here is not one where the law is not clearly established but rather one where the facts are not clearly established. As such, summary judgment was improper.

*Id.*  at *4-5.

To the extent that Defendants are somehow arguing that the use of deadly force on Ryan Cole was justified to prevent him from committing suicide, that contention is contrary to the black-letter law. Texas Penal Code Section 9.34 makes clear deadly force is permitted in limited situations and expressly excludes suicide.

In a 42 U.S.C. Section 1983 action, governmental officers are presumed to be aware of the law related to their office. *See Atterberry v. Nicona Gen. Hosp.*, 430 F.3d 245, 256 (5th Cir. 2005). Therefore, under this scenario as well, the Officers' actions would still violate "clearly established law" as objectively-defined by the Fifth Circuit. *Id.* Accordingly, the Defendants' Motion to Dismiss Count One of the First Amended Complaint should be denied.

**D.      The First Amended Complaint Validly States a Claim for Unconstitutional Policies, Training and Supervision.**

Plaintiffs' First Amended Complaint as to Count Two begins on pp. 15-18, ¶¶ 6.1 to 6.10, whereby Plaintiffs allege and note that Defendants' policies on deadly force facially ignore clearly established law and are constitutionally defective on their face.[5]  Defendants make no mention of this in their Motion.  Defendants' Motion purports to bundle Counts One, Two, and Three together under the same heading; however, reading that section reveals that it does not actually assert any arguments against Claim Two whatsoever.

There are only three passing references specifically to Count Two in the entire Motion. The first is on page 1: "Because there was no excessive force Constitutional violation, the claims against the City also fail."  The second reference is on page 11 of the Motion, where Defendants again note that because Count One fails, then "it is not necessary" to address the City's custom, habit or practices.  The final reference (giving the Defendants the benefit of the doubt) is a vague statement which appears on page 19 of the Motion without any reference to the actual allegations of the First Amended Complaint. Without any actual discussion of the First Amended Complaint and without explaining why or how the Defendants could remotely claim to be entitled to a dismissal of these allegations, dismissal is inappropriate.

To the extent the Defendants attempt to adopt their arguments in regard to Count One as to the improper use of excessive and deadly force, those arguments have previously been responded to and are themselves wholly insufficient to support a motion to dismiss. Defendants appear to condition the dismissal of Counts Two and Three upon the finding that the Officers' actions were justified under the Plaintiffs' facts alleged in Count One or, alternatively, are not

---

[5] Plaintiffs attached these policies to their First Amended Complaint and adopt and incorporate them into this Response, as well.  The Court will note the policy does not require a warning, if feasible, before using deadly force.

arguing other grounds for dismissal. Accordingly, the Defendants' claim of a right to dismiss

Counts Two and Three should be overruled for the reasons previously stated.

**E.      The First Amended Complaint Validly States a Claim for Conspiracy to Manufacture Evidence and to Use Perjured Testimony.**

Count Four of the First Amended Complaint begins on page 23 and encompasses ¶¶ 8.1

through 8.17.   The following operative sections of Count Four of the First Amended First

Amended Complaint are stated here again for the Court's convenience:

> 8.2   As previously set forth in detail, the Defendants Hunter, Cassidy and Carson formed and carried out a conspiracy to falsely charge and convict Plaintiff Ryan Cole of the felony offense of aggravated assault on a public servant, using the state criminal process to do so, based on "evidence" they had manufactured including their own perjured testimony.

> 8.3   At present, the civil laws of the State of Texas, as interpreted by the Supreme Court of Texas, do not provide a remedy or an adequate remedy to protect and compensate the Plaintiffs for such unlawful conduct. Alternatively, Defendants Hunter, Carson and Cassidy have conspired to commit and did commit the common law tort of malicious prosecution under Texas law which proximately caused the Plaintiffs' damages.

Defendants assert that Plaintiffs assert a malicious prosecution claim _**under 1983**_ in

Count Four.  *See* Motion, p. 14.  Defendants note that a claim for malicious prosecution standing

alone does not violate the United States Constitution and, further, that those types of claims are

"just not cognizable under § 1983."  *Id.*  Defendants quote one isolated section of the opinion of

the Court in *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003) (*en banc*).

Plaintiffs do _**not**_ assert a malicious prosecution claim _**under Section 1983**_ but the

Plaintiffs do assert, in the alternative, a _**state law tort claim**_ for malicious prosecution to the

extent the Court finds such a tort is still viable under Texas law.  (*See* Doc. No. 67 ¶ 8.3).[6]

*Franka* can indeed be read as the Defendants have argued and, if so, it could have the undeniable

---

[6] Without agreeing with the Defendants' contentions in this case, as set forth on pages 16-18 of the Motion, Plaintiffs acknowledge that *Franka v. Velasquez*, 332 S.W.3d 367 (Tex. 2011) is breathtaking in its scope, and may well foreclose _any_ claim under state law.

effect of *de facto* absolute governmental immunity **_under state law_** to individual peace officers who knowingly violate the law in the course and scope of their employment.[7]

    1. **The Fifth Circuit's decision in _Castellano_ permits Plaintiffs' claim and denies Defendants absolute immunity.**

    Defendants simply misconstrue or ignore the holding of the *en banc* Fifth Circuit decision of *Castellano v. Fragazo*, 352 F.3d 939, 942 (5th Cir. 2003).  The *Castellano* opinion was written by Judge Pat Higginbotham, who examined in exhaustive detail the legal history relating to all such claims. The following quotation from the opinion may be helpful:

> To the point, causing charges to be filed without probable cause will not, without more, violate the Constitution.  So defined, the assertion of malicious prosecution states no constitutional claim.  **_It is equally apparent that additional government acts that may attend the initiation of a criminal charge could give rise to claims of constitutional deprivation_**. (emphasis added)

*Id.* at 953-954 (emphasis added).  Judge Higginbotham then **_went on_** to hold:

> **_The manufacturing of evidence and the state's use of that evidence along with perjured testimony to obtain Castellaneo's wrongful conviction, undisputedly denied him rights secured by the Due Process Clause_**.  They were not properly dismissed on the basis that no claim was stated or upon the confusing assertion that the Fourteenth Amendment will not support a claim for "malicious prosecution," another example of the uncertainty accompanying the use of the term "malicious prosecution" without lifting up the constitutional claim.

*Id.* at 955 (emphasis added).   Following *Castellano*, the Fifth Circuit has held a conspiracy to violate the Fourteenth Amendment's Due Process Clause by manufacturing evidence and using perjured testimony to obtain an unlawful conviction is actionable under 1983.[8]  *Good v. Curtis*, 601 F.3d 393, 398 (5th Cir. 2010).    District courts have upheld conspiracy claims based on the

---

[7] The Fifth Circuit has indicated (in a case not cited by the Defendants) that it will likely adopt this interpretation of *Franka* and the status of Texas state law.  *See Bustos v. Martini Club, Inc.*, 599 F.3d 458, 463 (5th Cir. 2010).
[8] This includes Defendants' false statements about Cole's movements, his pointing of the weapon at Hunter, and the false statement by Cassidy and Carson that Hunter gave a warning before the Officers fired upon Cole.

Fourth and/or Fourteenth Amendment under Section 1983 since *Castellano* and *Good*.  *See Gonzalez v. City of Corpus Christi,* 2011 WL 147741 at *4-5 (S.D. Tex. 2011).

Defendants ignore the fact that Plaintiffs' claims directly track Judge Higginbotham's instructions in *Castellano* for bringing a Section 1983 claim. The Defendants make no direct contention that Count Four of the First Amended Complaint is insufficient to state a claim for conspiracy under *Castellano*, including the **_specificity_** of Plaintiffs' allegations that the Defendants entered into an unlawful conspiracy to manufacture evidence and to use perjured testimony in an attempt to obtain the conviction of an innocent defendant.  Nor do they take issue with ¶ 4.21, which alleges that the individual defendants acting as complaining witnesses falsified statements under oath that Cole was facing the Defendant Hunter and pointed a weapon at him when Cole was shot, nor deny that this testimony resulted in Cole being indicted for the felony offense of aggravated assault on a public servant. Rather, Defendants seem to assert that, in the wake of the U.S. Supreme Court's *Rehberg v. Paulk* decision, there is **_no_** conceivable pretrial activity for which a police officer would be liable for either perjury or conspiracy.

*Rehberg* held that police officers were entitled to immunity in regard to **_grand jury testimony_**.  However, the Court, in its next breath, expressly limited the scope of that holding. *Rehberg v. Paulk*, 132 S.Ct. 1497, 1507 (2012). Specifically, the Court stated, "Of course, we do not suggest that absolute immunity extends to *all* activity that a witness conducts outside of the grand jury room." *Id.* at n.1. *Rehberg* did not modify the decades-old rule that a police officer who offers perjured testimony outside of trial and grand jury proceedings is entitled to only qualified as opposed to absolute immunity, under the circumstances presented here. *See Malley v. Briggs*, 475 U.S. 335, 340 (1986). It also did nothing to abrogate the well-settled principle that absolute immunity is task-specific, in that it has only been held to protect an officer's grand jury

and trial testimony. *Houston v. Partee,* 978 F.2d 362, 366 (7th Cir.1992).  Fabricating evidence is specifically ___**not**___ protected by absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 275 (1993). Police officers ___**do not have**___ absolute immunity for falsifying affidavits or fabricating evidence, which is precisely what the Plaintiffs have alleged in the case at bar.

Defendants represent in this section of their Brief that the case of *Harris v. Rivera*, 2013 WL 246709 (N.D. Tex. 2013), presented claims "indistinguishable" from those at bar. Motion at n.7.  The footnote goes on to point out that Plaintiffs' counsel here represented the plaintiff in *Harris*.  Defendants dramatically misstate or misrepresent that case's holding.

Judge Fitzwater first specifically noted that a plaintiff can maintain, under Section 1983, a claim of conspiracy to deprive him of constitutional rights. *Id.* at *3, n.1. However, the court then went on to evaluate Defendants' motion under Federal Rule 12(c), that the federal claims ___**were barred by the applicable statutes of limitations**___. *Id.* at *5. He found that they were.  In so holding, however, the court expressly stated that it was ___**not addressing the defendants'**___ ___**arguments on qualified immunity.**___  *Id.* at p. 8, n.2. Therefore, *Harris* was not decided on the same grounds as the case at bar, and any suggestion to the contrary is incorrect.

## 2. <u>Ryan Cole's plea bargain on the firearm charge does not bar this claim, as the focus is on the dismissal of his aggravated assault of a peace officer.</u>

The Defendants vaguely assert the dismissal of the criminal charges against the plaintiff was the result of a "plea bargain," but the Defendants have pled no evidence to suggest that there was a plea bargain and, in any event, this allegation is legally irrelevant.  Motion at p. 18. Defendants simply ignore ¶ 4.23 which alleges the Dallas County District Attorney's Office dismissed these charges, and that the charges have been terminated in a manner favorable to Cole, and that Cole is and always has been innocent of these charges. Simply put, the fact that Ryan Cole admits to illegally possessing a firearm does not, in and of itself, entitle the Defendant

Officers to use objectively unreasonable and excessive force to attempt to kill him.  That is why

the requirement of a favorable disposition specifically references the "underlying claim" of

which the plaintiff complains.  The underlying, relevant charge is aggravated assault of a police

officer, which was dismissed. When a criminal defendant is found guilty or pleads to lesser,

unrelated criminal charges and then brings a 1983 claim complaining of other charges which

were dismissed, that is a favorable disposition for 1983 purposes. *See Green v. Montgomery*, 219

F.3d 52, 59 (2d Cir. 2000); *Posr v. Doherty*, 944 F.2d 91, 99-100 (2d Cir. 1991).

**F.      The Defendants are Not Entitled to Qualified Immunity at This Stage.**

Defendants appear to contend that the Court should now dismiss the claim entirely

against the Officers on the basis of qualified immunity.  This request is both procedurally and

substantively defective. It is procedurally defective because the only relevant legal question in a

Rule 12(b)(6) proceeding is whether or not the allegations of the complaint, if accepted as true,

state a claim upon which relief can be granted if nothing more or nothing less.  A Rule 12(b)(6)

motion does ***not*** allow factual determinations or decisions on genuine questions of material facts.

It is true that although qualified immunity is "nominally an affirmative defense," the

plaintiff bears the burden of negating the defense once it is properly raised.  *See Brunfield v.

Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) and *Newman v. Guedry*, 703 F.3d 757, 761-762 (5th

Cir. 2012).  Here, the question is whether the Plaintiffs have alleged sufficient facts, which if

true, would establish: (1) the Defendants' actions violated an actual constitutional right and (2)

that the Officers' actions were objectively unreasonable in light of clearly established law.

The Plaintiffs have set forth, above, a well-developed body of case law in the Fifth

Circuit following *Tennessee v. Garner* which establishes unequivocally that it is a violation of

the Fourth Amendment for an officer to use deadly force without giving a warning if it is feasible

to do so and unless it is necessary to prevent an imminent threat for the lives of the officers or a third party.  *See Reyes v. Bridgewater*, supra. If the facts alleged by the Plaintiffs are true, there was a constitutional violation of the Fourth Amendment as to Officers Hunter and Cassidy.  It is equally clear that the law pertaining to these subjects was clearly established at the time of the incident in question, exactly as the Fifth Circuit held in *Reyes v. Bridgewater*.

As the Supreme Court held in *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), the central concept is one of "fair warning."  The law is clearly established so long as the prior decisions gave reasonable warnings that the conduct at issue would violate constitutional rights. *See Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004).  Excessive force requirements have long been established, even without requiring a body of supplemental, relevant case law.  *See Brosseau v. Haugen*, 543 U.S. 194, 197-98 (2004).

There can be no competent dispute that the law pertaining to the use of deadly force was clearly established at the time of the Defendants' actions and that the complaint alleges facts which if true would establish the Officers' objectively unreasonable conduct violated those constitutional rights.  The Fifth Circuit has held in such circumstances that state officials are presumed to know the law that governs their actions.  *See Atterberry v. Nocona General Hospital*, *supra,* p. 17.  Thus, for all these and all prior reasons stated, qualified immunity is inapplicable.  Where sufficient factual issues are raised, as here, qualified immunity is precluded as a matter of law.  *See Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012).

### G.    Randy and Karen Cole Have Stated Constitutional Violations and Bystander Claims Under Texas Law.

Defendants contend the claims of Randy and Karen Cole for bystander recovery are foreclosed by the decision of the Fifth Circuit in *Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986).  Defendants' reliance upon *Coon* is misplaced because that case arose under Mississippi

law, which does not recognize bystander claims. Further, the statements by the Court regarding bystander recovery were *dicta* because the Court previously determined the action of the officers were objectively reasonable and therefore Section 1983 was not violated.

Texas law does not require a plaintiff to be personally within the zone of danger to recover as a bystander. *United Services Auto Association v. Keith*, 970 S.W.2d 540, 542 (Tex. 1998). All that is required is that the plaintiff have a contemporaneous sensory perception of a serious or fatal injury to a close relative. *See Chapa v. Traciers & Associates*, 267 S.W.3d 386, 398 (Tex. App.—Houston [14th] 2008, no pet.); *Landreth v. Reed*, 570 S.W.2d 486, 490 (Tex.Civ.App.—Texarkana 1978, no writ). The Fifth Circuit heard and rejected Defendants' exact contention. *See Grandstaff v. City of Border Texas*, 767 F.2d 161, 172 (5th Cir. 1985) (permitting bystander recovery against the officers but denying such recovery against the City).

## IV.   CONCLUSION AND PRAYER

This entire case turns upon a single factual inquiry: What happened in the moments before Ryan Cole was shot? The existence itself of multiple fact questions forecloses dismissal on 12(b)(6) grounds. On the qualified immunity front, if Ryan Cole moved in such a way so as to constitute an objectively reasonable threat to the Officers and others, then the Officers are entitled to qualified immunity. If, however, Plaintiffs are correct in their allegations (as must be assumed for the purpose of 12(b)(6)) then Ryan Cole never threatened the Officers or a third party with imminent severe bodily injury, the Officers are ***not*** entitled to qualified immunity, and the Plaintiffs' constitutional rights ***were*** violated. Ultimately, what actually happened is a question only a fact-finder can decide at trial.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs respectfully request this Court deny the Defendants' Motion in all respects and for all other relief to which they may be entitled.

Respectfully Submitted,


By: _____**/s/ Christopher S. Ayres**_____
       **R. JACK AYRES, JR.**
       Texas State Bar No. 01473000
       **CHRISTOPHER S. AYRES**
       Texas State Bar No. 24036167
       **BENJAMIN C. YELVERTON**
       Texas State Bar No. 24084132
       **AYRES LAW OFFICE, P.C.**
       4350 Beltway Drive
       Addison, TX 75001
       972-991-2222 (Telephone)
       972-386-0091 (Facsimile)

       **ATTORNEYS FOR PLAINTIFFS**


### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this filed pleading is being served upon all counsel of record through the Court's ECF delivery system, as provided by the Local Rules at or shortly after the time and date of filing.


       **/s/ Christopher S. Ayres**_____
       **Christopher S. Ayres**