IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **RANDY COLE and KAREN COLE,** | § | |
| **INDIVIDUALLY and as NEXT FRIENDS** | § | |
| **OF RYAN COLE,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **Civil Action No. 3:13-cv-02719-O** |
| **v.** | § | |
| | § | |
| **MICHAEL HUNTER, MARTIN** | § | |
| **CASSIDY, CARL CARSON, and THE** | § | |
| **CITY OF SACHSE, TEXAS,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Second Motion and Brief to Dismiss for Failure to State a Claim and Alternative Request for Rule 7(a) Reply to Immunity (ECF No. 70), filed September 12, 2103.  Having considered the motion, response, reply, pleadings and applicable law, and for the reasons that follow, the motion is granted in part and denied in part.

## I.    Factual Background and Procedural History

This is an action by Plaintiffs Randy and Karen Cole, individually and as next friends of their son Ryan Cole ("Plaintiffs"), alleging claims under 42 U.S.C. § 1983 and state law against the City of Sachse, Texas ("City of Sachse" or "City"), and Michael Hunter, Martin Cassidy, and Carl Carson, police officers for the City at the time of the incident made the basis of this lawsuit (sometimes collectively, "Officer Defendants").  This case arises from the alleged use of deadly force by Officers Hunter and Cassidy on the morning of October 25, 2010, in the City of Garland, Texas, when they shot Ryan Cole several times, causing profound mental and physical disabilities.

Plaintiffs allege causes of action based on unconstitutional use of deadly force, failure to train or supervise, and a subsequent conspiracy by the Officer Defendants to manufacture evidence and make use of perjured testimony.  Plaintiffs Randy and Karen Cole also seek to assert their own claims arising from the shooting.

The Court now sets forth the facts as alleged in Plaintiffs' First Amended Complaint, which is the live pleading.  *See* ECF No. 67, First. Am. Compl.[1]

### A.     *Excessive Force Allegations*

On the evening of Sunday, October 24, 2010, Ryan Cole, a troubled seventeen-year-old high school student living at home with his parents in Garland, Texas, had an altercation with his father, resulting in the Garland Police Department sending officers to the home to investigate.  *Id.* ¶¶ 4.1, 4.2.  The officers determined no crime was involved and a satisfactory resolution was reached whereby Ryan Cole would be permitted to spend the night elsewhere if he chose.  *Id.* ¶ 4.2.  After the officers left, Ryan Cole told his parents he would spend the night at a friend's home or in a tree house in the woods near the Cole home.  *Id.*  After his parents went to sleep, and without their knowledge or permission, Ryan Cole re-entered the Cole residence, gained access to his father's locked gun safe in the garage, took one or more weapons, and went to visit a friend named Eric Reed, Jr., who lived nearby and whose father was a retired City of Sachse police officer.  *Id.* ¶¶ 4.4, 4.5.  Ryan Cole left the Reed residence that night, returning the following morning, Monday, October 25, 2010, sometime after 9:30 a.m. with a revolver and a Springfield 9mm semi-automatic handgun.  *Id.* ¶¶ 4.5, 4.6.  Ryan Cole left the revolver with Reed, Jr., but kept the semi-automatic handgun.  *Id.*

---

[1] In reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

Before leaving the Reed home, Ryan Cole telephoned his grandparents and made arrangements for them to pick him up at a CVS drugstore at a major intersection near the Cole home.  *Id.*

Plaintiffs allege on information and belief that either Reed, Sr. and/or Reed, Jr. reported to the Sachse Police Department that Ryan Cole possessed a handgun.  *Id.* ¶ 4.7.  Although Ryan Cole never acted aggressively or violently toward anyone, Plaintiffs allege on information and belief that Reed, Sr. and/or Reed, Jr. exaggerated their reports of their interaction with Ryan Cole to imply or state that he was in some way aggressive or violent.  *Id.*

After leaving the Reed home to meet his grandparents, Ryan Cole intended to walk through a wooded area located immediately north of State Highway 78 and west of Murphy Road in Garland in order to reach the CVS drugstore.  *Id.* ¶ 4.8.  Unknown to Ryan Cole, the City of Sachse Police Department sent a number of police units into the City of Garland to investigate Ryan Cole's actions. *Id.*  At approximately 10:45 a.m., as Ryan Cole was walking down an alley toward the wooded area, Garland Police Officer Lt. H.W. Sneed approached him and ordered him to stop.  *Id.*  It is unclear from the pleadings to what extent Ryan Cole heard or understood Lt. Sneed, but Ryan Cole continued to walk toward the wooded area, removing the handgun from his waistband with his right hand and placing it against his right temple.  *Id.*  Around this time, Lt. Sneed was joined by Sachse Police Sergeant Garry Jordan.  *Id.*  Lt. Sneed and Sgt. Jordan followed Ryan Cole at a distance and then lost sight of him. *Id.*

Later, Ryan Cole exited the woods within view of his grandparents who were waiting for him in the parking lot of the CVS drugstore.  *Id.* ¶ 4.9.  When he left the wooded area, Ryan Cole had his back turned to Murphy Road and was facing the wooded area from which he had just emerged.  *Id.* At that time, Ryan Cole was still holding the handgun in his right hand aiming it at the right side of

3

his head.  *Id.*  Unknown to Ryan Cole, three Sachse police officers were present in the area: Officer

Michael Hunter (a motorcycle police officer); Lt. Martin Cassidy(a patrol supervisor); and Officer

Carl Carlson (a patrol officer).  *Id.*  Each was armed with two weapons, a Taser and a .40 caliber

semi-automatic Glock handgun, both issued by the City of Sachse Police Department.  *Id.*

When Officer Hunter first observed Ryan Cole exiting the woods, Ryan Cole was facing

away from Officer Hunter, still holding the handgun in his right hand pointed toward his head.  *Id.*

¶ 4.10.  Ryan Cole posed no immediate threat of death or serious injury to anyone.  *Id.*  Officer

Hunter did not identify himself as a police officer or give any command or instruction to Ryan Cole.

*Id.*  At all times relevant to the incident, it was both feasible and necessary for Officer Hunter to

identify himself as a police officer and give a warning to a citizen prior to the use of deadly force.

*Id.*  Instead, Officer Hunter immediately opened fire on Ryan Cole firing several shots, at least two

of which struck Ryan Cole.  *Id.*  One struck Ryan Cole in his left upper arm and the second struck

Ryan Cole in the lower portion of his left arm.  *Id.*  The lower shot went through Ryan Cole's left

arm and then entered the left side of his back, completely incapacitating him.  *Id.*

At the time he was shot, Ryan Cole was holding the handgun in his right hand pointed at the

right side of his head with his finger inside the trigger guard of the weapon. *Id.* ¶ 4.11.  When he was

struck by Officer Hunter's gunfire, Ryan Cole involuntarily grasped or clutched his fingers resulting

in an involuntary discharge of one round from his handgun into his skull and brain.  *Id.*  The

involuntary discharge of Ryan Cole's handgun was directly caused by Officer Hunter's act of

shooting him.  *Id.*  As Ryan Cole fell to the ground, at a distance of well over 100 feet, Officer

Cassidy also opened fire on Ryan Cole.  *Id.* ¶ 4.12.  At the time Officer Cassidy opened fire, Ryan

Cole posed no threat of immediate or serious injury to anyone.  *Id.*   Officer Carson did not fire his handgun.  *Id.*

As Ryan Cole lay unconscious and bleeding from potentially fatal wounds, the Officer Defendants did nothing to assist him.  A period of several minutes passed from the time he was shot until City of Garland Fire Department paramedics arrived.  *Id.* ¶ 4.14.  Ryan Cole was near death when the paramedics arrived and experienced cardiac arrest just after their arrival. *Id.* ¶ 4.17.  Due to the extraordinary skill and effort of the Garland Fire Department paramedics, Ryan Cole was resuscitated and immediately taken to Baylor Hospital in Garland and transferred on an emergency basis by helicopter to the Baylor University Medical Center in Dallas.  *Id.*  His condition was extremely critical and his family was informed that, in all probability, he would not survive the night. Later, a dangerous surgical procedure was required to save his life.  *Id.*

In the medical records, doctors described what they referred to as "stippling" or "tattooing" around the entrance to the wound on the right side of Ryan Cole's head, which is an injury caused by the penetration of gunshot residue discharged from the barrel of a firearm.  *Id.* ¶ 4.20.  Stippling cannot occur unless the firearm that caused it was discharged in close and immediate proximity to the skin.  *Id.*  This objective physical finding establishes that Ryan Cole's handgun was not pointed at Officer Hunter, but at his own head  *Id.*

As a result of the shooting, Ryan Cole is profoundly disabled both physically and mentally. *Id.* ¶ 4.24.  A substantial portion of the right side of his brain was injured and destroyed resulting in paralysis on the left side of his body.  *Id.*  He has no use of his left arm and only limited use of his left leg, and now suffers from a severe seizure disorder.  *Id.*  He will require constant trained medical care and personal assistance, mentally and physically, for daily living for the remainder of his life.

*Id.*  He has also suffered permanent and significant physical impairment and disfigurement of the body, including his face, head, arm and back as the result of the multiple gunshot wounds he sustained.  *Id.*

At all times, the Officer Defendants were acting under color of state law within the course and scope of their employment as licensed peace officers for the City of Sachse Police Department, and Officers Hunter and Cassidy each participated directly or indirectly in the unlawful and unprovoked shooting of Ryan Cole.  *Id.* ¶ 4.13.  The Officer Defendants knew that failure to identify themselves as police officers or to give warning, if feasible, before using deadly force was a constitutional violation of a citizen's rights, and also knew that use of deadly force against a citizen who did not at that time present an immediate threat to the officers' or others' lives was a violation of that citizen's constitutional rights.  *Id.* ¶ 4.17.

### B.    Expert Reports

Plaintiffs also attach expert reports to the First Amended Complaint.  *See* Ex. 4 to First Am. Compl. (Affidavit of Tom Bevel); Ex. 5 to First Am. Compl. (Affidavit of Timothy A. Braaten). After reviewing the criminal investigation file on the incident from the City of Garland Police Department, including the detailed sworn account of Officers Hunter and Cassidy, the experts conclude that (1) Ryan Cole was not facing Officer Hunter at the time he was shot; (2) the physical evidence is not consistent with Officer Hunter's statements that Ryan Cole was pointing the 9mm handgun at him or any officer at the time he was shot; (3) at the time Ryan Cole's handgun discharged, it was being held by Ryan Cole in his right hand with the barrel of the handgun in close proximity to the right portion of Ryan Cole's head; (4) the discharge of the 9 mm handgun was an involuntary response to being startled when Ryan Cole was struck by gunfire from Officer Hunter;

(5) there is no evidence from Officer Hunter's body microphone that he gave warnings or commands prior to opening fire; (6) when Ryan Cole exited the woods he would not have been aware of the Officers' presence at the scene; and (7) Officers Hunter and Cassidy's use of deadly force under the circumstances was not justified.  *See generally* Exs. 4 and 5 to First Am. Compl.

Defendants ask the Court to disregard or strike the exhibits, arguing that these reports are not "written instruments" under Fed. R. Civ. P. 10(c).  The Court rejects Defendants' argument.  The expert reports at this juncture serve merely to buttress Plaintiffs' contentions concerning their allegations of excessive force.  Furthermore, Officers Hunter and Cassidy asserted they were entitled to qualified immunity and sought a Rule 7(a) Reply to this assertion.  Plaintiffs instead opted to provide a First Amended Complaint pleading with particularity the facts they contend demonstrate the Officer Defendants are not entitled to qualified immunity, which is a proper response.  The Court notes, however, that it would reach the same decision it reaches today without the expert reports.  Further, the Court expresses no opinion as to whether the reports would ultimately be admissible in evidence for purposes of trial or summary judgment, or for any other purpose.

### C.      *Allegations Pertaining to Randy and Karen Cole*

Plaintiffs Randy and Karen Cole, individually and on behalf of their son, allege they have incurred, and will continue to incur, substantial charges for hospital, medical, nursing, rehabilitative, psychological and allied health services which were reasonable and necessary for the treatment of Ryan Cole.  First Am. Compl. ¶ 4.25.  They allege they have experienced severe and substantial mental anguish and interruption of their normal relationship with their son, who now requires twenty-four hour care for the remainder of his life.  *Id.* ¶ 4.26.  They further allege that they had a contemporaneous perception of the shooting of their son by virtue of having heard the shots fired

from their front yard, and have independently experienced significant emotional and mental anguish as a result of this perception in the past. *Id.* ¶ 4.27. They allege that as a result of the Officer Defendants' false allegations that Ryan Cole committed an aggravated assault on a public servant, they were required, on behalf of their son, to incur substantial legal fees to defend Ryan Cole and obtain dismissal of the charges. *Id.* ¶ 4.28.

### D. *Conspiracy and Cover Up Allegations*

Plaintiffs also allege that after the shooting the Officer Defendants formed and carried out a conspiracy to cover up their unlawful use of deadly force and to falsely charge and convict Plaintiff Ryan Cole of the felony offense of aggravated assault on a public servant. Functioning as complaining witnesses, they each falsely declared under oath during the Garland Police Department investigation that at the time of the shooting Ryan Cole was facing Officer Hunter and had lowered and pointed his weapon directly at Officer Hunter. *Id.* ¶¶ 4.15, 4.16, 4.21. These false statements were intended to support Officer Hunter's claim that he justifiably fired in self defense and that Officer Cassidy justifiably fired in defense of Officer Hunter and/or himself. *Id.* ¶ 4.15. Officers Cassidy and Carson falsely stated to investigating officers, and swore under oath, that they heard Officer Hunter give a verbal warning to Ryan Cole before shooting him. *Id.* ¶ 4.16. These statements were made to cover up the fact that Officer Hunter gave no warning prior to opening fire on Ryan Cole. *Id.* The Officer Defendants knew their false statements and testimony would be presented either directly or indirectly by the Dallas County District Attorney's Office to the grand jury, and that based on these false statements, the grand jury would (and did) indict Ryan Cole for the felony offense of aggravated assault on a public servant. *Id.* ¶ 4.21.

As a result of these fictitious charges, Ryan Cole was placed indefinitely under house arrest. *Id.* On May 12, 2012, the Dallas County District Attorney's Office dismissed all charges that Ryan Cole had committed an aggravated assault on a public servant. *Id.* ¶ 4.21. Ryan Cole received deferred adjudication for the charge of unlawfully carrying a weapon. *Id.*

### E. Plaintiffs' Lawsuit

On September 21, 2012, Plaintiffs filed this lawsuit in the Eastern District of Texas, Marshall Division. On July 15, 2013, after Defendants had filed motions to dismiss and the Officer Defendants had asserted qualified immunity, the case was transferred to the Northern District of Texas, Dallas Division. As stated above, following a status conference on August 1, 2013, the Court issued an Order directing Plaintiffs to inform the Court whether they intended to rely on the allegations in the initial complaint, or whether they wanted to file either a Rule 7(a) Reply or amended complaint in light of the Officer Defendants assertion of qualified immunity. *See* ECF No. 65, Aug. 8, 2013 Order. Plaintiffs opted to file their First Amended Complaint on August 15, 2013. *See* ECF No. 67, First Am. Compl.

In Count One of the First Amended Complaint, Plaintiffs assert a claim under 42 U.S.C. § 1983 for Officers Hunter and Cassidy's use of deadly force in violation of Ryan Cole's Fourth Amendment rights. In Counts Two and Three, Plaintiffs assert a claim under 42 U.S.C. § 1983 against the City of Sachse based on its facially unconstitutional policies on the use of deadly force (Count Two), and inadequate training, supervision, policies and practices (Count Three) that resulted in the unlawful shooting of Ryan Cole. In Count Four, Plaintiffs bring a claim under § 1983 against the Officer Defendants for causing and participating in the unlawful prosecution of criminal charges using manufactured evidence and perjured testimony, without probable cause, in violation of Ryan

9

Cole's Fourth and Fourteenth Amendment rights, and for conspiracy to deprive Ryan Cole of his constitutional rights. Count Four also seeks relief under state law for malicious prosecution. In addition to these claims, Plaintiffs Randy and Karen Cole also bring individual federal and state law bystander claims for mental anguish.

Officers Hunter and Cassidy move to dismiss the excessive force claim (Count One), arguing that Plaintiffs have failed to allege a constitutional violation under the Fourth Amendment arising from the October 25, 2010 shooting, and, even if they have, their use of force was objectively reasonable, entitling them to qualified immunity. The City moves to dismiss Counts Two and Three solely on the basis that Plaintiffs have failed to allege an underlying constitutional violation in Count One. The Officer Defendants move to dismiss Count Four as too conclusory, and for failure to plead a plausible constitutional "malicious prosecution" claim. The Officer Defendants also move to dismiss Count Four asserting they are entitled to absolute immunity for their statements or testimony made in connection with the investigation of the shooting which resulted in the felony assault charges against Ryan Cole. As to the alternative state law claim for malicious prosecution, the Officer Defendants argue that it should be dismissed because they are entitled to statutory immunity, and because Plaintiffs failed to adequately allege the requisite elements of a malicious prosecution claim. Finally, Defendants move to dismiss Randy and Karen Cole's federal and state law bystander claims. Plaintiffs oppose the motion.

## II.     Legal Standard for Dismissal under Fed. R. Civ. P. 12(b)(6)

To defeat a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.* However, the Court does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

In ruling on a motion to dismiss under Rule 12(b)(6), the Court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). Likewise, documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Id.*

11

### III.     Analysis

### *A.     Count One - Plaintiffs' Excessive Force Claim*

Officers Hunter and Cassidy contend Plaintiffs' § 1983 excessive force claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to allege a deprivation of a constitutionally protected right.   Officers Hunter and Cassidy also assert they are entitled to qualified immunity because they acted in an objectively reasonable fashion when they shot Ryan Cole.   In opposition, Plaintiffs argue that they have adequately alleged an excessive force claim and that Officers Hunter and Cassidy are not entitled to qualified immunity because, based on the pleadings, their conduct was objectively unreasonable under clearly established law.

Accepting all well-pleaded allegations as true, and viewing them in the light most favorable to Plaintiffs, for the reasons stated below, the Court finds that Officers Hunter and Cassidy's use of deadly force on the morning of October 25, 2010 was not objectively reasonable and violated a clearly established constitutional right.   Thus, at the motion to dismiss stage, Officers Hunter and Cassidy are not entitled to qualified immunity, and their motion to dismiss will be denied.

### 1.     Qualified Immunity

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).   It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.*   To state a claim under § 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros.,*

*Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

The doctrine of qualified immunity protects government officials sued pursuant to 42 U.S.C. § 1983 "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A defendant official must affirmatively plead the defense of qualified immunity. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. This doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity provides immunity from suit rather than a mere defense to liability. *Pearson*, 555 U.S. at 227. Because immunity is "effectively lost if the case is erroneously permitted to go to trial," a denial of qualified immunity may be immediately appealed. *Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985). "One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citation omitted).

Courts generally apply the two-pronged analysis established in *Saucier v. Katz*, 533 U.S. 194 (2001), in determining whether a government official is entitled to qualified immunity for an alleged constitutional violation. The first prong of the *Saucier* analysis asks whether the facts alleged or shown are sufficient to establish a violation of a constitutional or federal statutory right. *Saucier*,

533 U.S. at 201.  If the record establishes no violation, no further inquiry is necessary.  On the other hand, if the plaintiff sufficiently establishes the violation of a constitutional or federal statutory right, the Court then asks whether the right was clearly established at the time of the government official's alleged misconduct.  *Id.*  A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper.  *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Thus, the right must not only be established in an abstract sense, but also in a more particularized sense so that it is apparent to the official that his actions are unlawful in light of pre-existing law.  *Id.*

The Supreme Court has clarified that it is no longer mandatory for courts to consider the two prongs set out in *Saucier* in order, although the Court noted that it may be beneficial to do so.  *Pearson*, 555 U.S. at 236.   Under *Pearson*, courts are now permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.  *Id.*

Thus, the Court will now address two questions: (1) have Plaintiffs alleged that Officers Hunter and Cassidy violated Ryan Cole's constitutional rights, and if so (2) whether these rights were clearly established at the time of the shooting, such that Officers Hunter and Cassidy acted in an objectively unreasonable fashion under such law.

2.    **Discussion**

*a.    The Alleged Constitutional Violation*

The Court first considers whether Plaintiffs have adequately alleged that Officers Hunter and Cassidy violated Ryan Cole's constitutional rights.  *See Saucier*, 533 U.S. at 201 (When confronted with a claim of qualified immunity, a court must first ask the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?").

Plaintiffs allege that Officers Hunter and Cassidy used excessive force in violation of Ryan Cole's Fourth Amendment right to be free from unreasonable seizure. *See generally Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (the Fourth Amendment confers a "right to be free from excessive force during a seizure"); *Colston v. Barnhart*, 130 F.3d 96, 102 (5th Cir. 1997) ("The Fourth Amendment's protection against unreasonable seizures of the person has been applied in causes of action under 42 U.S.C. § 1983 to impose liability on police officers who use excessive force against citizens.").  To state a claim for excessive force, Plaintiffs must show: "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Poole,* 691 F.3d at 628 (citing *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009)).

The constitutional question in this case is governed by the principles set forth in *Tennessee v. Garner*, 471 U.S. 1 (1985) and *Graham v. Connor*, 490 U.S. 386 (1989).  An excessive force claim is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham*, 490 U.S. at 395 ("Today we . . . hold that all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free

citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."). Specifically in the context of deadly force, "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Garner*, 471 U.S. at 11. The Supreme Court has determined, however, that:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Id.* at 11-12. "The excessive force inquiry is confined to whether the [officer or another person] was in danger *at the moment of the threat* that resulted in the [officer's use of deadly force]." *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (citation omitted). In evaluating whether the use of force was reasonable, courts look to the "totality of the circumstances," and give "'. . . careful consideration to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013) (quoting *Graham*, 490 U.S. at 396) (internal citation omitted). Courts must evaluate the officer's action "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Poole*, 691 F.3d at 628 (citing *Graham*, 490 U.S. at 396). "The calculus must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

16

The Court now turns to whether Plaintiffs have adequately alleged an injury caused by Officers Hunter and Cassidy's use of deadly force that was clearly excessive to the need and objectively unreasonable.[2]  *See generally Saucier*, 533 U.S. at 201.

Although Officers Hunter and Cassidy do not dispute that they injured Ryan Cole when they shot him, they seek dismissal of any claims based on injuries resulting from the discharge of Ryan Cole's handgun, asserting that such injuries cannot have resulted "directly and only" from their alleged use of excessive force.  Whether Ryan Cole "involuntarily grasped or clutched his fingers resulting in the involuntary discharge of one round from that weapon into Ryan Cole's skull and brain" (*see* First Am. Comp. ¶ 4.11) as a direct result of being shot by Officer Hunter and/or Officer Cassidy, or whether Ryan Cole's injury resulted from a voluntary discharge of his weapon (as the Officer Defendants argue) is not a proper inquiry in resolving a Rule 12(b)(6) motion, as it is based on evidentiary considerations not before the Court.  Based on the allegations in the First Amended Complaint, the Court finds that Plaintiffs have sufficiently alleged that all of Ryan Cole's injuries resulted directly and only from the officers' use of force.  *See* First Am. Comp. ¶¶ 4.10, 4.11, 4.24. Given the extensive injuries alleged in the First Amended Complaint, *see id.* ¶ 4.24, the Court will focus its inquiry on whether Officers Hunter and Cassidy's conduct was "clearly excessive" or "clearly unreasonable."  *See generally  Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir.

---

[2]Given the significant overlap in analysis, the Court will consider in tandem whether Plaintiffs have adequately alleged that the use of force was clearly excessive or clearly unreasonable. *See generally Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (addressing simultaneously the questions of whether force used was "excessive" and "unreasonable"); *Poole*, 691 F.3d at 628 (recognizing the "intertwined" nature of the inquiry for addressing excessive force clams where qualified immunity at issue, and examining whether officers' use of force was clearly excessive or clearly unreasonable in tandem).

2008)(finding where there was no dispute that plaintiff suffered injury, relevant inquiry is whether force was "clearly excessive" or "clearly unreasonable.").

Officers Hunter and Cassidy contend that their conduct was not excessive to the force needed or objectively unreasonable.  In support, Defendants primarily rely on cases from other circuit courts where no excessive force was found.  *See* Def. Mot. at 9-10 (citing *Garczynski v. Bradshaw*, 573 F.3d 1158, 1168-1169 (11th Cir. 2009); and *Thomson v. Salt Lake County*, 584 F.3d 1304 (10th Cir. 2009)); *see also* Def. Reply at 4 (arguing *Garczynski* and *Thomson* are similar to the instant case, as they involve "individuals who held loaded guns, which they pointed at their own heads during at least a portion of the incident, and under circumstances in which the individuals who were shot by officers were perceived to have engaged in deadly conduct").  In addition to being from other circuits, and thus not controlling, the crucial facts of these cases are distinguishable.  In *Garczynski*, the Eleventh Circuit affirmed the district court's decision to grant summary judgment in favor of officers who used deadly force on an armed and potentially suicidal individual.  The circuit court agreed that the force used was not excessive, and deadly force was justified, where the  individual failed to comply with repeated commands to show his hands and drop the gun, and "[i]nstead of obeying these commands, [he] swung the gun from his head in the direction of the officers, at which point they fired." *Garczynski*, 573 F.3d at 1168.  The court agreed that under such circumstances, "[t]he officers reasonably reacted to what they perceived as an immediate threat of serious harm to themselves." *Id.*  In this case, by contrast, Plaintiffs allege that at the time Officer Hunter opened fire, Ryan Cole had his gun in his right hand pointed at the right side of his head, and was not facing Officer Hunter.  The only averment that Ryan Cole turned and pointed the gun at Officer Hunter is from Officer Hunter's sworn version of the events. *See* City of Garland Police Department Affidavit

18

In Any Fact of Officer Michael Hunter, Appendix to Pl. Resp. to Def. Mot. to Dismiss at Ex. 3 pp.

56-58 ("Hunter Aff.") (ECF 81-1). The Court notes that Officer Hunter admits he gave no warnings

prior to shooting. *See id.*  On a motion to dismiss, the Court accepts as true all well-pleaded facts

alleged in the complaint. *Twombly*, 550 U.S. at 556.  Thus, for purposes of analyzing the motion to

dismiss, the Court must assume that Ryan Cole was facing away from Officer Hunter with his gun

pointed at his own head when Officer Hunter opened fire with no warning.

      *Thomson* is also factually dissimilar.  In *Thomson*, the Tenth Circuit affirmed the district

court's decision to grant summary judgment in favor of officers who used deadly force on an armed

and potentially suicidal individual.  *Thomson*, 584 F.3d at 1310-1311.  Crucial to the court's

decision, it was undisputed that the suspect was pointing a gun at the officers almost immediately

prior to the officer discharging his weapon, and had refused the officer's immediate command to

drop the weapon.  *See id.*  Again, in this case, the alleged facts are to the contrary and are in dispute.

      Defendants also rely on *Ontiveros* in their reply brief.  In that case, an officer shot a suspect

who refused to comply with officers' instructions, was bent over, and appeared to be reaching into

a boot that was out of the officer's line of sight.  *Ontiveros*, 564 F.3d at 385.  The Fifth Circuit

upheld the district court's decision to grant summary judgment in the officer's favor, citing a line

of cases where the court has upheld the use of deadly force when the suspect refused instructions and

took actions that could have reasonably been interpreted as reaching for a weapon, causing the

officers to form a reasonable belief that they may be in immediate danger.  *Id.* (citing *Reese v.*

*Anderson*, 926 F.2d 494 (5th Cir. 1991) (upholding the use of deadly force where the suspect

repeatedly refused to keep hands raised and appeared to be reaching for an object when officers shot

him); and *Young v. Killeen*, 775 F.2d 1349 (5th Cir. 1985) (upholding the use of deadly force when

the suspect refused instructions to exit the vehicle and reached down to the floorboard as if to grab a weapon)).

Here, Plaintiffs allege that Officer Hunter gave no warning prior to opening fire and that Ryan Cole at all times during the encounter was facing away from Officer Hunter with his gun in his right hand held against the right side of his head.  There are no allegations that Ryan Cole was reaching for an object outside the officers' line of sight which could have been a weapon, or making any unexpected movements which could cause the officers to form a reasonable belief that they may be in immediate danger.  Accordingly, *Ontiveros*, and the cases cited therein, do not support Officers Hunter and Cassidy's contention that deadly force, in the circumstances presented, was justified.

Having concluded that the cases cited by Officers Hunter and Cassidy are distinguishable from the instant case, the Court has conducted its own research for cases where the Fifth Circuit has examined the level of force justified where officers are presented with emotionally unstable individuals in possession of a weapon.  In *Ballard v. Burton*, 444 F.3d 391, 402-03 (5th Cir. 2006), the Fifth Circuit held that an officer's use of deadly force was not excessive or unreasonable when a "mentally disturbed person," after irrationally driving his truck armed with a 30/30 rifle engaged in "stop-get-out-of-the-truck-and-shoot-activity," "refused to put down his rifle, discharged the rifle into the air several times while near officers, and pointed it in the general direction of law enforcement officers."  In *Mace v. City of Palestine*, 333 F.3d 621, 623, 625 (5th Cir. 2003), the Fifth Circuit held that an officer's use of deadly force was not excessive or unreasonable when a disturbed and intoxicated individual, wielding a sword in a relatively confined space, refused to comply with the officer's command to put down the sword, and raised the sword toward the officer.  And in *Elizondo v. Green*, 671 F.3d 506 (5th Cir. 2012), a case involving a suicidal seventeen-year old in

20

possession of a knife, the Fifth Circuit affirmed the undersigned's decision to grant summary judgment based on qualified immunity in favor of an officer who used deadly force, where the individual refused to comply with the officer's "repeated instructions to put down the knife he was holding and [the individual] seemed intent on provoking [the officer]." *See id.* Further, "[a]t the time [the officer] fired his weapon, [the individual] was hostile, armed with a knife, in close proximity to [the officer], and moving closer." *Id.* The Fifth Circuit concluded: "Considering the totality of the circumstances in which [the officer] found himself, it was reasonable for him to conclude that [the individual] posed a threat of serious harm." *Id.*

In both *Ballard* and *Mace*, the suspect refused to comply with instructions from officers and made what a reasonable officer on the scene could believe was a threatening gesture toward the officers with a weapon immediately before the officers opened fire. As the Fifth Circuit held in *Mace*, "[i]t is not unreasonable for an officer in that situation to believe that there was a serious danger to himself and the other officers present." *Mace*, 333 F.3d at 625. In *Elizondo*, while it was factually disputed whether the individual raised the knife toward the officer prior to the officer shooting him, the Fifth Circuit stated that the individual had refused to comply with the officer's warnings and orders, was hostile, in close proximity to the officers, and coming closer at the time the officer opened fire. *Elizondo*, 671 F.3d at 510. By contrast, Plaintiffs' First Amended Complaint alleges that Officer Hunter gave no warning prior to opening fire, that Ryan Cole at all times was facing away from Officer Hunter with his gun in his right hand held against the right side of his head, and there are no allegations that Ryan Cole made a threatening gesture toward Officer Hunter or approached him. Rather, the allegations are that Ryan Cole was not aware of the Officer Defendants' presence at the scene. Similarly, the allegations are that Officer Cassidy opened fire from a distance

21

after Ryan Cole had already been shot by Officer Hunter, also without prior warning.  Unlike in *Ballard*, *Mace*, *Elizondo*, and *Ontiveros*, *see supra*, based on the pleadings, this is not a situation where, considering the totality of the circumstances in which Officers Hunter and Cassidy found themselves, it was reasonable for them to conclude that Ryan Cole posed an immediate threat of serious harm to them or others, such that resorting to deadly force would be justified.

In addition to these published cases, the Court looks to an unpublished Fifth Circuit opinion that reversed and remanded a district court's decision to grant qualified immunity to an officer in a deadly force case where facts were disputed regarding whether the suicidal suspect threatened the officer with a weapon at all.  *See Reyes v. Bridgewater*, 362 Fed. Appx. 403, 2010 WL 271422 (5th Cir. 2010).[3]  In *Reyes*, officers testified they broke down the door to decedent Reyes' apartment. Upon entering the apartment, they testified Reyes was holding a knife by his side some distance away from the officers, Reyes stepped forward, threw his cigarette at one of the officers, and raised the knife he was holding in a threatening manner at which time the officer shot and killed him. Other witnesses disputed the officer's account.  *Reyes*, 2010 WL 271422, at *1-2.  The officer argued that deadly force was justified because Reyes stepped towards him and raised the knife.  *Id.*  The court held that the evidence, viewed in the light most favorable to the decedent, did not support the district court's conclusion that there was no constitutional violation, since the evidence presented by plaintiffs showed that the decedent stood in his home, with a kitchen knife at his side, at a safe distance from the officer when the officer opened fire.  *Id.* at 4-5.  Writing for the majority, Judge Haynes held:

---

[3]Although unpublished opinions are not precedent, the Court cites this decision for its persuasive value.

The Supreme Court has required courts to be deferential to the choices made by police officers in high-risk situations. *See Graham v. Connor*, 490 U.S. 386, 397 (1989)[.] That deference, however, cannot extend so far as to ignore an officer's violation of the core, established rule that deadly force may not be used "[w]here the suspect poses no immediate threat to the officers and no threat to others." *Garner*, 476 U.S. at 115[.] It violates the Fourth Amendment to use deadly force absent such a threat.

Here, there was no "immediate threat" as *Garner* requires. The evidence, viewed as required in this procedural posture [where the court must resolve conflicting evidence in favor of plaintiff] does not support the district court's conclusion that there was no constitutional violation . . . [T]he court must assume that [decedent] stood, in his own home, with a kitchen knife at his side, at a safe distance away from the officers when [the officer] opened fire. When [the officer] arrived on the scene, he was responding to a 911 call reporting a "domestic disturbance with possible violence"; he was not, that is, anticipating making a felony arrest, or even necessarily any arrest at all . . . Such a threat is by definition not "immediate" because the individual must still do something – the *Manis "*act"[4] – before the latent threat materializes into any risk of harm. . . . Under the facts and in this situation, [the officer's] use of deadly force absent an *immediate* threat from [the decedent] was a constitutional violation.

*Id.* at *4.

The facts that distinguish this case from *Ballard* and *Mace*, and make it more similar to *Reyes*, is the key issue that must be resolved to determine whether an officer using deadly force reasonably perceived an immediate threat. Based on the pleadings which the Court must accept as true, in the language of *Manis*, 585 F.3d at 410, there was no "act" to justify the shooting. Further, under *Garner*, any justification based on a suspect threatening the officer with a weapon is inapplicable to this case, as the allegations do not support any inference that Ryan Cole threatened

---

[4]The term "*Manis* act" finds its origin in a Fifth Circuit 2009 decision. *See Manis v. Lawson*, 585 F.3d 404, 410 (5th Cir. 2009). In examining the reasonableness of an officer's use of deadly force and finding no excessive force under the circumstances, the Court in *Manis* stated: "None of these assertions, however, bear on whether Manis, in defiance of the officers' contrary orders, reached under the seat of his vehicle and appeared to retrieve an object [the police officer] reasonably believed to be a weapon. This was the act that led [the officer] to discharge his weapon and it is undisputed. In light of Manis's undisputed actions [the officer's] use of force was not excessive."

23

the officers with the gun. *See Garner*, 471 U.S. at 11-12 ([I]f the suspect threatens the officer with a weapon . . . deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.").[5]

The Court is well-aware that Officers Hunter and Cassidy dispute what occurred and what led them to shoot Ryan Cole. This dispute creates a question of fact that goes to the heart of the qualified immunity inquiry and bars the Court from granting a motion to dismiss based on the pleadings. *See generally McLendon v. City of Columbia*, 305 F.3d 314, 325 (5th Cir. 2002) ("[T]he legally relevant factors bearing upon the [qualified immunity] question will be different on summary judgment than on an earlier motion to dismiss. At the earlier stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.' On summary judgment, however, the plaintiff can no longer rest on the pleadings . . . and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the [qualified immunity] inquiry.") (internal quotation marks and citations omitted) (original emphasis).

Based on this body of case law, as well as the *Graham* factors, and viewing all allegations in the First Amended Complaint as true, the Court concludes that Plaintiffs have sufficiently alleged that Ryan Cole suffered "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Poole*, 691 F.3d at 628. Accordingly, the Court denies Officer Hunter's and Officer Cassidy's motion to dismiss for failure to state a constitutional violation.

---

[5]To the extent Defendants suggest in their motion to dismiss that events earlier that morning involving other officers justify their use of deadly force, this argument is unavailing. *See Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) ("The excessive force inquiry is confined to whether the officer or another person was in danger *at the moment of the threat* that resulted in the officer's use of deadly force.") (internal punctuation and citation omitted).

### b.      *Clearly Established Law*

The Court's finding that Plaintiffs have adequately alleged that Officers Hunter and Cassidy

used excessive force (and thus performed an unlawful seizure under the Fourth Amendment), does

not end the Court's inquiry.   The Court must also determine whether, nevertheless, qualified

immunity is appropriate because the officers' actions were objectively reasonable "in light of clearly

established law at the time of the conduct in question."   *See Hampton Co. Nat'l Sur., L.L.C. v.*

*Tunica,* 543 F.3d 221, 225 (5th Cir. 2008).   Further, the qualified immunity reasonableness inquiry

is separate from the Fourth Amendment objective reasonableness inquiry in excessive force cases.

*Saucier*, 533 U.S. at 197.   Under this second prong, the Court must determine whether the "right

would be clear to a reasonable officer that the conduct was unlawful in the situation confronted."

*Id.* at 202.   As already stated, "[t]he contours of the right must be sufficiently clear that a reasonable

official would understand that what he is doing violates that right."   *Anderson*, 483 U.S. at 640.   This

standard operates to protect officers from the sometimes "hazy border between excessive and

acceptable force."   *Saucier*, 533 U.S. at 206.   In evaluating this prong, "the court must ask whether,

at the time of the incident, the law clearly established that such conduct would violate the

[Constitution].   This inquiry focuses . . . on the specific circumstances of the incident — could an

officer have reasonably interpreted the law to conclude that the perceived threat posed by a suspect

was sufficient to justify deadly force."   *Ontiveros*, 564 F.3d at 383 n.1 (citing *Brosseau v. Haugen*,

543 U.S. 194, 199-200 (2004)).   "Indeed, unless the violation is 'obvious,' there must be relevant

case law that 'squarely governs' the situation with which the officers were presented and gives 'fair

notice' that such conduct would violate the law."   *Brosseau*, 543 U.S. at 200-201.   The Supreme

Court has rejected the notion that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640.

The Constitutional limits on the use of deadly force have been clearly established since 1985 and provide that an officer using deadly force when a suspect does not pose a sufficient threat of harm or immediate danger to the officer or others would have had reasonable warning that the conduct at issue violated constitutional rights. *See Garner*, 471 U.S. at 11 ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failure to apprehend the suspect does not justify the use of deadly force to do so."). The Court finds that in this case the violation is "obvious," where the more generalized standards of *Graham* and *Garner*, *supra*, "clearly establish" that Officers Hunter and Cassidy's use of deadly force was objectively unreasonable, "even without a body of relevant case law[.]" *See Brosseau*, 543 U.S. at 199 (2004); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (noting in a case where Eighth Amendment violation was "obvious," there need not be a materially similar case for the right to be clearly established).

Even were this not an "obvious" case, the Court finds that on October 25, 2010, the date of the shooting, the law was "clearly established" in a more particularized sense, such that Officers Hunter and Cassidy would know that use of deadly force under the circumstances presented violated Ryan Cole's Fourth Amendment rights. *See Brosseau*, 543 U.S. at 200.   Although the parties have provided the Court with very little in the way of relevant case law, and Defendants have primarily relied on cases from other circuit courts, independent research shows case law applying the *Garner* standard to circumstances where officers have used deadly force in apprehending mentally unstable and/or suicidal individuals who are armed, such as in this case, and examined the facts and

26

circumstances of these cases. *See Ballard*, 444 F.3d at 402-03; *Mace*, 333 F.3d at 625; *Ontiveros*, 564 F.3d at 385. These cases, all decided prior to the shooting incident in this case, would make it clear to a reasonable officer that shooting a mentally disturbed teenager, who was pointing a gun the entire time at his own head and facing away from the officer, in an open outdoor area, and who was unaware of the officer's presence because no warning was given prior to the officer opening fire, was unlawful in the situation he confronted. Otherwise stated, the law was clearly established at the time of the incident that, absent the "*Manis* act," *i.e.*, "the act that led [the officer] to discharge his weapon," *see Manis*, 585 F.3d at 410, there was no immediate threat sufficient to justify the use of deadly force.

Once again, the Court finds the unpublished decision in *Reyes* to be instructive. As Judge Haynes stated in reversing the district court's decision to grant qualified immunity in the context of deadly force:

> The cases on deadly force are clear: an officer cannot use deadly force without an immediate serious threat to himself or others. Here, the facts are unclear; was there such an immediate threat? [The officer's] version would say "yes," while the other witnesses' version would say "no." The case presented here is not one where the law is not clearly established but rather where the facts are not clearly established. As such, summary judgment was improper.

*Reyes*, 2010 WL 271422, at *5. As in *Reyes*, this case presents a situation where the case law on use of deadly force is clearly established, both generally and in a more particularized sense, but the facts surrounding the incident in question are not. At the current procedural posture of the case, Officers Hunter and Cassidy's stated justification for use of deadly force cannot be considered by the Court.

In sum, Plaintiffs have adequately stated a claim that Officer Hunter's use of deadly force, when Plaintiff Ryan Cole was facing away from Officer Hunter, and pointing a gun at his own head,

and where Officer Hunter failed to give a warning prior to shooting, was objectively unreasonable under clearly established law.  Similarly, Plaintiffs have adequately alleged that Officer Cassidy's use of deadly force without warning, and after Ryan Cole had already been shot by Officer Hunter, was objectively unreasonable.  Accordingly, the Court determines that Officers Hunter and Cassidy are not entitled to qualified immunity at this time.

### B. The City of Sachse & Officer Defendants in Their Official Capacity[6] (Counts Two and Three)

The City's motion to dismiss Plaintiffs' § 1983 claim is premised solely on the argument that Plaintiffs have failed to state a constitutional violation.[7]  *See* ECF No. 70, Def. Mot. at 19 ("The City cannot be liable to Plaintiffs because the record establishes Ryan Cole was not deprived of a constitutionally protected right[.]"); ECF No. 84, Def. Reply at 10 ("Because the City can be liable only if an official policy or custom caused a deprivation of a civil right, and because Plaintiffs cannot establish a deprivation of a civil right, the claims against the City fail.")  The Court has already determined that Plaintiffs have stated a claim for excessive force in violation of the Fourth Amendment, and therefore the Court denies the City's motion to dismiss Counts Two and Three of the First Amended Complaint.

---

[6]To the extent that Plaintiffs are suing the Officer Defendants in their official capacity, an official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  Thus, Plaintiffs' allegations against the Officer Defendants in their official capacity are claims against the City.  *See id.*

[7]Section 1983 does not allow a municipality to be held vicariously liable for its officers' actions on a theory of respondeat superior.  42 U.S.C. § 1983*; see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).  Rather, a municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights.  *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 690-91 (1978).  The City has not moved to dismiss on any grounds related to Plaintiffs' allegations that it has a facially unconstitutional excessive force policy, or has failed to adequately train or supervise its officers as to the use of excessive force.

### C.    Officer Defendants - Plaintiffs' Claim for Fabrication of Inculpatory Evidence and Conspiracy to Violate Constitutional Rights (Count Four)

Officers Hunter, Cassidy and Carson move to dismiss Count Four of Plaintiffs' First Amended Complaint, where Plaintiffs allege as follows:

> ¶ 8.2    As previously set forth in detail, the Defendants Hunter, Cassidy and Carson formed and carried out a conspiracy to falsely charge and convict Plaintiff Ryan Cole of a felony offense of aggravated assault on a public servant, using the state criminal process to do so, based on "evidence" they had manufactured including their own perjured testimony.

> ¶ 8.3    At present, the civil laws of the State of Texas, as interpreted by the Supreme Court of Texas, do not provide a remedy or an adequate remedy to protect and compensate the Plaintiffs for such unlawful conduct.   Alternatively, Defendants Hunter, Cassidy and Carson have conspired and did commit the common law tort of malicious prosecution under Texas law which proximately caused Plaintiffs damages.

First Am. Compl. ¶¶ 8.2, 8.3.   Plaintiffs also allege in Count Four that in furtherance of their conspiracy, the Officer Defendants also committed the following unlawful acts: (1) they made false statements of fact to one or more Garland police officers in the course of the official investigation in violation of the Texas Penal Code; (2) they made false statements under oath to one or more Garland police department investigators and to the Dallas County District Attorney's Office and to the Dallas County Grand Jury constituting the offense of aggravated perjury in violation of the Texas Penal Code; and (3) "concealed from the Grand Jury, the presiding state trial judge, and the Dallas County District Attorney's Office, and Ryan Cole's counsel evidence that was obviously exculpatory to Plaintiff Ryan Cole in connection with the fictitious charges that he had committed an aggravated assault on a public servant."  First Am. Compl. ¶ 8.13.

The Court will first address the Officer Defendants' arguments in support of dismissing Plaintiffs' federal claims in Count Four.

### 1.      Claim for Fabrication of Inculpatory Evidence & Conspiracy

In Count Four, Plaintiffs allege that the Officer Defendants deprived Ryan Cole of his constitutional rights under the Fourth and Fourteenth Amendments by deliberately fabricating inculpatory evidence, providing false statements to City of Garland police after the shooting, and providing false statements under oath during the investigation.  Plaintiffs further allege that these unlawful acts ultimately led to a grand jury indicting Ryan Cole on a felony assault charge, a crime he did not commit.  The Officer Defendants contend these claims must be dismissed because they are entitled to absolute immunity for their statements and testimony.

The Court rejects the Officer Defendants' argument that they are entitled to absolute immunity under the Supreme Court's decisions in *Briscoe v. LaHue*, 460 U.S. 325 (1983) and *Rehberg v. Paulk*, --- U.S. ---, 132 S.Ct 1497 (2012).  *See* Def. Mot. at 15; Def. Reply at 7-9.  In *Briscoe*, the Supreme Court held that a trial witness sued under § 1983 enjoys absolute immunity from any claim based on his testimony. 460 U.S. at 326.  In *Rehberg*, the Supreme Court extended absolute immunity to include police officers testifying at an *ex parte* grand jury proceeding.  132 S.Ct. at 1506.  To the extent Plaintiffs are challenging the Officer Defendants' pre-trial misconduct, the Officer Defendants have not established, based on their current briefing, that they are entitled to absolute immunity.  While the Officer Defendants are not precluded from raising this argument at a later juncture in the case, they have not shown at this preliminary stage that absolute immunity precludes Plaintiffs' due process claims against them based on alleged fabrication of evidence and false statements made outside *ex parte* grand jury proceedings or trial.

The Court also rejects the Officer Defendants' argument that Plaintiffs' § 1983 conspiracy claims should be dismissed as too conclusory.  Plaintiffs allege that the Officer Defendants acted in

concert to deprive Ryan Cole of various constitutional rights including, but not limited to, his right to remain free from malicious prosecution, wrongful conviction, and unlawful confinement which resulted from their fabricated inculpatory evidence and false statements. When the allegations in the First Amended Complaint and all reasonable inferences therefrom are viewed in Plaintiffs' favor, they support the existence of an agreement between and among the Officer Defendants to violate Ryan Cole's constitutional rights.

In sum, based on the pleadings, the Court denies the Officer Defendants' motion to dismiss the federal claims asserted in Count Four. The Officer Defendants may reassert their absolute immunity at a later time.[8]

### 2. State Law Malicious Prosecution Claim

The Officer Defendants contend that Plaintiffs' state law malicious prosecution claims "are absolutely barred by the officers' statutory entitlement to immunity from such claims." Def. Mot. at 16 (citing Tex. Civ. Prac. & Rem. Code § 101.106(f)). In their response to the Officer Defendants' motion to dismiss based on the Texas Tort Claims Act ("TTCA"), Plaintiffs appear to concede that their malicious prosecution claim against the Officer Defendants may be foreclosed by the TTCA. *See* Pl. Resp. at 19 n.1; *see generally* Tex. Civ. Prac. & Rem. Code § 101.106. The parties are correct. Section 101.106(f) provides:

---

[8]The Court rejects the Officer Defendants' highly conclusory assertion (citing no case law in support) that they are entitled to qualified immunity on the federal claims in Count Four. *See* Def. Mot. at 19-20. For the reasons already stated above, Plaintiffs have alleged sufficient facts to state a claim against the Officer Defendants for a violation of Ryan Cole's Fourth and Fourteenth Amendment rights. Further, assuming the truth of Plaintiffs' allegations in Count Four, the Court concludes that the Officer Defendants acted in an objectively unreasonable fashion under clearly established law. *See, e.g., Limone v. Condon*, 372 F.3d 39, 44-45 (1st Cir. 2004) ("[I]f any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit. Actions taken in contravention of this prohibition necessarily violate due process.").

31

If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.  On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employees and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code § 101.106(f).  Plaintiffs have alleged that the Officer Defendants were acting "within the course and scope of their employment for the City of Sachse, Texas."  First Am. Compl. ¶ 4.13.  As the claim is considered to be against the Officer Defendants in their official capacities only, the Court grants the Officer Defendants' motion to dismiss the state law malicious prosecution allegations against them in their individual capacity.  *See generally Franka v. Velasquez*, 332 S.W.3d 367, 378 (2011).

Further, in accordance with the TTCA's election-of-remedies provision, all state law claims against the Officer Defendants are hereby dismissed because Plaintiffs' tort claims arise under the TTCA, and the City of Sachse perfected its statutory right to dismissal of its employees upon filing its motion to dismiss.  *See* Tex. Civ. Prac. & Rem. Code § 101.106(e) ("If a suit under this chapter is filed against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.").  Accordingly, the Court grants the Officer Defendants' motion to dismiss Plaintiffs' state law malicious prosecution claim.

### D.    *Randy and Karen Cole's Bystander Claims*

Defendants argue that Plaintiffs' federal bystander claims must be dismissed for failure to allege a deprivation of their own constitutional rights.  Def. Mot. at 22.  As discussed below, the Court agrees.  Defendants further argue that Plaintiffs' state law bystander claims must be dismissed pursuant to the Texas Civil Practice & Remedies Code, section 101.106(f), and for failure to allege

a personal injury.  *Id.* at 22-23.  While the Court agrees that the state law bystander claims against the Officer Defendants must be dismissed as barred by the TTCA, for the reasons stated below, the Court declines to dismiss these claims against the City.

### 1.     Section 1983 Bystander Claims

Plaintiffs Randy and Karen Cole allege they have experienced severe and substantial mental anguish and interruption of their normal relationship with their son, who will now require twenty-four hour care for the remainder of his life.  *See* First Am. Compl. ¶ 4.26.  They further allege they had a contemporaneous perception of the shooting of their son by virtue of having heard it occur from their front yard.  *Id.* ¶ 4.27.  Among other relief, Randy and Karen Cole seek recovery for "[m]ental anguish in the past and in the future" caused by Defendants' conduct.  *See id.* ¶ 10.1(i).

"Section 1983 imposes liability for violation of rights protected by the Constitution, not for violation of duties of care arising out of tort law."  *Baker v. McCollan*, 443 U.S. 137, 146 (1979).  A civil rights claim must be based upon a violation of a plaintiff's personal rights secured by the Constitution, and a bystander who is not the object of police action cannot recover for resulting emotional injuries under § 1983.  *See generally Grandstaff v. Borger*, 767 F.2d 161, 172 (5th Cir. 1985); *Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986); *see also Young v. Green*, 2012 WL 3527040, at *4 (S.D. Tex. Aug. 15, 2012) ("[C]ase law holds that a bystander who witnesses a police action, but who is not himself or herself the object of that action, cannot recover for resulting emotional injuries under § 1983, although there may be such a claim under state tort law.")

Accordingly, to the extent Plaintiffs Randy and Karen Cole seek to assert a § 1983 bystander claim for their emotional injuries based on police action directed at their son, the Court grants Defendants' motion to dismiss.

### 2.      State Law Bystander Tort Claims

Plaintiffs Ryan and Karen Cole have also brought state law bystander claims against the City and the Officer Defendants.  Citing the election-of-remedies provision of the TTCA, and noting that Plaintiffs filed suit against the governmental unit and its employees, Defendants move to dismiss Randy and Karen Cole's state law bystander claims against the Officer Defendants as barred by the TTCA.  *See* Tex. Civ. Prac. & Rem. Code § 101.106.  As already stated by the Court in connection with dismissal of Plaintiffs' state law malicious prosecution claims, *see supra* sec. III.C.2., where, as here, suit is filed against both a governmental unit and its employees, the governmental unit may move to dismiss the state law claims against the employee.  *See* Tex. Civ. Prac. & Rem. Code § 101.106(e).  Under this provision, as the City has exercised this option, the Court grants Defendants' motion to dismiss Plaintiffs' state law bystander claims against the Officer Defendants.

With regard to Plaintiffs' bystander claims against the City, Defendants argue that because Randy and Karen Cole did not suffer a "personal injury" or their own "bodily injury or death," they cannot recover against a governmental entity under Texas law  *See* Def. Mot. at 23 (citing Tex. Civ. Prac. & Rem. Code §§ 101.021, 101.023(c)).  The Court rejects this argument.

In this excessive force case, Plaintiffs allege that Officers Hunter and Cassidy shot Ryan Cole with .40 caliber semi-automatic Glock handguns issued by the City of Sachse Police Department causing severe injury.  *See* First Am. Compl. ¶ 4.9.  A claim for the use or misuse of tangible personal property is a claim under the TTCA.  *See* Tex. Civ. Prac. & Rem. Code § 101.021.  Further, "[a] state law bystander claim may be brought under the Texas Tort Claims Act."  *Young*, 2012 WL 3527040, at *5 (citing *Hermann Hosp. v. Martinez*, 990 S.W.2d 467, 478-79 (Tex. App.—Houston

34

[14th Dist.] 1999, pet. denied)).  To recover as a bystander under Texas law, a plaintiff is required to establish that:

> (1) The plaintiff was located near the scene of the accident, as contrasted with one who was a distance away from it;
>
> (2) The plaintiff suffered shock as a result of a direct emotional impact upon the plaintiff from a sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and
>
> (3) The plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*United Servs. Automobile Ass'n v. Keith*, 970 S.W.2d 540, 542 (Tex. 1998) (citation omitted).

Plaintiffs Randy and Karen Cole do not allege they witnessed the shooting of their son, but allege that they "had a contemporaneous perception of the shooting of their son by virtue of having heard it occur from their front yard."  *See* First Am. Compl. ¶ 4.27.  That they did not witness the shooting of their son, but heard the shots from their front yard and sometime thereafter saw their wounded son, does not, on its own, defeat their bystander claim under Texas law.  *See, e.g., Landreth v. Reed*, 570 S.W.2d 486, 490 (Tex. App.—Texarkana 1978, no writ) ("[A]ctual observance of the accident is not required if there is otherwise an experiential perception of it, as distinguished from a learning of it from others after its occurrence"); *Lehmann v. Wieghat*, 917 S.W.2d 379, 383 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (finding no error in submitting question to jury on whether a plaintiff had a "sensory and contemporaneous perception" of his son's shooting, as facts were disputed whether father perceived accident when he heard the gun shot from a distance away and approximately five to ten minutes later observed his son unconscious); *Bedgood v. Madalin*, 589 S.W.2d 797, 802-03 (Tex. Civ. App.—Dallas 1979) *affirmed in part, rev'd on other grounds*, 600 S.W.2d 733 (Tex. 1980) (allowing bystander claim where father "did not visually witness the

35

accident [that killed his son] but rather heard it and then witnessed the results soon thereafter").

In short, under Texas law regarding bystander claims for mental anguish, and based on the pleadings, the Court denies Defendants' motion to dismiss Plaintiffs' state law bystander claims against the City.

## IV.  Conclusion

Based on the foregoing, the Court **grants in part and denies in part** Defendants' Second Motion to Dismiss for Failure to State a Claim.  *See* ECF No. 70.  In particular, the Court **grants** Defendants' motion to dismiss: Plaintiffs' state law malicious prosecution claim against the Officer Defendants asserted in Count Four; Plaintiffs' state law bystander claims against the Officer Defendants; and Plaintiffs' federal law bystander claims against the Officer Defendants and the City, and **dismisses** these claims **with prejudice**.

The Court **denies** Defendants' motion to dismiss in all other part.  Accordingly, the remaining claims in this case are: Plaintiffs' § 1983 excessive force claims against Defendant Officer Michael Hunter and Defendant Officer Martin Cassidy sued in their individual capacities (Count One); Plaintiffs' § 1983 claims against the City of Sachse (Counts Two and Three); Plaintiffs' federal claims asserted in Count Four against the Officer Defendants; and Plaintiffs' state law bystander claims for mental anguish against the City.  The Court **denies as moot** Defendants' alternative request for Rule 7(a) Reply.  An order requiring a scheduling conference and report for contents of scheduling order under Fed. R. Civ. P. 16(b) and 26 will issue separately.

**SO ORDERED** this **24th** day of **January, 2014.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**