IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RANDY COLE and KAREN COLE, INDIVIDUALLY and as NEXT FRIENDS OF RYAN COLE, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:13-cv-02719-O |
| MICHAEL HUNTER, MARTIN CASSIDY, CARL CARSON, and THE CITY OF SACHSE, TEXAS, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants Hunter and Cassidy's Motion for Summary Judgment and Brief and Appendix in Support (ECF No. 112–23), filed September 22, 2014; Plaintiffs' Response (ECF No. 145–47), filed October 28, 2014; and Defendants' Reply (ECF No. 148), filed November 7, 2014. Also before the Court are Defendants' Motion to Exclude the Testimony of Plaintiffs' Expert Tom Bevel and Appendix in Support (ECF No. 126–28, 132, 135), filed September 25, 2014; Plaintiffs' Response (ECF No. 142–44), filed October 28, 2014; Defendants' Reply (ECF No. 149), filed November 7, 2014; Defendants' Motion to Exclude the Testimony of Plaintiffs' Expert Timothy Braaten and Appendix in Support (ECF No. 129–131, 136), filed September 25, 2014; Plaintiffs' Response (ECF No. 139–41), filed October 28, 2014; and Defendants' Reply (ECF No. 150), filed November 7, 2014.

Having considered the motions, related briefing, evidence, and applicable law, and for the reasons that follow, the Court finds that Defendants' Motion for Summary Judgment and

Defendants' Motions to Exclude Expert Testimony should be and are hereby **DENIED**. The Court further **OVERRULES** Plaintiffs' Objection on the Basis of Judicial Estoppel, and the Court **DEFERS** ruling on Plaintiffs' Objections to Defendants' Experts Albert Rodriguez and Gene Henderson insofar as the objections exceed the scope of this summary judgment determination.

## I.      BACKGROUND

This is an action by Plaintiffs Randy and Karen Cole, individually and as next friends of their son Ryan Cole ("Cole"), alleging claims under 42 U.S.C. § 1983 and state law against the City of Sachse, Texas ("City of Sachse" or "City"), and Michael Hunter ("Hunter"), Martin Cassidy ("Cassidy"), and Carl Carson ("Carson"), police officers for the City at the time of the incident precipitating this lawsuit. This case arises from the alleged use of deadly force by Officers Hunter and Cassidy (sometimes collectively, "the Officers") on the morning of October 25, 2010, in the City of Garland, Texas, when they shot Ryan Cole several times, causing profound mental and physical disabilities. Plaintiffs allege causes of action based on unconstitutional use of deadly force, failure to train or supervise, and a subsequent conspiracy by Officers Hunter, Cassidy, and Carson to manufacture evidence and make use of perjured testimony.

In Count One of the First Amended Complaint, Plaintiffs assert a claim under 42 U.S.C. § 1983 for Officers Hunter and Cassidy's use of deadly force in violation of Ryan Cole's Fourth Amendment rights. In Counts Two and Three, Plaintiffs assert a claim under 42 U.S.C. § 1983 against the City of Sachse based on its facially unconstitutional policies on the use of deadly force (Count Two), and inadequate training, supervision, policies and practices (Count Three) that resulted in the unlawful shooting of Ryan Cole. In Count Four, Plaintiffs bring a claim under § 1983 against the Officers Hunter, Cassidy, and Carson for causing and participating in the unlawful prosecution

2

of criminal charges using manufactured evidence and perjured testimony, without probable cause, in violation of Cole's Fourth and Fourteenth Amendment rights, and for conspiracy to deprive Cole of his constitutional rights. Count Four also seeks relief under state law for malicious prosecution. In addition to these claims, Plaintiffs Randy and Karen Cole also bring individual federal and state law bystander claims for mental anguish.

On January 24, 2014, the Court granted Defendants' motion to dismiss Plaintiffs' state law malicious prosecution claims and bystander claims against Officers Hunter, Cassidy, and Carson, as well as Plaintiffs' federal law bystander claims against the three officers and the City. Mem. Op. & Order, Jan. 24, 2014, ECF No. 85. The Court denied Defendants' motion to dismiss Plaintiffs' remaining claims. *Id.* The denial of Defendant Carson's motion to dismiss Count Four on the basis of qualified immunity and failure to state a claim is now pending before the United States Court of Appeals for the Fifth Circuit. *See* Def. Carson's Notice Appeal, ECF No. 87.

On April 18, 2014, the Court ordered that "all proceedings concerning Count IV, including discovery, are hereby stayed pending the resolution of Defendant Carson's interlocutory appeal of this claim or further order of this Court." Order 11–12, Apr. 18, 2014, ECF No. 100. However, the Court permitted narrowly tailored discovery regarding Count One, provided that it is reasonably calculated to assist the Court in determining whether Defendants Hunter and Cassidy are entitled to qualified immunity on Count One at the summary judgment stage. *Id.*

Defendants Hunter and Cassidy now move for summary judgment, and both parties seek to exclude expert testimony. Plaintiff further objects to Defendants' motion for summary judgment on the basis of judicial estoppel. The motions and objections have been fully briefed and are ripe for determination.

3

## II.      LEGAL STANDARD

### A.      Motion for Summary Judgment

Summary judgment is proper when the pleadings and evidence on file show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c).

When reviewing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

### B.      Admissibility of Expert Testimony

"The admissibility of expert testimony is governed by the same rules, whether at trial or on summary judgment." *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136–37 (5th Cir. 1996). "In rulings on the admissibility of expert opinion evidence the trial court has broad

discretion and its rulings must be sustained unless manifestly erroneous." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). This rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Effective December 1, 2000, Rule 702 was amended to incorporate the principles first articulated by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See* Fed. R. Evid. 702, adv. comm. notes (2000). Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997). The trial court is charged with making this preliminary determination under Fed. R. Evid. 104(a).[1] *Andrade Garcia v. Columbia Medical Center of Sherman*, 996 F.Supp. 617, 620 (E.D. Tex. 1998); *see also* Fed. R. Evid., adv. comm. notes (2000).

*Daubert* lists five non-exclusive factors to consider when assessing the scientific validity or reliability of expert testimony: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential

---

[1] Fed. R. Evid. 104(a) provides:

> Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b).  In making its determination it is not bound by the rules of evidence except those with respect to privileges.

rate of error of the method used; (4) the existence and maintenance of standards and controls in the

methodology; and (5) whether the theory or method has been generally accepted by the scientific

community. *Daubert*, 509 U.S. at 593–94. These factors are not necessarily limited to scientific

evidence and may be applicable to testimony offered by non-scientific experts, depending upon "the

particular circumstances of the particular case at issue." *Kumho Tire Company, Ltd. v. Carmichael*,

526 U.S. 137, 150 (1999). In either case, the *Daubert* analysis focuses on the reasoning or

methodology employed by the expert, not the ultimate conclusion. *Watkins*, 121 F.3d at 989. The

purpose of such an inquiry is "to make certain that an expert, whether basing testimony upon

professional studies or personal experience, employs in the courtroom the same level of intellectual

rigor that characterizes the practice of an expert in the relevant field." *Skidmore v. Precision Printing

& Packaging, Inc.*, 188 F.3d 606, 618 (5th Cir. 1999) (quoting *Kumho Tire*, 526 U.S. at 152). Thus,

a court "must review only the reasonableness of the expert's use of such an approach, together with

his particular method of analyzing the data so obtained, to draw a conclusion regarding the specific

matter to which the expert testimony is directly relevant." *American Tourmaline Fields v. Int'l Paper

Co.*, No. 3:96-CV-3363-D, 1999 WL 242690 at *2 (N.D. Tex. Apr. 19, 1999) (Fitzwater, J.) (citing

*Kumho Tire*, 526 U.S. at 154).

The test of reliability is necessarily a flexible one. As the Supreme Court has recognized, the

*Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the

issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at

150; *see also Watkins*, 121 F.3d at 988–89 ("Not every guidepost outlined in *Daubert* will

necessarily apply to expert testimony[.]"). A trial court has wide latitude in deciding how to

determine reliability, just as it has considerable discretion with respect to the ultimate reliability

determination. *Kumho Tire*, 526 U.S. at 152. Moreover, "the rejection of expert testimony is the exception rather than the rule." *See* Fed. R. Evid. 702, adv. comm. notes (2000). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land, More or Less, Situated in Leflore Cnty., Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996). Even after *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994) ("The grounds for the expert's opinion merely have to be good, they do not have to be perfect.").

## III.   ANALYSIS

Officers Hunter and Cassidy move for summary judgment on both counts remaining against them, Count One (Excessive Force) and Count Four (Conspiracy to Obtain Wrongful Conviction). Pursuant to this Court's April 18, 2014 Order, all proceedings related to Count 4 have been stayed. *See* Order 11–12, Apr. 18, 2014, ECF No. 100. In the Order, the Court informed the parties that, at this stage in the proceedings, it will only address issues helpful to a determination of whether Defendants are entitled to a summary judgement finding of qualified immunity. *Id.* at 11. Accordingly, the Court will limit its analysis to Defendants' motion for summary judgment on the excessive force count. Similarly, the Court will only address the parties' motions to exclude expert testimony insofar as the motions relate to summary judgment evidence necessary to resolve the issue of qualified immunity.[2]

---

[2] For instance, the Court will not evaluate Defendants' argument in Part II.B.13 of its Brief in Support of its Motion to Exclude Bevel's Expert Testimony because events taking place after the shooting are beyond the scope of the qualified immunity analysis. *See* Order 11–12, Apr. 18, 2014, ECF No. 100.

**A.      Motions and Objections Regarding Expert Testimony**

Defendants move to exclude the testimony of Plaintiffs' experts Tom Bevel and Timothy

Braaten. Plaintiffs object to the testimony of Defendants' expert Albert Rodriguez and the report of

Gene Henderson. Plaintiffs further request an evidentiary hearing. The Court finds that an

evidentiary hearing is not necessary to determine the admissibility of expert testimony for summary

judgment purposes. Accordingly, the Court will address the challenges to each expert in turn.

**1.      Defendants' Motion to Exclude Testimony of Tom Bevel**

The Court finds that Bevel is a qualified crime scene reconstructionist. *See* Pls.' App. Supp.

Resp. Mot. Exclude Test. Bevel Ex. 2 (Bevel Aff.), App. 36–38, ECF No. 144. Bevel is the President

of Bevel, Gardner & Associates, Inc., a forensic education and consulting company located in

Oklahoma. *Id.* at App. 37. Bevel has served for ten years as an Associate Professor in the Masters

of Forensic Science Program at the University of Central Oklahoma and for twenty-seven years in

the Oklahoma City Police Department where he earned the rank of Captain. *Id.* He is an International

Association for Identification certified crime scene reconstructionist and a graduate of the FBI

National Academy. *Id.* at App. 37–38. His full CV is included on pages 50–55 of Plaintiffs'

Appendix. *Id.* at App. 50–55.

The Court further finds that Bevel's testimony is relevant and satisfies the reliability

requirements of Federal Rule of Evidence 702. *See Daubert*, 509 U.S. at 593–95. Bevel testified that

he used the same methodology he would have used as a police supervisor investigating an officer

involved in a shooting. Bevel Aff., at App. 36, ECF No. 144; *see also Kumho Tire*, 526 U.S. at 152

(holding that the purpose of the *Daubert* gatekeeping requirement is to ensure that an expert

"employs in the courtroom the same level of intellectual rigor that characterizes the practice of an

expert in the relevant field"). He reviewed the pertinent documents and evidence, listed on page 56 of Plaintiffs' Appendix. Bevel Aff., at App. 39, ECF No. 144. He testified that he conducted his own independent, impartial investigation and reconstruction in accordance with sound principles and generally accepted techniques. *Id.* at App. 37. In his affidavit, Bevel described in detail his trajectory analysis and crime scene reconstruction processes. *See id.* at App. 39–45, 81–83. Based upon his analyses, Bevel concluded that Cole sustained two gunshot wounds from the Officers which caused Cole to involuntarily pull the trigger on the gun that he was aiming at his own head. *Id.* at App. 46–48. Based upon the timing and sequence of the gunshot wounds, Bevel concluded that it was unlikely that Cole was facing Officer Hunter or pointing his weapon at Officer Hunter when he was initially shot. *Id.* at App. 48–49. Overall, Bevel's testimony satisfies the requirements of Rule 702.

In Defendants' motion to exclude Bevel's testimony, Defendants contend that several of Bevel's opinions are not reliably supported by evidence in the record and thus must be excluded. Defs.' Mot. Exclude Bevel Test. 11–23, ECF No. 126. Much of Defendants' brief is devoted to explaining which of Bevel's opinions conflict with Defendants' version of the facts, *id.* at 11–23, and which of Bevel's opinions are supported by Defendants' version of the facts, *id.* at 1–10. However, absent a valid reason to question the underlying basis of an expert's testimony, the mere fact that some expert conclusions conflict with witness testimony does not establish that the expert testimony is unreliable. *See Watkins*, 121 F.3d at 989 (holding that the *Daubert* analysis focuses on the reasoning or methodology employed by the expert, not the ultimate conclusion). Here, Defendants fail to set forth a valid basis for the distinction they attempt to draw between admissible and inadmissible evidence.

Further, Defendants admit that Bevel is competent to testify regarding "fundamental general information which is widely accepted by law enforcement professionals that is important in evaluating the reasonableness of the Officers' conduct." Defs.' Mot. Exclude Bevel Test. 1, ECF No. 126. Defendants' brief also appears to concede Bevel's competency as a crime scene reconstuctionist. For instance, Defendants affirm much of Bevel's testimony relating to crime scene reconstruction in general, *see, e.g.*, *id.* at 4–5, and several of Bevel's opinions relating to crime scene reconstruction in this case specifically, *see, e.g.*, *id.* at 6–7. At the same time, Defendants discount Bevel's conclusions when they conflict with the Officers' testimony, *see, e.g.*, *id.* at 14–15. Similarly, much of Defendants' brief is devoted to arguing the ultimate conclusions that should be drawn from Bevel's testimony rather than objecting to Bevel's methodology. *See, e.g.*, *id.* at 10. The Court finds that these objections, including the arguments Defendants set forth in Parts II.B.1–3, 5, 7–10, 11 of their brief, go to the weight that should be given to the evidence rather than to the admissibility of the evidence. Bevel's testimony on such issues is admissible, and Defendants' arguments relating to the weight or proper interpretation of the evidence are more appropriately saved for cross-examination or oral argument.

The remaining portions of Defendants' brief bring specific challenges to the reliability of Bevel's methodology and the accuracy of the photographs upon which Bevel relied. Defs.' Mot. Exclude Bevel Test. 15–19, 22, ECF No. 126.

In Parts II.B.3–4 of Defendants' brief, Defendants argue that Bevel cannot reliably determine the sequence of gunshots based on audio recordings of the incident. *Id.* at 15–16. Defendants cite Plaintiffs' expert Steven D. Beck ("Beck") who stated that it is "not scientifically possible to determine the sequence of gunshots in question" to a reasonable degree of certainty. *Id.* at 16.

However, in omitted portions of Beck's testimony, he indicated that listeners, such as the Garland police investigators and Captain Bevel, may be able to "interpret the sound of the recording to show different sounds by the discharge of one round as opposed to other rounds in the sequence." Pls.' App. Supp. Resp. Mot. Exclude Test. Bevel Ex. 6 (Beck Aff.), App. 135, ECF No. 144. Beck merely concluded that Bevel's interpretations of the recordings cannot be scientifically verified in the manner suggested by Defendants' expert Dr. Al Yonovitz. *Id.* Thus, the Court finds Defendants' objections to the reliability of Bevel's conclusions based on the recordings to be without merit.

In Part II.B.6 of Defendants' brief, Defendants challenge Bevel's bullet trajectory analysis because his opinions differ from those of another expert in the field, Dr. Vincent Dimaio ("Dimaio"). Defs.' Mot. Exclude Bevel Test. 17–19, ECF No. 126. Bevel testified that he disagreed with Dimaio's opinion that bullets do not usually follow a straight path as they exit the body. *Id.* at 19. Here, Bevel did not rest on general assumptions, rather he confirmed that the bullet in question continued on a linear path by inspecting Cole's medical records and by physically examining Cole's person. Pls.' App. Supp. Resp. Mot. Exclude Test. Bevel 42, 80–82, 175, 177, ECF No. 144. Thus, the Court finds Defendants' objections to Bevel's trajectory analysis to be without merit.

Finally, in Part II.B.12 of Defendants' brief, Defendants challenge the accuracy of photographs upon which Bevel relied. Defs.' Mot. Exclude Bevel Test. 22, ECF No. 126. Defendants argue that there is no evidence in the record demonstrating that the photographic reconstruction of the scene correctly represents the individuals' placement during the incident. *Id.* The Garland police officers who took the photographs did not receive specific approval from the officers who were involved in the incident, and Officers Hunter and Cassidy now allege that the representation of their positions was inaccurate. Pls.' App. Supp. Resp. Mot. Exclude Test. Bevel Ex. 5 (Bevel Dep.)

11

72:8–73:19, App. 92, ECF No. 144. However, Bevel concluded that the Officers' accounts of their positions were not consistent with the physical evidence, such as the location of the blood pool and shell casings. *Id.* 73:12–25, 135:9–137:16, at App. 93, 106–08. Bevel testified that the range of the ejection of shell casings from the firearm at issue would be between 50 and 80 inches from the weapon, and this value is generally accepted and not controversial among crime scene reconstructionists. *Id.* 138:3–139:1, at App. 109–10. Based upon his evaluation of the scene and his analysis of the physical evidence, Bevel concluded that the photographs taken by the Garland police department portrayed the relative positions of the people involved in the incident with reasonable accuracy. Therefore, the Court finds that Bevel's testimony relying upon the photographic evidence is admissible under Rule 702.

In summary, the Court finds that Bevel's expert opinions are suitable summary judgment evidence. Accordingly, Defendants motion to exclude or limit Bevel's testimony is **DENIED**.

### 2.    Defendants' Motion to Exclude Testimony of Timothy Braaten

The Court finds that Braaten is a qualified expert on police administration, investigations, and procedure. *See* Pls.' App. Supp. Resp. Mot. Exclude Test. Braaten Ex. 2 (Braaten Aff.), App. 13–15, ECF No. 141. Braaten received a Bachelor of Arts in Psychology and Sociology from Concordia College and a Master of Public Administration degree from Wayne State University. *Id.* at App. 13. He is a graduate of the FBI National Academy. *Id.* at App. 14. Braaten gained experience as a police officer in Michigan, before working as Chief of Police in Mequon, Wisconsin, Oak Ridge, Tennessee, and then Victoria, Texas. *Id.* at App. 13–14. Notably, he has investigated complaints against police officers, including incidents involving the use of deadly force and other violent crimes. *Id.* Additionally, for approximately six years, Braaten served as Executive Director

of the Texas Commission on Law Enforcement Standards and Education in Austin, Texas. *Id.* at App. 14. His full CV is given in Plaintiffs' Appendix 39–42. *Id.* at App. 39–42.

The Court further finds that Braaten's testimony satisfies the reliability requirements of Rule 702. *See Daubert*, 509 U.S. at 593–95. Braaten testified that he used the same methodology he would have used as a police chief or police supervisor investigating or evaluating any officer involved shooting or other major incident. Braaten Aff., at App. 16, ECF No. 141; *see also Kumho Tire*, 526 U.S. at 152. He testified that he independently and impartially approached the case. Braaten Aff., at App. 16, ECF No. 141. Braaten reviewed the documents produced by both parties, including the Garland Police Department investigation file, the Sachse Internal Affairs reports, Bevel's crime scene reconstruction, Cole's medical records, and the audio and video recordings from the scene. *Id.* at App. 43. Based upon his investigation, Braaten concluded that at the time of the shooting, Cole was not facing or pointing the gun at Officer Hunter, Officer Hunter did not give an adequate warning under the circumstances, and thus the use of deadly force was not justified. *Id.* at App. 37. Contrary to Defendants' arguments that Braaten's opinions are based upon mere "supposition," the Court finds that Braaten has used reliable methods in his investigation applied reliably to the facts at hand. Defs.' Mot. Exclude Braaten Test. 18, ECF No. 129 (citing *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007)).

Defendants object to Braaten's qualifications, arguing that Braaten may not present expert opinions relating to his interpretation of the shooting events because he is not a shooting scene reconstructionist. Defs.' Mot. Exclude Braaten Test. 3, ECF No. 129. However, Rule 702 merely requires an expert to be qualified to testify in particular field, he or she need not be highly specialized. *Wellogix, Inc. v. Accenture, LLP*, 716 F.3d 867, 882 (5th Cir. 2013); *see also Berry v.*

13

*City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). Here, Plaintiffs have established Braaten's extensive experience as a criminal investigator. Braaten Aff., at App. 13–16, ECF No. 141. The Court finds that experienced criminal investigators, such as Braaten, may express opinions as to the significance of facts in an officer involved shooting. It is also appropriate for Braaten to testify about police departments' standard of conduct for law enforcement officers who encounter an individual with a handgun pointed at himself.

Besides the challenges to Braaten's qualifications, Defendants' brief consists entirely of arguments that either extend beyond the scope of the qualified immunity analysis or address the weight rather than the admissibility of evidence. When determining the admissibility of evidence, district courts must afford "proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *14.38 Acres of Land*, 80 F.3d at 1077 (quoting *Viterbo*, 826 F.2d at 422). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Id.* (quoting *Viterbo*, 826 F.2d at 422). Defendants' arguments consist of factual disputes and challenges to Braaten's conclusions which are more appropriately brought during cross examination. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. At this time, the Court does not determine questions beyond the scope of the qualified immunity analysis. In accordance with the Court's gatekeeping function, the Court determines that Braaten's testimony is competent summary judgment evidence. Accordingly, Defendants' motion to exclude or limit Braaten's testimony is **DENIED**.

3.      Plaintiffs' Objection to the Testimony of Albert Rodriguez

14

Plaintiffs argue that Rodriguez's testimony must be excluded because it was untimely produced and, alternatively, they argue that the testimony violates several Federal Rules of Evidence. Pls.' Br. Resp. Mot. Summ. J. 7–8, ECF No. 146.

a.    *Timeliness Objections*

Under Federal Rule of Civil Procedure 26(a), initial disclosures of expert reports must be "complete and detailed." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996). Supplemental disclosures "are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Id.* Supplemental opinions must not include material changes or corrections to the experts opinions. *Harmon v. Ga. Gulf Lake Charles LLC*, 476 F. App'x 31, 38 (5th Cir. 2012).

On June 27, 2013, Defendants' Expert Designation (ECF No. 54) identified Rodriguez as an expert who may testify. Subsequent email correspondence between the parties indicates that Plaintiffs were aware of the possible need to depose Rodriguez; however, Plaintiffs chose to postpone the deposition. *See* Pls.' App. Supp. Resp. Mot. Summ. J. 3–8, ECF No. 147.

Plaintiffs argue that Defendants failed to disclose Rodriguez's Supplemental Report before the August 18, 2014 discovery deadline, and thus the Supplemental Report must be excluded from the Court's consideration of the summary judgment motion. *See* Order, May 5, 2014, ECF No. 104. The Supplemental Report was first served on the Plaintiffs in the appendix in support of Defendants' motion for summary judgment on September 22, 2014, and Defendants did not receive the Court's permission for late filing of a Supplemental Report. Plaintiffs argue that the untimely disclosure of the Supplemental Report prejudiced them because the report would have prompted them to depose Rodriguez regarding his new opinions. However, Plaintiffs fail to identify any new opinions in the

Supplemental report. Plaintiffs also have not demonstrated that any changes to the report are material. Therefore, the Court finds that the Supplemental Report may be admitted at this stage in the proceedings.

    b.    *Evidentiary Objections*

The Court finds that Rodriguez is a qualified expert on police policies and procedures, including procedures involving the use of deadly force. *See* Defs.' App. Supp. Mot. Summ. J. Ex. Vol. 3 Tab 21 (Rodriguez Decl.), App. 844, ECF No. 121. Rodriguez has served as a law enforcement officer for approximately thirty-six years, including service as Commander of the Department of Public Safety Training Academy in Austin, Texas. *Id.* ¶ 1, at App. 844. He holds a Bachelor's Degree from Texas A&M and certifications from the Texas Commission on Law Enforcement Officer Standards and Education. *Id.* ¶ 3, at App. 844. He is a graduate of the 147th FBI National Academy in Quantico, Virginia. *Id.* He is FBI certified as a Use of Force and Defensive Tactics Instructor. *Id.* His full resume is attached in Defendants' Appendix on pages 881–84. *Id.* at App. 881–84.

Plaintiffs object to his qualifications to testify to legal conclusions, crime scene reconstruction, bullet trajectory analysis, mental health issues and involuntary/reflexive trigger pull syndrome. Pls.' Br. Resp. Mot. Summ. J. 9, ECF No. 146. Plaintiffs also object to several of Rodriguez's opinions on hearsay grounds.

The Court finds that an evaluation of each particularized objection exceeds the scope of the summary judgment inquiry. Any objections relevant to information relied upon by the Court will be discussed in further detail below. Objections to expert testimony not covered in this Order may be raised when they become ripe at a later date in the proceedings.

16

4.     Plaintiffs' Objection to the Testimony of Gene Henderson

Plaintiffs object to Henderson's report and challenge Henderson's qualification to reconstruct

shooting incidents or crime scenes. Pls.' Br. Resp. Mot. Summ. J. 15, ECF No. 146. They also object

to a lack of basis for the video's crime scene reconstruction methodology, arguing that there is no

basis anywhere in the record that Cole's movements were similar to the movements of the individual

in the video. *Id.* at 16.

Because the Court does not rely on the Henderson report or Rodriguez's testimony

concerning Henderson's report in its summary judgment determination, the Court does not reach the

issue of whether to admit the Henderson report at this stage in the litigation.

**B.     Plaintiffs' Objection on the Basis of Judicial Estoppel**

The Court next turns to Plaintiff's objection to defendant's motion for summary judgment

on the basis of judicial estoppel. Pls.' Br. Resp. Mot. Summ. J. 2–6, ECF No. 146.

Judicial estoppel "prevents a party from asserting a position in a legal proceeding that is

contrary to a position previously taken in the same or some earlier proceeding." *Ergo Sci., Inc. v.

Martin*, 73 F.3d 595, 598 (5th Cir. 1996). In the Fifth Circuit, a party may be estopped only if the

party's new position is "clearly inconsistent" with its prior position and the party had previously

convinced the court to accept its prior position. *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396

(5th Cir. 2003).

The Court finds that the alleged inconsistencies in the instant case are not so "clearly

inconsistent" as to permit judicial estoppel. *See id.* Plaintiffs argue that amendments to Defendants'

Answer establish inconsistent positions. Pls.' Br. Resp. Mot. Summ. J. 2–6, ECF No. 146. They

argue, for instance, Officers Hunter and Cassidy's prior testimonies fail to mention that an officer

17

gave the beginning of a warning to "drop it" or "drop the" before shots were fired. The answer also omitted testimony about Cole repositioning the gun to his head before firing. Defendants also amended their answer to allege that Defendants "perceived" that Cole pointed the gun at Officer Hunter.

It is not clear that these amendments are due to Defendants "playing 'fast and loose' with the court by 'changing positions based upon the exigencies of the moment.'" *Hall*, 327 F.3d at 400. Questions regarding possible inconsistencies within witness testimony are more appropriately placed before the jury. Overall, Plaintiffs' fail to establish that judicial estoppel would be appropriate. Accordingly, Plaintiffs' motion for judicial estoppel is **DENIED**.

### C.   Officers Hunter and Cassidy's Motion for Summary Judgment Based Upon Qualified Immunity

The doctrine of qualified immunity protects government officials sued pursuant to 42 U.S.C. § 1983 "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It is important to resolve qualified immunity questions at the earliest possible stage in the litigation. *Id.*

The burden of proof for overcoming a qualified immunity defense at the summary judgment stage rests upon Plaintiffs. *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992); *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 490 (5th Cir. 2001). Plaintiffs bear the burden of establishing that the facts show Defendants violated one of Plaintiffs' constitutional rights and the right was "clearly established" at the time of Defendants' alleged misconduct. *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009); *accord Saucier v. Katz*, 533 U.S. 194 (2001); *Pearson*, 555 U.S. at

18

236. "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'" *Ontiveros*, 564 F.3d at 382 (quoting *Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991)).

Officers Hunter and Cassidy contend that they are entitled to a summary judgment determination of qualified immunity because the undisputed facts show they acted in an objectively reasonable fashion when they shot Ryan Cole. Defs.' Br. Supp. Mot. Summ. J. 15–16, 31–32, ECF No. 113. Defendants argue that a reasonable officer could have reasonably perceived a threat to his own life when confronted by someone holding a loaded gun, with his finger on the trigger, who was turning to face the officer. *Id.* at 31–32. Defendants argue that a reasonable officer could have used deadly force to defend himself in such a situation. *Id.* at 31; *see also* Defs.' App. Supp. Mot. Summ. J. Vol. 3 Tab 13 (Braaten Dep.) 94:11–15, App. 743, ECF No. 120 (testifying that an officer is not required to wait to be fired upon in order to defend himself).

In opposition, Plaintiffs argue that genuine issues of material fact preclude the issuance of summary judgment. *See generally* Pls.' Br. Supp. Mot. Summ. J., ECF No. 146. According to Plaintiffs, the evidence suggests that Cole never pointed a gun at Officer Hunter; instead, Cole continuously directed the handgun toward his own head. *Id.* at 27–28, 43. Thus, Plaintiffs contend, it was unreasonable for the Officers to have perceived an imminent theat justifying the use of deadly force. *Id.* at 21. Plaintiffs further argue that it was unreasonable for Officers to have fired on Cole without first giving reasonable warnings. *Id.* at 18.

Viewing the evidence in the light most favorable to the non-movant, the Court finds that there are genuine issues of material fact regarding Cole's actions and the reasonableness of the Officer's

conduct during the incident. Thus, at the summary judgment stage, Officers Hunter and Cassidy are not entitled to qualified immunity, and their motion for summary judgment is denied.

### 1.   Clearly Established Law

As there are several highly contested factual issues, the Court will first turn to whether the right that the Officers allegedly violated was clearly established at the time of the alleged misconduct. *See Pearson*, 555 U.S. at 236. This inquiry considers the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)) (internal quotation marks omitted). A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The right must not only be established in an abstract sense, but also in a more particularized sense such that it is apparent that the official's actions are unlawful in light of pre-existing law. *Id.* The underlying constitutional violation Plaintiffs allege here is excessive force, specifically excessive use of deadly force. Therefore, the relevant question is whether a reasonable officer could have believed that the use of deadly force by Officers Hunter and Cassidy under the circumstances was reasonable in light of the clearly established law.

The law proscribing excessive force has been clearly defined by *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985), and *Graham v. Connor*, 490 U.S. 386, 395 (1989). In order to establish excessive force, a plaintiff must show "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (citing *Ontiveros*, 564 F.3d at 382). Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness"

standard. *Graham*, 490 U.S. at 395. Specifically in the context of deadly force, the Supreme Court

has determined that:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Garner*, 471 U.S. at 11–12. "The excessive force inquiry is confined to whether the [officer or another

person] was in danger *at the moment of the threat* that resulted in the [officer's use of deadly force]."

*Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (citation omitted) (emphasis in original). In

evaluating whether the use of force was reasonable, courts look to the "totality of the circumstances,"

and give "'careful consideration to the facts and circumstances of each particular case, including the

severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the

officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"

*Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013) (quoting *Graham*, 490 U.S. at 396) (internal

citation omitted). Courts must evaluate the officer's action "from the perspective of a reasonable

officer on the scene, rather than with the 20/20 vision of hindsight." *Poole*, 691 F.3d at 628 (citing

*Graham*, 490 U.S. at 396). "The calculus must embody allowance for the fact that police officers are

often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly

evolving about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at

396-97.

 In this Court's prior Memorandum Opinion and Order, the Court found that the constitutional

limits on the use of deadly force have been clearly established since 1985. Mem. Op. & Order 26, Jan.

24, 2014, ECF No. 85 (citing *Garner*, 471 U.S. at 11). As applicable here, it is clearly established that an officer using deadly force when a suspect does not pose a sufficient threat of harm, or immediate danger to the officer or to others, would have had reasonable warning that the use of deadly force violated the suspect's constitutional rights. *Id.*; *see also Garner*, 471 U.S. at 11 ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failure to apprehend the suspect does not justify the use of deadly force to do so."); *Reyes v. Bridgwater*, 362 F. App'x 403, 409 (5th Cir. 2010) ("The cases on deadly force are clear: an officer cannot use deadly force without an immediate serious threat to himself or others.").

The Court found that the law prohibiting the use of deadly force in circumstances alleged by Plaintiffs was clearly established in a particularized sense as well. *See* Mem. Op. & Order 26–27, Jan. 24, 2014, ECF No. 85. In the prior Opinion, the Court examined case law applying the *Garner* standard to circumstances where officers have used deadly force in apprehending mentally unstable and/or suicidal individuals who are armed. *Id.* at 26–27 (citing *Ballard v. Burton*, 444 F.3d 391, 402–03 (5th Cir. 2006); *Mace v. City of Palestine*, 333 F.3d 621, 622 (5th Cir. 2003); *Ontiveros*, 564 F.3d at 385). The Court held that these cases, all decided prior to the shooting incident in this case, make it clear to a reasonable officer that shooting a mentally disturbed teenager, who was pointing a gun the entire time at his own head and facing away from the officer, in an open outdoor area, and who was unaware of the officer's presence because no warning was given prior to the officer opening fire, was unlawful. *Id.* at 27. Otherwise stated, the law was clearly established at the time of the incident that, absent the "*Manis* act," *i.e.*, "the act that led [the officer] to discharge his weapon," there was no immediate threat sufficient to justify the use of deadly force. *Id.* at 27 (quoting *Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009)). Therefore, on October 25, 2010, the date of the shooting,

22

the law was clearly established, such that Officers Hunter and Cassidy would know that use of deadly force under the circumstances alleged by Plaintiffs violated Ryan Cole's Fourth Amendment rights. *Id.* at 26 (citing *Brosseau v. Haugen*, 543 U.S. 194, 200 (2004)).

        *b.*    *Factual Showing*

Having affirmed that Plaintiffs alleged a violation of a clearly established right, the Court turns now to the remaining inquiry in the qualified immunity analysis. The Court must determine whether the summary judgment evidence, taken in the light most favorable to Plaintiffs, shows that the Officers' use of deadly force was unreasonable. If the Plaintiffs are unable to present evidence creating a genuine issue of material fact as to the reasonableness of the Officers' actions, then summary judgment must be entered in favor of Defendants. *See Ballard*, 444 F.3d at 403. Plaintiffs must present more than mere unsupported allegations to create a genuine fact issue. *See Ontiveros*, 564 F.3d at 382.

The factual circumstances present immediately before and during the shooting are highly contested in this action. Thus, the Court must determine whether the contested issues of fact are *material* to the qualified immunity analysis.

According to Plaintiffs' expert Bevel, Cole kept the handgun aimed at his own head as he turned to face the Officers, never pointing the handgun at Officer Hunter. Pls.' App. Supp. Resp. Mot. Summ. J. Ex. 5 (Bevel Aff.), App. 115–16, ECF No. 147 (concluding physical evidence of stippling and gunshot wounds not consistent with having pointed the handgun toward the Officers as Officer Hunter described). Bevel concludes that Cole was initially facing away from the Officers at a 90 degree angle, holding a gun directed toward his own head, when he was first shot by the Officers. *Id.* at App. 117–18. This opinion is based in part on medical records showing that one bullet entered his

left arm above the elbow and continued into his body. *Id.* at App. 114; *Id.* at Ex. 4 (Cole Med. Records), at App. 100–04. As he was turning toward the Officers, one of the Officers shot him with the second bullet, which grazed his left arm. Bevel Aff., at App. 114–15, ECF No. 147; Cole Med. Records, at App. 100–04, ECF No. 147. As an involuntary reflex to being shot, Cole pulled the trigger on the gun that he was aiming toward his own head. Bevel Aff., at App. 115–16, ECF No. 147 (basing opinion on comparing normal reaction time with the recorded time between the first and final gunshots). Thus, the harm caused by the bullet wound to Cole's head proceeded directly and only as a consequence of being shot. *See id.* Although the Officers had the opportunity to give a warning, Bevel concludes that the Officers gave no identification or warning that would have allowed Cole a sufficient time to respond. Bevel Dep. 142:1–18, at App. 145, ECF No. 144; *Id.* at Ex. 2 (Hunter Dep.) 189:13–191:10, App. 46–48 (stating that he does not remember whether he gave a warning); *see also* Def.'s App. Supp. Mot. Summ. J. Vol. 4 Tab 28 (Carson Dash Cam), App. 920, ECF No. 122 (audio recording of the incident).

Viewing the facts in the light most favorable to Plaintiffs, a reasonable jury could find that Cole never pointed a weapon at the Officers and was not given an opportunity to disarm himself before he was shot. A jury could find that it would not have been reasonable for the Officers to believe that they were being threatened, and therefore they were not justified in using deadly force without first issuing an adequate warning.

Defendants argue that even accepting all of Plaintiffs' facts, they are entitled to qualified immunity. Defs.' Br. Supp. Mot. Summ. J. 31, ECF No. 113. Defendants contend that the Officers' decision to shoot Cole would still be objectively reasonable on Plaintiffs' facts because Cole posed an immediate danger to the Officers. *Id.* "Cole was holding a loaded gun, with his finger on the

24

trigger, while he was turning toward and then facing Officer Hunter. Cole could have shot Officer Hunter before Hunter could react and take action to defend himself." *Id.* at 32. Defendants argue that a reasonable officer could have feared for his life in such a situation and would not have to wait until fired upon to defend himself. *Id.* at 31; *see also* Braaten Dep. 94:11–15, at App. 743, ECF No. 120. Thus, Defendants contend that the Officers are entitled to summary judgment.

The Court disagrees with Defendants' conclusion. Viewing the competent summary judgment facts in the light most favorable to Plaintiffs, as the Court must at this stage in the litigation, Cole was unaware of the Officers' presence and no warning was given that granted him a sufficient time to respond. Bevel Dep. 142:1–18, at App. 145, ECF No. 144. Plaintiffs argue that it would not have been possible for Cole to have shot Officer Hunter before the Officer could react. *See id.* Viewing the evidence in this light, the Officers had the time and opportunity to give a warning and yet chose to shoot first instead. *See id.* Such an action, if proven by Plaintiffs, would violate clearly established law set forth in *Garner* that an officer identify himself if feasible under the circumstances. *Garner*, 471 U.S. at 11–12.

Defendants rely upon *Ballard, Ontiveros Mace,* and *Elizondo*. Defs.' Br. Supp. Mot. Summ. J. 29, 32, 34, ECF No. 113 (citing *Ballard v. Burton*, 444 F.3d 391 (5th Cir. 2006); *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379 (5th Cir. 2009); *Mace v. City of Palestine*, 333 F.3d 621 (5th Cir. 2003); *Elizondo v. Green*, 671 F.3d 506 (5th Cir. 2012)). However, in all four cases, the individual suspects were aware of the officers' presence and still refused to comply with the officers' instructions, thereby causing an objectively reasonable threat of harm to the officers. In *Ballard*, the suspect ignored an officer's command to put his rifle down, instead pointing the weapon in the air. 444 F.3d at 402. In *Ontiveros*, the individual ignored warnings to show his hands and instead reached

25

into a boot as if to retrieve something. 564 F.3d at 381. In *Mace*, the individual refused to comply with the officer's command to put down a sword. 333 F.3d at 622. In *Elizondo*, the officer warned that he would shoot the suspect if he moved closer with his knife. 617 F.3d at 508.

As applied in the instant action, Defendants argue that Cole was aware of the Officers' presence, had time to put down the firearm, but chose to hold on to the gun. *See* Def.'s App. Supp. Mot. Summ. J. Vol. 3 Tab 18 (Tooke Dep.), App. 819, ECF No. 120 (stating that Cole could have suddenly turned and fired); *id.* at Vol. 3 Tab 21–22 (Rodriguez Reports), at App. 843–04. Under such facts, the defendants may be entitled to qualified immunity. *See* Mem. Op. & Order 18–22, ECF No. 85. However, the Court must view the facts in the light most favorable to Plaintiffs, and, accordingly, the Court relies largely upon the expert testimonies of Bevel and Braaten. The Court notes that it would reach the same conclusion were it only relying upon Bevel's expert opinions. Viewing the summary judgment evidence as is required, the evidence supports Plaintiffs' argument that Cole did not know of the Officers' presence and inadequate warnings were given. Unlike Ballard, Ontiveros, Mace, and Elizondo, Cole was shot before he had an opportunity to disarm himself and did not pose an immediate threat to the officers. In the instant action, the Officers would have had suitable opportunity to give a warning, and yet did not give Cole time to respond. Further, the Fifth Circuit requires the suspect display a threatening "Manis act" before it is objectively reasonable to use deadly force. *Manis*, 585 F.3d 404. Encountering someone who is merely holding a gun to one's own head may not be a sufficiently threatening act. Here, Cole never made a threatening or provocative gesture toward Officers. Thus, it was not objectively reasonable for the Officers to use deadly force.

Courts are required "to be deferential to the choices made by police officers in high-risk situations." *Reyes*, 362 F. App'x at 407 (citing *Graham*, 490 U.S. at 397). "That deference, however,

cannot extend so far as to ignore an officer's violation of the core, established rule that deadly force may not be used '[w]here the suspect poses no immediate threat to the officer and no threat to others.'" *Id.* (quoting *Garner*, 471 U.S. at 11). Employing deadly force absent such a threat is a violation of the Fourth Amendment. *Id.* Due to the existence of genuine issues of material fact surrounding the Officers' use of deadly force, this case must be presented to a jury.

In summary, Plaintiffs have adequately identified genuine issues of material fact as to whether the Officers' use of deadly force was objectively unreasonable under clearly established law. Accordingly, the Court determines that Officers Hunter and Cassidy are not entitled to qualified immunity at this time.

## IV.    CONCLUSION

Based on the foregoing, the Court **DENIES** Defendants' Motion for Summary Judgment (ECF No. 112); **DENIES** the Defendants' Motions to Exclude the Expert Testimony of Tom Bevel (ECF No. 126) and Timothy Braaten (ECF No. 129). The Court further **OVERRULES** Plaintiffs' Objection Based on Judicial Estoppel. The Court declines to rule on other objections as outside the scope of this Court's Scheduling Order. *See* Order 11–12, Apr. 18, 2014, ECF No. 100. Accordingly, the parties are instructed to raise any objection not decided in this order at the appropriate stage in the litigation.

**SO ORDERED** this **22nd** day of **December, 2014.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**