**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **RANDY COLE and KAREN COLE,** | § | |
| *individually and as next friends of* | § | |
| **RYAN COLE,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:13-cv-02719-O** |
| | § | |
| **MICHAEL HUNTER et al.,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants Carl Carson, Martin Cassidy, City of Sachse, and Michael Hunter's Motion for Summary Judgement, Brief/Memorandum in Support, and Appendix in Support (ECF Nos. 220–22), filed June 8, 2020; Plaintiffs Karen Cole and Randy Cole's Response, Brief/Memorandum in Support, and Appendix in Support (ECF Nos. 264–66), filed September 29, 2020; and Defendants' Reply (ECF No. 273), filed October 13, 2020. Having considered the motion, briefing, appendices, record, and applicable law, the Court finds that Defendants' Motion should be and is hereby **GRANTED in part** and **DENIED in part**.

## I.     BACKGROUND

Ten years have passed since the underlying tragic encounter between Defendant Sachse Police Officers Michael Hunter ("Hunter"), Martin Cassidy ("Cassidy"), and Carl Carson ("Carson") (collectively, "the Officers") and Plaintiff Ryan Cole ("Cole"), which culminated in the Officers firing their weapons at Cole, leaving him with permanent injuries, including cognitive impairment, partial paralysis, and other serious mental and physical disabilities.

On September 21, 2012, Cole's father Randy Cole and his mother Karen Cole, individually and as next friends of Cole, brought this suit alleging four distinct constitutional deprivations under 42 U.S.C. § 1983 (2012): (1) use of excessive force in violation of the Fourth Amendment against Hunter and Cassidy (Count One); (2) maintenance of an official policy permitting use of excessive force in violation of the Fourth Amendment against the City (Count Two); (3) constitutionally inadequate policies, training, or supervision in violation of the Fourth Amendment against the City (Count Three); and (4) fabrication of evidence in violation of the Fourth and Fourteenth Amendments against Hunter, Cassidy, and Carson (Count Four). *See* Am. Compl. 14–29, ECF No. 67. For eight years, the parties have litigated the merits of Plaintiffs' claims and the Officers' assertions of their entitlement to qualified immunity at both the motion-to-dismiss and summary-judgment stages before this Court, the Fifth Circuit, and the Supreme Court.[1] The facts material to the present motion, viewed in the light most favorable to the non-movant Plaintiffs at this stage, are as follows:

On October 25, 2010, around 10:30 A.M., the Officers arrived at a tree line on Murphy Road in pursuit of Cole—a juvenile who had reportedly been wandering along nearby train tracks with a gun in hand. There, "unaware of the Officers' presence[,]" Cole backed out from the tree line in front of Hunter and Cassidy, holding his handgun to his own head. *Cole v. Carson*, 935 F.3d 44, 448–49 (5th Cir. 2019) (*en banc*) (hereinafter "*Cole en banc*"). "[Cole] never pointed a weapon at the Officers," and "never made a threatening or provocative gesture towards [the] Officers." *Id.* at 449. "[Cassidy and Hunter] had the time and opportunity to give a warning" for

---

[1] The relevant summary-judgment facts remain largely unchanged from the Fifth Circuit's most recent *en banc* opinion. The Court, therefore, incorporates by reference the relevant factual background from the *en banc* opinion into this order. *See Cole v. Carson*, 935 F.3d 44, 447–51 (5th Cir. 2019) (*en banc*); *see also Cole v. Hunter*, 68 F. Supp. 3d 628, 644–45 (N.D. Tex. 2014), *aff'd sub nom. Cole v. Carson*, 905 F.3d 334 (5th Cir. 2018), and *aff'd in part, appeal dismissed in part sub nom. Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019), *as revised* (Aug. 21, 2019).

Cole to disarm himself. *Id.* However, they provided "no warning . . . that granted [Cole] a sufficient time to respond," such that Cole "was not given an opportunity to disarm himself before he was shot." *Id.* Hunter and Cassidy then shot Cole multiple times. Hunter's first shot struck Cole as he was facing away from the Officers at a 90-degree angle. Following impact of the first shot, Cole's body turned or fell towards Hunter, who shot Cole a second time. As an involuntary reflex to being shot, Cole pulled the trigger of his own gun, shooting himself in his temple.

Immediately following the shooting, the Officers remained together at the scene while members of the Garland Police Department ("Garland PD") arrived. Cassidy and Hunter later returned to the Sachse Police Department ("Sachse PD") headquarters together, in violation of Garland PD's standard procedure for separating witnesses. Later that day, the Officers each provided statements to investigators (the "Statements"), now in dispute as allegedly fabricated evidence. Carson stated in relevant part:

> As [Cassidy and I] were about 30-40 feet from Officer Hunter, the suspect came out of the tree line almost standing directly in front of Officer Hunter. I was standing adjacent behind Lt. Cassidy and I was directly behind Officer Hunter. Then I heard Officer Hunter make a command to the suspect about showing his hands or dropping his guns. After the command was made, I heard gunshots and saw Officer Hunter and Lt. Cassidy firing at the suspect. I did not fire any shots of any kind due to a crossfire issue where my position was. I also could not see what the suspect was doing before the shots were fired due to the fact that he was standing directly in front of Officer Hunter, which put him out of my view. As the suspect was going down from the gunfire, I did see him fall with a gun in his hand.

Defs.' App. 25, ECF No. 222. Cassidy stated in relevant part:

> I started walking to Officer Hunter when I saw the suspect, matching the clothing and description that we had been given earlier, emerge from the tree line, moving backward, looking back at the railroad tracks (through the tree line) with a gun in his hand aimed at his own head. I could hear Officer Hunter[']s voice yell, but could not tell what was said due to the high winds; at that point[,] the suspect turned toward Officer Hunter and pointed the gun at him. At that point I was in immediate fear for the life of Officer Hunter and myself[.] I fired three rounds at the suspect[,] and the suspect fell[.] [H]e fell on his left side, facing away from myself and Officer Hunter.

*Id.* at 28. Hunter stated in relevant part:

> The subject appeared to be walking towards the railroad track, mentioned previously, so I advised Officer Carson, who had just pulled up[,] that we needed to go out to the highway and intercept the suspect[.] . . .
>
> I had my duty weapon out and heard someone moving in the brush behind me to the left about 10 to 20 feet. I was not sure it was the suspect or other police officers.
>
> I began to look for cover since I was out in the open. As I was moving towards the tree line[,] the suspect walked out from the brush approximately 10 to 20 feet from me with his back to me. Before I had the chance to give any commands, the suspect suddenly turned towards me and pointed a dark colored handgun directly at me. I was in fear of my life as well as the lives of Lt[.] Cassidy and Officer Carson. I then immediately fired four rounds at him with my duty weapon. I was so focused on the threat [that] I am not sure who else fired their weapons, but I do recall hearing another gunshot.

*Id.* at 31–32.[2] In summary, Hunter stated that he had no chance to issue a command to Cole, but Cassidy and Carson stated that Hunter shouted a warning to Cole. Hunter and Cassidy stated that Cole then turned and pointed his handgun at Hunter, at which point both officers—fearing for Hunter's life—opened fire defensively.

The Dallas County District Attorney presented the Statements, among other evidence, to a grand jury. It returned a no-bill for the Officers and charged Cole with felony aggravated assault of a public servant, and Cole was placed under house arrest. The arrest affidavit, prepared by Detective Stacy Tooke ("Tooke"), states in relevant part:

> Detective's [sic] Tooke and Sweet conducted individual walk-throughs of the crime[ ]scene with officers involved in the shooting. Detective's [sic] Tooke and Sweet did a walk-through with Sachse PD Lt. Martin Cassidy and a [second] walk through was done with detective's [sic] Tooke, Sweet and a Sachse Cid Sgt. Chris Burns, with Lt. Cassidy. Detective's [sic] Tooke and Sweet made a walk through of the crime scene with officer involved in the shooting, Sachse PD Officer Michael Hunter, with Cleat attorney Craig Driskell[.] Sachse PD Officer Carl Carson was in very close proximity to Lt. Cassidy (Carson stood a few feet behind Cassidy[] and did not fire his handgun[)]. Shell casings where Officer Hunter had fired his

---

[2] The statement was originally given in all caps, but for ease of reading, the Court has re-formatted it.

rounds, were the 3 .40 cal. shell casings located by the treeline, [sic] in close proximity, about 3 to 7 yards, from the area where Ryan Cole had fallen. Officer Michael Hunter saw Cole emerge from the treeline [sic] and lower his handgun, pointing it at Hunter. Hunter gave a command to Cole to drop his gun and then fired. (detective's [sic] heard the command, listening to officer hunter's body mic. recording.) Lt. Cassidy remembered Hunter giving a command[;] Hunter did not remember giving one. Both of them knew that Cole pointed his handgun at Hunter[,] and they both fired multiple shots. There were [four] .40 cal. shell casings on the ground in the area where Lt. Cassidy had been standing. This was about 15 to 30 yards north of where Officer Hunter was, in the area where Lt. Cassidy had been standing. The third Sachse PD Officer, Officer Carl Carson could not see Ryan Cole, as he was positioned in close proximity to Lt. Cassidy[,] and Officer Hunter was directly between himself and Cole.

Pls.' App. 19–23, ECF No. 266.[3]

About a month after the indictment, investigators received a ballistics report from the crime lab. *See* Pls.' App. 190–228, 1210-25, ECF No. 266. The ballistics analysis, taken together with stippling observed around Cole's head wound, made clear that Cole had shot himself in the temple. *Id.* The Statements, insofar as the Officers asserted that Cole aimed his gun at Hunter, were incongruent with the evidence from the ballistics report. *Id.* Dallas County prosecutors accepted Cole's plea to misdemeanor unlawful carry of a weapon and dropped the aggravated assault charge.

At the time of the shooting, the City maintained polices regarding the use of force, embodied in the Sachse PD General Orders. Defs.' App. 36–50, ECF No. 222. The General Orders are interpreted as "combined with the requirements and restraints of Texas law, Federal law, and sound principles of police practices[.]" *Id.*[4]

---

[3] The arrest affidavit was originally prepared in all caps, but for ease of reading, the Court has re-formatted it.

[4] The General Orders also required compliance with the laws and Constitution of the United States, emphasized protection of human life, and authorized deadly force only "to protect [an officer] or another person from imminent death or serious bodily injury." Defs.' App. 35–52, ECF No. 222.

Two years later, Plaintiffs filed this suit pursuant to 42 U.S.C. § 1983 asserting the Officers and the City violated Cole's constitutionally protected rights under the Fourth and Fourteenth Amendments. Plaintiffs filed their Amended Complaint, the live pleading, on August 30, 2013 (ECF No. 67), and the Officers filed a motion to dismiss these claims, asserting their entitlement to qualified immunity. *See* ECF Nos. 67, 70. The Court denied the Officers' motion to dismiss based on qualified immunity as to all section 1983 claims filed against them in their respective individual capacities. ECF No. 85. Only Carson filed an interlocutory appeal of the Court's decision to deny him qualified immunity with respect to Plaintiffs' fabrication-of-evidence claims in Count Four. ECF No. 87. Pending Carson's interlocutory appeal, the Court stayed discovery with respect to Count Four and, overruling Cassidy's and Hunter's request, allowed discovery to proceed on all other grounds, including Count One, Plaintiffs' excessive-force claim. ECF No. 102. Following discovery, on September 22, 2014, Cassidy and Hunter moved for summary judgment on Counts One and Four, asserting their entitlement to qualified immunity. ECF No. 112. The Court denied Cassidy and Hunter's motion, only addressing Count One, and they filed an interlocutory appeal from the Court's ruling. ECF Nos. 153–54.

In 2015, a Fifth Circuit panel consolidated the Officers' respective appeals; affirmed the Court's denial of Cassidy and Hunter's motion for summary judgment based on qualified immunity  with respect to Plaintiffs' Fourth Amendment excessive-force claim and of Carson's motion to dismiss based on qualified immunity as to Plaintiffs' Fourteenth Amendment fabrication-of-evidence claim; and reversed the Court's denial of Carson's motion to dismiss Plaintiffs' Fourth Amendment and *Brady* fabrication-of-evidence claims, finding qualified immunity applicable to those claims. *Cole v. Carson*, 802 F.3d 752, 755 (5th Cir. 2015), *cert. granted, judgment vacated sub nom. Hunter v. Cole*, 137 S. Ct. 497 (2016), and *opinion reinstated*

*in part*, 905 F.3d 334 (5th Cir. 2018) (hereinafter "*Cole I*"). The Officers petitioned the Supreme Court for a writ of certiorari, and in 2016, the Supreme Court granted the writ, vacated the panel's judgment, and remanded the case to the Fifth Circuit for further consideration in light of the Supreme Court's intervening holding in *Mullenix v. Luna*, 577 U.S. 7 (2015). *Hunter v. Cole*, 137 S. Ct. 497 (2016).

On remand, a divided Fifth Circuit panel again held that, based on the evidence, whether Cassidy and Hunter were entitled to qualified immunity on Count One could not be determined at the summary-judgment stage and reinstated the *Cole I* opinion as to Count Four, Plaintiffs' fabrication-of-evidence claims. *Cole v. Carson*, 905 F.3d 334, 347 (5th Cir. 2018), *reh'g en banc granted* 915 F.3d 378 (5th Cir. 2019), and *on reh'g en banc* 935 F.3d 444 (5th Cir. 2019), *as revised* (Aug. 21, 2019), *cert. denied sub nom. Hunter v. Cole*, 207 L. Ed. 2d 1051 (June 15, 2020) (hereinafter "*Cole II*"). The Officers moved for rehearing *en banc*, and the Fifth Circuit granted their request.

Sitting *en banc* in 2019, the majority opinion of the Fifth Circuit affirmed the Court's denial of Hunter and Cassidy's motion for summary judgment based on qualified immunity with respect to Plaintiffs' Fourth Amendment claim of excessive force; affirmed the Court's denial of Carson's motion to dismiss based on qualified immunity with respect to Plaintiffs' Fourteenth Amendment claim regarding the imposition of false charges and fabrication-of-evidence; reversed the Court's denial of the motion to dismiss Plaintiffs' claim of fabrication of evidence under the Fourth Amendment, finding qualified immunity applicable; and reversed the Court's denial of the motion to dismiss Plaintiffs' claim that the alleged fabrication of evidence entailed a *Brady* violation. *Cole en banc*, 935 F.3d at 451. The Officers again petitioned the Supreme Court for a writ of certiorari. While the Officers' writ was pending, the City and the Officers filed the present Motion for

Summary Judgement as to Counts Two, Three, and Four on June 8, 2020. ECF Nos. 220–22. Plaintiffs filed a Motion to Strike Defendants' Motion for Summary Judgment and Emergency Motion to Continue the case. ECF No. 225. Four days later, the Supreme Court denied the writ. *Hunter v. Cole*, 207 L. Ed. 2d 1051 (June 15, 2020); *see also* ECF No. 230.

The Court lifted its stay, allowed discovery to resume, and extended the mediation deadline. ECF Nos. 233, 238. The Court set this case for trial on December 4, 2020. ECF No. 269. The Court also denied Plaintiffs' Motion to Strike and granted Defendants retroactive leave to file the present motion. ECF No. 238. Plaintiffs responded to the Motion on September 29, 2020. ECF Nos. 263–65. Defendants replied on October 13, 2020. ECF No. 273. The Motion is now ripe for consideration by the Court.

## II.   LEGAL STANDARDS

### A.  Motion for Summary Judgment

The Court may grant summary judgment where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *See Celotex*, 477 U.S. at 323. "The party opposing summary

judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

When reviewing the evidence on a motion for summary judgment, courts must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. If there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion. *Id.* at 250.

## III.   ANALYSIS

### A. Count Two: Plaintiffs' Section 1983 Claim Against the City Based on Policy, Practice, or Custom

The City moves for summary judgment as to Count Two, Plaintiffs' section 1983 claim against the City based on its policies, practices, or custom. Mot for Summ. J. 27, ECF No. 221. Plaintiffs argue that summary judgment is improper for three distinct reasons: (1) the City's use-of-force policy is facially unconstitutional for failing to require a police officer using deadly force to first give a warning if feasible; (2) the City permitted unconstitutional and unlawful polices, practices, customs, or habits to exist in the Sachse PD; and (3) the City effectively ratified unconstitutional deadly force policies by refusing to discipline the Officers through the Sachse PD Internal Investigation Report.[5] Pls.' Resp. 29–30, 38–48, 49, ECF No. 265.

_____

[5] The Court rejects Defendants' contention that Plaintiffs are limited to their facial challenge to the use-of-force policy. *See* Defs.' Reply 1 n.1, ECF No. 273. Although Plaintiffs' briefing focuses on their facial challenge, the Amended Complaint presents alternative theories of liability. *See* Am. Compl. ¶ 6.4, ECF No. 67 ("[T]he members of the City Council, the City Manager and the Chief of Police permitted and allowed unconstitutional and *unlawful policies, practices, customs or habits* to exist and to flourish within

9

A municipality may be liable under section 1983 if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *see also Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997). Section 1983 does not allow a municipality to be held vicariously liable based on a theory of respondeat superior. *Id.* The Fifth Circuit has consistently held that three elements must be proven to establish liability against a municipality under *Monell*: "(1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right whose 'moving force' is the policy or custom." *Covington v. City of Madisonville, Texas*, 812 F. App'x 219, 225 (5th Cir. 2020); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

For the purposes of section 1983, a policy is defined as "duly promulgated policy statements, ordinances or regulations[,]" and a custom is defined as "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy[.]" *Piotrowski*, 237 F.3d at 579 (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (*en banc*)) (citing *Bryan Cty.*, 520 U.S. at 405–07); *see also Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) ("Liability must rest on official policy, meaning the governmental entity's policy, and not the policy of an individual official.").

The parties agree that the relevant official policy at issue is the use-of-force policy, embodied in Sachse PD General Orders (the "Policy").[6] Pls.' Resp. 34–35, ECF No. 265; Defs.'

---

the Sachse Police Department."); *see also id.* ¶ 6.9 (Accordingly, the City of Sachse, Texas[,] itself[,] has now *affirmatively ratified* both the implementation of its unconstitutional deadly force policy by each of the Defendants and the conduct of Defendants Hunter and Cassidy as to the unprovoked, unlawful, and unconstitutional shooting of Ryan Cole.").

[6] *See also* Defs.' App. 36-50, ECF No. 222 (Sachse Police Department General Orders Section 303.1: Levels of Force; Section 303.07: Use of Deadly Force; Section 303.09: Use of Deadly Force Policy; Section 691.00: Use of Deadly Force Training; and Section 692.00: Use of Force).

Reply 1–2, ECF No. 273; *see also* Am. Compl. ¶ 6.5, ECF No. 67. The Policy states in relevant part:

> 692.05 USE OF DEADLY FORCE
>
> a. Justification for the use of deadly force.
>       In all situations, justification for the use of deadly force must be limited to the facts reasonably apparent to the officer at the time.
>
> b. Authorization to use deadly force.
>       i. Officers will only use deadly force to protect themselves or another person from imminent death or serious bodily injury[.]
>       ii. Officers will not fire their weapon under conditions that would unnecessarily subject bystanders or hostages to death or possible injury except to preserve life or prevent serious bodily injury[.]

Defs.' App. 47–51, ECF No. 222 (incorporating the Texas Police Chiefs Association's Best Practice Standards 6.01.0, 6.02.1, 6.07.1, and 6.09.1). Having identified the relevant official policy, the Court addresses in turn each of Plaintiffs' theories of municipal liability.

### 1. *Plaintiffs' Facial Challenge to the City's Policy*

Plaintiffs contend that the City's "policies promulgated and applicable are facially deficient under the Constitution—failing to require a warning before use of deadly force when feasible." Pls.' Resp. 1, ECF No. 265. According to Plaintiffs, clearly established law requires that "an officer must warn a citizen, when feasible, prior to the use of deadly force[,] and then only if the suspect is an immediate threat to the life of the officer or others." Pls.' Resp. 29, ECF No. 265 (citing *Cole en banc*, 935 F.3d at 453-55) (in turn citing *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985)). Defendants maintain that "*Garner* itself does not mandate that a policy or regulation contain a warning requirement in order to be facially constitutional." Defs.' Reply 2, ECF No. 273.

*Cole en banc* does not foreclose the issue of whether a policy is facially unconstitutional when a policymaker omits reiteration of the constitutional principle of *Garner*.[7] However, Fifth Circuit precedent does foreclose the issue: "[M]unicipalities are not required to incorporate specific language from our case law, or that of the Supreme Court[.]" *Salazar-Limon v. City of Houston*, 826 F.3d 272, 279 (5th Cir. 2016), *as revised* (June 16, 2016). Regardless of the constitutional principle announced in *Garner*,[8] the City need not include specific language from *Garner* to have a facially constitutional use-of-force policy. Plaintiffs present no other reason why the Policy is facially unconstitutional.[9] Therefore, the Court rejects Plaintiffs' contention that the City's Policy was facially unconstitutional.

### 2. *Plaintiffs'* Monell *Challenges to the City's Practices and Customs*

The City argues that summary judgment is appropriate because the City Council, as the final policymaker, did not act with deliberate indifference to any alleged constitutional infirmities in the General Orders. Mot for Summ. J. 29–41, ECF No. 221. Plaintiffs argue that, even if the Policy is facially constitutional, the City acted with deliberate indifference by choosing deliberately not to warn before the use of deadly force despite "the obvious risk of death with deadly force." Pls.' Resp. 28, 37–39, 43, ECF No. 265 (citing *Garza v. City of Donna,* 922 F. 3d 626, 638 (5th Cir. 2019)). Plaintiffs also maintain that the City Council impliedly delegated final

---

[7] Plaintiffs invite the Court to review the Sachse PD's revisions to it policies as proof of facial unconstitutionality, specifically highlighting that its 2010 revisions removed the *Garner* "warn-if-feasible" language from the Policy. Pls.' Resp 41, ECF No. 265 (Pls.' App. 255, 32-36, 1074–75, 1157, ECF No. 266). The Court declines to do so because it need only look to the face of the current Policy to determine its facial constitutionality under *Salazar-Limon v. City of Houston*, 826 F.3d 272, 279 (5th Cir. 2016), *as revised* (June 16, 2016).

[8] The parties in their briefing debate the nuances of the *Garner* holding, but the actual principle of *Garner* is not material to the facial challenge. *See* Pls.' Resp. 28–29, ECF No. 265; Defs.' Reply 1–2, ECF No. 273.

[9] The Court rejects Plaintiffs' theory that the Policy is a facially unconstitutional use-of-force policy because it violates Texas Penal Code § 9.51(a)(2). *See* Am. Compl. ¶ 6.7, ECF No. 67. Constitutional protections are not defined by state law. *See Fields v. City of South Houston*, 992 F.2d 1183, 1189 (5th Cir. 1989).

policymaking for police policy to the Chief of Police and that the Chief, and alternatively the City Council, was deliberately indifferent to constitutional deprivations that would arise. Pls.' Resp. 30–48, ECF No. 265; *see also* Am. Compl. ¶ 6.4, ECF No. 67 ("[T]he members of the City Council, the City Manager and the Chief of Police permitted and allowed unconstitutional and *unlawful policies, practices, customs or habits* to exist and to flourish within the Sachse Police Department."). The Court turns to whether Plaintiffs raise a genuine dispute of material fact that would give rise to *Monell* liability.

For a *Monell* claim, the policy or custom relied upon to establish liability may include the inaction of official policymakers but only when such inaction constitutes "deliberate indifference" to the rights of the plaintiff, and such indifference is a "closely related" cause of the plaintiff's injuries. *City of Canton v. Harris*, 489 U.S. 378, 388, 391 (1989); *see also Covington*, 812 F. App'x at 225–26 ("[W]here an alleged policy is facially innocuous," a plaintiff must show that the policy was "implemented with 'deliberate indifference' to the 'known or obvious consequences' that constitutional violations would result."). "It is not enough for a [section] 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Bryan Cty.*, 520 U.S. at 404. The policymaker's indifference (culpability) and the moving force (causation) inquiries are distinct and must be proven independently:

> *Bryan County* underscores the need for *Monell* plaintiffs to establish both the causal link ("moving force") **and** the City's degree of culpability ("deliberate indifference" to federally protected rights). These requirements must not be diluted, for "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.

*Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (citing *Bryan Cty.,* 520 U.S. at 410).

To show causation, a plaintiff must show "a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 579. A plaintiff must establish that the

governmental entity through its deliberate conduct was the "moving force behind the injury alleged[.]" *Bryan Cty.*, 520 U.S. at 404. And "each alleged policy may have had a distinct impact as the moving force of [a plaintiff's] state-created danger claim." *Piotrowski*, 237 F.3d at 581. "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably." *Bryan Cty.*, 520 U.S. at 406–07.

The type and quantum of proof a plaintiff must offer to establish deliberate indifference vary with the type of inaction alleged and with the identity of the wrongdoer. When the wrongdoer is a policymaking official, as Plaintiffs contend here, a single act will suffice, if deliberate indifference and causation are established. *See, e.g.*, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly."). In order to base deliberate indifference on a single incident, a plaintiff must show it should have been apparent to the policymaker that a constitutional violation was the "known or obvious consequence[]" of its promulgated policy. *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003).

In short, a plaintiff must identify the policy, connect the policy to the governmental entity itself, demonstrate deliberate indifference on the part of the policymaker in promulgating the policy, and show that his injury was incurred because of the application of that specific policy. *Bennett*, 728 F.2d at 767.

The parties focus their briefing on identifying the policymaker and whether that policymaker acted with deliberate indifference. *See* Mot. for Summ. J. 29–32, ECF No. 221; Pls.' Resp. 30–31, ECF No. 265 (citing *Webb v. Town of St. Joseph*, 925 F.3d 209, 215 n.35 (5th Cir.

14

2019)) (citing *Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161, 167–68 (5th Cir. 2010));

Defs.' Reply 7–9, ECF No. 273 (discussing the Chief of Police's commitment to the TPCA Best

Practices program). Regardless of whether the Chief of Police or the Sachse City Council

possessed final policymaking authority for police policy or whether either promulgated the Policy

with deliberate indifference, the Court concludes there is no genuine dispute of material fact as to

causation—whether the City's Policy was the moving force behind the Officers' actions.

In response to the City's motion for summary judgment, Plaintiffs contend that "[the

Officers'] conduct and [the City's] policy were a moving force in Ryan's constitutional

deprivation." Pls.' Resp. 2, ECF No. 265. The City maintains, in reply, that "there is zero evidence

which shows that the police department's use[-]of[-]force regulation was the moving force that

directly caused an Officer to shoot Cole." Defs.' Reply 11, ECF No. 273 (citing *James v. Harris

Cty.*, 577 F.3d 612, 618–619 (5th Cir. 2009)). The Court agrees.

Plaintiffs contend that "causation is straightforward" in this case. *See* Pls.' Resp. 28, ECF

No. 265 (quoting *Bryan Cty.*, 520 U.S. at 404 ("Where a plaintiff claims that a particular municipal

action itself violates federal law, or directs an employee to do so, resolving these issues of fault

and causation is straightforward.")). Plaintiffs' contention presupposes that the Policy is facially

unconstitutional. The Court, however, previously determined the Policy is not facially

unconstitutional. *See infra* Part III(A)(1). As such, causation is not "straightforward" and will not

be presumed.

Plaintiffs rely on their expert's legal conclusion alone to show that (1) "the policy in

question gave the [Officers] exactly the wrong instruction—that no warning was required

regardless," and (2) "[t]hat the policy created the situation in which Cole was shot is indisputable."

Pls.' App. 264, ECF No. 266. But as with the analysis of whether a policy is facially

unconstitutional, the absence of an express duty to warn in a policy does not itself instruct the opposite—for an officer to shoot suspects at will without warning. *See infra* Part III(A)(1). For a facially constitutional policy, the test of causation is whether the Policy was the "moving force" of the constitutional violation—not whether a different policy would have changed the Officers' actions, as Plaintiffs suggest. *See* Pls.' Resp. 49, ECF No. 265 (Pls.' App. 1138-1139, ECF No. 266); *Harris*, 489 U.S. at 391–92 (1989) ("To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under [section] 1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a [section] 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident.").

Hunter and Cassidy swore that they did not shoot Cole because they believed a City policy or police regulation dictated that they fire, and also swore that, even if a policy dictated they fire under the circumstances, they did not have time to analyze how to apply any City policy or police department regulation. Defs.' App. 97, 101, ECF No. 222. Even had Hunter and Cassidy understood the Policy negligently or believed their action complied with Sachse PD's practices or customs despite their actions resulting in a constitutional deprivation, *see* Pls.' App. 1136-37, ECF No. 266, without more, Plaintiffs "simply have shown that the *employee* [Hunter or Cassidy] acted culpably"—not the City. *Bryan Cty.*, 520 U.S. at 406–07. Even viewing the facts in the light most favorable to the non-movant Plaintiffs, they have failed to raise a genuine dispute of fact to support their argument that a Sachse PD policy, custom, or practice was the "moving force" behind Hunter's or Cassidy's decision to shoot Cole. Without a showing of causation between the Policy (or a custom or practice) and the constitutional deprivation, no reasonable jury could conclude that the City is liable for use of force based on its policies, practices, or customs. Accordingly, Plaintiffs

have failed to raise a genuine dispute of material fact as to the their unconstitutional policy or custom claim under *Monell* against the City.[10]

### 3.  *Plaintiffs' Challenge to the City's Ratification of the Officers' Actions*

Plaintiffs also seek to hold the City liable under a theory of ratification. Pls.' Resp. 49, ECF No. 265. Plaintiffs emphasize that the Sachse PD Internal Investigation Report ("Report") found no fault on the part of the Officers and that the City did not discipline the Officers. *Id.* Plaintiffs also note that the City Council did not take corrective action on the Report or change police policy following the Report. *Id.* On these facts, Plaintiffs argue that the City Council and Chief of Police effectively ratified an unconstitutional practice, namely, the Officers' shooting Cole without warning. Pls.' Resp. 49, ECF No. 265 (citing Pls.' App. 122–133, 231–34, 249, 261–62, 1159–61, 1195, ECF No. 266).

An officer's decision is chargeable to the municipality if "authorized policymakers approve [the] decision and the basis for it." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *see also Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001). "[A] municipality is not liable under the ratification theory where a Police Chief accepts his officers' version of events, so long as 'that version did not show that the deputies' actions were manifestly indefensible." *Allen v. City of Galveston*, No. G-06-467, 2008 WL 905905, at *8 (S.D. Tex. March 31, 2008) (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1162 (5th Cir. 1986)). Without a showing that the Officers' actions were "manifestly indefensible" based on their version of the facts, failure to discipline, even if the City blindly accepted the Officers' version of the incident, does not equate to ratifying

---

[10] The Court declines Plaintiffs' invitation to inject inadequacy-of-training precedent beyond the generalized standard for deliberate indifference into its *Monell* analysis of the Policy. *See* Pls.' Resp. 38, ECF No. 265 (citing *Harris*, 489 U.S. at 378 (1989)) (citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994)). Plaintiffs abandoned Count Three, *see* Pls.' Resp. 2, ECF No. 265, and the Court cannot graft the standards applicable to that distinct claim onto Count Two. *See Piotrowski*, 237 F.3d at 581 ("each alleged policy may have had a distinct impact as the moving force of [Plaintiffs'] state-created danger claim.").

unconstitutional conduct. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992); *see, e.g., Taylor v. Hartley*, No. 4:18-cv-04811, 2020 WL 5646118, at *15 (S.D. Tex. Sept. 22, 2020) (finding an officer's version of a physical altercation not "manifestly indefensible" and concluding that the officer allegedly fabricated an alternative version actually indicated the opposite of ratification of an unconstitutional act—that the municipality did not tolerate the use of excessive force).

Even viewing the Officers' version of the facts in the light most favorable to the non-movant Plaintiffs, the Officers' responses to Cole's actions were not manifestly indefensible. Plaintiffs present no evidence showing otherwise. In short, Plaintiffs' ratification argument fails.

For these reasons, even viewing all facts in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, the Court determines that Plaintiffs have failed, under each of their three theories, to raise a genuine dispute of material fact as to Count Two— their Section 1983 claim under *Monell* against the City. Accordingly, the Court will grant the City's motion for summary judgment as to Count Two.[11]

### B.  Count Three: Plaintiffs' Section 1983 Failure-to-Train Claim Against the City

The City also moves for summary judgment on Count Three, Plaintiffs' failure-to-train claim against it. Mot. for Summ. J. 41, ECF No. 221. In their response, Plaintiffs withdraw Count Three. Pls.' Resp. 2, ECF No. 265. Accordingly, the Court will grant judgment as a matter of law in favor of the City as to Plaintiffs' failure-to-train claim and dismiss the claim with prejudice.

### C.  Count Four: Fabrication-of-Evidence Claim Against Individual Officers

The Officers move for summary judgment on Count Four, Plaintiffs' fabrication-of-evidence claim, and assert their entitlement to qualified immunity. Mot. for Summ. J. 7, 19, ECF

---

[11] Because the Court will grant summary judgment as to Count Two against the City, it need not address the City's alternative assertion of entitlement to official immunity.

No. 221 (citing *Manuel v. City of Joliet*, 137 S. Ct. 911, 920 (2017)) (citing *Cole I*, 802 F.3d at 764–65).[12] The evidence in this case lends itself to analyzing the claim against Carson separately from Hunter and Cassidy. For the following reasons, the Court concludes (1) that Plaintiffs raise no genuine dispute of material fact that Carson fabricated evidence and (2) that Plaintiffs have raised a genuine dispute of material fact to support their claims that Hunter and Cassidy fabricated evidence and, therefore, Hunter and Cassidy are not entitled to summary judgment based on qualified immunity **or** summary judgment based on the merits with respect to Count Four.

### (1) Fabrication-of-Evidence Claim Against Carson

Carson moves for summary judgment with respect to Count Four, in which Plaintiffs allege he fabricated evidence in violation of the Fourteenth Amendment. Mot. for Summ. J. 6–17, ECF No. 221. Even viewing the evidence in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, the Court concludes that Carson is entitled to summary judgment with respect to Count Four. In his October 25, 2010 Statement, Carson states in relevant part: "I also could not see what the suspect was doing before the shots were fired due to the fact that he was standing directly in front of Officer Hunter, which put him out of my view." Defs.' App. 25, ECF No. 222. Plaintiffs' allegation supporting its claim against Carson fundamentally mischaracterizes Carson's statement as affirming that Cole faced and pointed his weapon at Hunter. *See* Am. Compl. ¶ 4.21, ECF No. 67 ("[E]ach of the individual Defendants, functioning as complaining witnesses, then falsely swore under oath that Ryan Cole, by facing and pointing a

---

[12] Plaintiffs' fabrication-of-evidence claim encompasses three allegedly fabricated statements made by the Officers on the night of the shooting, as well as summary judgment evidence Plaintiffs contend supports the inference that the Sachse PD and Garland PD manipulated those statements to charge Cole with aggravated assault of a peace officer. *See* Am. Compl. ¶¶ 4.15, 4.21, ECF No. 67 ("Each falsely claimed that Ryan Cole was facing Defendant Hunter when Ryan Cole was shot and, further each falsely claimed that Ryan Cole had lowered and was pointing his weapon at Defendant Hunter when he was shot.").

weapon at Defendant Hunter and/or the other officers, had committed an aggravated assault on a public servant.").

The summary-judgment evidence reveals no genuine dispute of material fact that, from Carson's position, "[Ryan Cole] was out of view." Defs.' App. 25, ECF No. 222. Plaintiffs point to no other material facts that would allow the Court to draw a reasonable inference in their favor that Carson may have fabricated evidence that influenced the decision to charge Cole with aggravated assault of a peace officer. *See* Pls.' Resp. 5–24, ECF No. 265. Plaintiffs also have not provided the Court with any evidence in the summary judgment record to show that the charging officers relied on other statements or evidence produced by Carson. *See id.*; *see also* Pls.' App. 19–22, 23, ECF No. 266. Thus, Plaintiffs fail to raise a genuine dispute of material fact that Carson fabricated evidence that influenced the decision to charge Cole with aggravated assault on a public servant. Accordingly, the Court will grant summary judgment on Plaintiffs' Count Four fabrication-of-evidence claim in favor of Carson.[13]

(2) *Fabrication-of-Evidence Claim Against Cassidy and Hunter*

Cassidy and Hunter also move for summary judgment with respect to Count Four. They argue they are entitled to summary judgment based on their entitlement to qualified immunity and based on the merits. Mot for Summ. J. 6–25, ECF No. 221. In opposition, Plaintiffs argue that qualified immunity is foreclosed by the law of the case from the *Cole I* opinion and that a genuine dispute of material fact exists based on the summary-judgment evidence and, specifically, Garland PD's criminal investigation. Pls.' Resp. 16–17, ECF No. 265. The Court first addresses Cassidy and Hunter's motion for summary judgment premised on their entitlement to qualified immunity.

a.   Qualified Immunity

---

[13] Because the Court will grant summary judgment as to Count Four in favor of Carson, it need not address his assertion of entitlement to qualified immunity.

Cassidy and Hunter assert their entitlement to qualified immunity, arguing that Plaintiffs fail to satisfy their "burden of negating both prongs of the defense." Mot. for Summ. J. 18–22, ECF No. 221 (citing *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012)). In response, Plaintiffs argue that the Court is bound by the law of the case and that Plaintiffs have already satisfied both prongs to negate qualified immunity. Pls.' Resp. 15, ECF No. 265. Specifically, they maintain that "*Cole I* established that fabricating evidence to attempt to convict an innocent person of a crime is a violation of due process of law under the Fourteenth Amendment[,]" and that the law was clearly established law at the time of the alleged violation. *Id.* (quoting *Cole I*, 802 F.3d at 773–74) (citing *Musacchio v. United States*, 136 S. Ct. 706, 716 (2016)) (citing *Ball v. LeBlanc*, 881 F.3d 346, 351 (5th Cir. 2018)) (citing *Coleman v. United States*, 799 F. App'x 227, 229 (5th Cir. 2020)).

The doctrine of qualified immunity protects government officials sued under section 1983 "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It is important to resolve qualified immunity questions at the earliest possible stage in the litigation. *Id.* The burden of proof for overcoming a qualified immunity defense at the summary judgment stage rests upon Plaintiffs. *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992); *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 490 (5th Cir. 2001). Plaintiffs bear the burden of establishing that the facts show (1) Defendants violated one of Plaintiffs' constitutional rights and (2) the right was "clearly established" at the time of Defendants' alleged misconduct. *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009); *accord Saucier v. Katz*, 533 U.S. 194 (2001); *Pearson*, 555 U.S. at 236. "To negate a defense of qualified immunity and avoid summary

judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'" *Ontiveros*, 564 F.3d at 382 (quoting *Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991)).

The relevant question is whether a reasonable officer *could have believed* that his conduct was lawful in light of clearly established law and the information possessed by him. *Reese*, 926 F.2d at 499. If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (*citing Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). Conversely, an officer's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Jones v. City of Jackson*, 203 F.3d 875, 879 (5th Cir. 2000). In analyzing qualified immunity claims, the Supreme Court has "repeatedly told courts . . . to not define clearly established law at a high level of generality." *Mullenix*, 136 S. Ct. at 308 (citation omitted). Pursuant to *Mullenix*, courts must consider "whether the violative nature of *particular* conduct is clearly established" and must undertake this inquiry "in light of the specific context of the case, not as a broad general proposition." *Id.* (citations and internal quotations marks omitted).

Although Hunter and Cassidy encourage the Court to re-evaluate the Fifth Circuit's *Cole I* decision in light of *Manuel* and *Melton*, the Court declines to do so. *See* Mot. for Summ. J. 19–25, ECF No. 221 ("Under an analysis guided by the Supreme Court's [*Manuel v. City of Joliet*, 137 S. Ct. 911, 918 (2017),] case, there simply is no violation.") ("This Court should also consider the analysis of the Fifth Circuit's [] opinion *Melton v. Phillips*, 875 F.3d 256 (5th Cir. 2017)"). Both *Manuel* and *Melton* are limited to the application of qualified immunity for a Fourth Amendment

fabrication-of-evidence claim—not under the Fourteenth Amendment as in this case.[14] *Cole I* clarified that "where there is no more specific constitutional protection available, the Fourteenth Amendment may offer protection" distinct from that provided by the Fourth Amendment. 802 F.3d 772–73. Just last year, the *en banc* Fifth Circuit expressly reinstated the *Cole I* fabrication-of-evidence holding in light of *Mullenix. See Cole en banc*, 935 F.3d at 447 ("The Coles' remaining claims are unaffected by the reasoning of *Mullenix*, and so, as in *Cole I*, we AFFIRM denial of the motion to dismiss the Coles' Fourteenth Amendment false-charge claim"). As required for this Court to revisit the law of the case, Defendants do not argue that a change of controlling authority has occurred since the Fifth Circuit's *en banc* decision, nor do they show an injustice. *See Musacchio*, 136 S. Ct. at 716. Thus, the Fifth Circuit's opinion in *Cole I* is controlling, and the Court may not *ad hoc* re-evaluate or second-guess the law of the case. Accordingly, the Court turns to whether the law of the case permits qualified immunity here.

The Fifth Circuit has already affirmed that Plaintiffs alleged that the particular conduct amounted to a violation of a clearly established constitutional right. *See Cole I*, 802 F.3d at 777. The Fifth Circuit held that no reasonable police officer could believe that his conduct in fabricating evidence would be lawful in light of that clearly established law. *See id.* Therefore, so long as the Court concludes that, based on the summary judgment evidence, Plaintiffs raised a genuine dispute of material fact that Hunter and Cassidy fabricated evidence in violation of Cole's Fourteenth Amendment right, they are not entitled to qualified immunity because, according to the Fifth Circuit, no reasonable officer would believe their actions were lawful. *See id.* Accordingly, the Court addresses whether Plaintiffs satisfy their burden of raising a genuine dispute of material fact

---

[14] Other cases cited in Defendants' Reply Brief are not instructive for the same reason. *See* Defs.' Reply 17, ECF No. 273 (citing *Johnson v. District of Columbia*, 2020 WL 5816236 *10 (D.C. Sept. 30, 2020)) (citing *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003) (*en banc*)).

"beyond mere allegations" that Hunter and Cassidy fabricated evidence, violating Cole's clearly established Fourteenth Amendment right. *See Ontiveros*, 564 F.3d at 382.

### b.   Constitutional Violation based on Fabrication of Evidence

The Fourteenth Amendment provides in pertinent part, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Fifth Circuit has concluded that the Fourteenth Amendment guarantees a "due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person." *Cole I*, 802 F.3d at 771 ("if any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals." (quoting *Limone v. Condon*, 372 F.3d 39, 45 (1st Cir. 2004)); *see also Morgan v. Chapman*, 969 F.3d 238, 250 (5th Cir. 2020). "Deliberate framing of a person by the state offends the most strongly held values of our nation," and, therefore, is shocking to the conscience. *Cole I*, 802 F.3d at 772–73. A victim of intentional fabrication of evidence by law enforcement officers is denied due process whether he is convicted or acquitted, and even where the false charges do not "survive to the trial stage." *Id.* at 768. To succeed on a fabrication-of-evidence claim under the Fourteenth Amendment, Plaintiffs must show (1) the officers fabricated evidence (2) for the purpose of falsely obtaining a charge and (3) that the evidence influenced the decision to charge.[15] *Id.* at 777. The Court addresses each element in turn.

---

[15] The Court rejects the Officers' citation to earlier Fifth Circuit fabrication-of-evidence cases based on Rule 12(b)(6) standards to support their motion. These cases are of no moment, as the Court is bound by the law of the case. *See* Mot. for Summ. J. 18, ECF No. 221 (citing *Jabary v. City of Allen*, 547 F. App'x 600, 610–11(5th Cir. 2013)) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)) (citing *Estate of Farrar v. Cain*, 941 F.2d 1311, 1313 (5th Cir. 1991)) (citing *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994)).

i.   Whether the Officers Fabricated the Evidence

Hunter and Cassidy maintain that their Statements were not fabricated because in light of the summary judgment evidence (1) the Statements were true, (2) the Statements were not fabricated, just inconsistent, and (3) the Officers were separated following the shooting. Mot. for Summ. J. 7–17, ECF No. 221. For the following reasons, the Court rejects these arguments.

First, the Court rejects Hunter's and Cassidy's contention that their respective statements could not have been fabricated evidence. According to Hunter and Cassidy, their Statements could not have been fabricated because they were true statements and their account was confirmed by Tooke's investigation and eyewitnesses to the shooting. Mot. for Summ. J. 10–14, ECF No. 221 (citing Defs.' App. 147, 150, 222, 548–49, 553, 554–55, 561–64, Vol. 2 at 568–70, ECF No. 222). The *Cole en banc* Fifth Circuit already foreclosed this conclusion at the summary judgment stage:

> What occurred next is disputed. Viewing the summary judgment evidence and drawing reasonable inferences in the light most favorable to the non-movant Coles, the district court determined that a reasonable jury could find the following: Ryan backed out from the tree line in front of Hunter and Cassidy, "unaware of the Officers' presence." Ryan was holding his handgun pointed to his own head, where it remained. "[Ryan] never pointed a weapon at the Officers," and "never made a threatening or provocative gesture towards [the] Officers." "Officers [Cassidy and Hunter] had the time and opportunity to give a warning" for Ryan to disarm himself. However, the officers provided "no warning . . . that granted [Ryan] a sufficient time to respond," such that Ryan "was not given an opportunity to disarm himself before he was shot." Hunter and Cassidy then shot Ryan multiple times. Officer Hunter's first shot struck Ryan as he was oriented away from the officers at a 90-degree angle—that is, he was not facing Officer Hunter. Following impact of the first shot, as Ryan's body turned or fell towards Hunter, he shot him a second time. As an involuntary reflex to being shot, Ryan pulled the trigger, shooting himself in his temple. But the officers did not know that.

*Cole en banc*, 935 F.3d at 448–49, 457 (noting the "evolving" nature of the statements, affidavits, and depositions provided by the Officers). Based on the same summary judgment evidence, the Fifth Circuit already found a genuine dispute of material fact concerning the events that transpired

on October 25, 2010. As such, Hunter and Cassidy may not now assert the truth of the matter as a defense when the underlying material facts are in dispute.[16]

Second, Hunter and Cassidy maintain that, because their Statements were inconsistent, they did not conspire to fabricate the Statements. Mot. for Summ. J. 10, 12, ECF No. 221 (citing Defs.' App. 25, 28, 30–32, ECF No. 222). Plaintiffs disagree, contending that the Officers' 2014 statements were detailed and unequivocal about both the pointing of the gun and the command. Pls.' Resp. 16, ECF No. 265.[17] The Court concludes that, even if the inconsistency of the Statements is material to their alleged fabrication, Hunter's and Cassidy's respective Statements largely track each other in the operative language that would justify their use of deadly force, language that ultimately led to Cole's criminal charge based on assault. Cassidy stated: "the suspect turned toward Officer Hunter and pointed the gun at him. At that point I was in immediate fear for the life of Officer Hunter and myself[.] I fired three rounds at the suspect[,] and the suspect fell[.]" Defs.' App 28, ECF No. 222 ("Cassidy's Statement"). Hunter stated: "Before I had the chance to give any commands, the suspect suddenly turned towards me and pointed a dark colored handgun directly at me. I was in fear of my life as well as the lives of Lt[.] Cassidy and Officer Carson. I then immediately fired four rounds at him with my duty weapon." Defs.' App 31–32, ECF No. 222 ("Hunter's Statement"). Even if the Statements differed slightly, Cassidy and Hunter unequivocally and consistently stated (1) Ryan Cole pointed his gun at Hunter and (2) they shot in

---

[16] The Fifth Circuit's holding also does not ineluctably lead to Plaintiffs' conclusion that "[t]he same holding necessarily applies in the fabrication context as it did for the excessive force claims because they are both based on the Officers' disputed, fictitious and evolving narratives." Pls.' Resp. 15–16, ECF No. 265.

[17] Plaintiffs note that Carson did not corroborate Hunter's and Cassidy's stories originally, but later did. Pls.' Resp. 23–24, ECF No. 265 (Pls.' App. 116, 238-39, ECF No. 266).

fear for Hunter's life—a justification and basis for an aggravated assault charge against Cole. The Court rejects the inconsistency of the statements as conclusive proof that they were not fabricated.

Third, Hunter and Cassidy argue that the Statements were not fabricated because they were separated immediately following the shooting, and Tooke did not speak with the Officers after the night of the shooting. Mot. for Summ. J. 15–17, ECF No. 221. Plaintiffs contend that the conspiracy commenced immediately following the shooting when Hunter told Cassidy that he would say that he fired because Cole turned and pointed a gun at him and Cassidy. Pls.' Resp. 23, ECF No. 265 (citing Pls.' App. 119, ECF No. 266). Whether the Officers were separated is immaterial to the fabrication-of-evidence claim. Even if Hunter and Cassidy were later separated, they were together immediately following the shooting, aiding the investigators in a walk through, and returning to the police station, despite internal policies requiring their immediate separation and administrative leave. *See* Pls.' Resp. 24, ECF No. 265 (citing Pls.' App. 16, 119–21, ECF No. 266); *see also* Defs.' App. 50, ECF No. 222 ("Any employee that uses any deadly force intentionally or accidentally resulting in the serious injury or death of any person shall be placed on administrative leave until a preliminary administrative review can be conducted."). Viewing the evidence in the light most favorable to the non-movant Plaintiffs and drawing all reasonable inferences in their favor, the Court concludes that a genuine dispute of material fact exists as to whether Hunter and Cassidy fabricated evidence.

Hunter and Cassidy, in reply, assert that, even if the Court finds a genuine dispute of material fact, disputed evidence alone does not meet the more rigorous requirement for fabrication of evidence. Defs.' Reply 16, ECF No. 273 (citing *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3rd Cir. 2014)) (citing *Black v. Montgomery Cty.*, 835 F.3d 358, 372 (3rd Cir. 2016). Hunter and Cassidy contend that because the *Cole I* panel adopted the rationale in *Halsey*, 750 F.3d at 295, to arrive at

its holding, this Court should adopt the Third Circuit's heightened standard for a Fourteenth Amendment fabrication-of-evidence claim to survive summary judgment: "[t]here must be 'persuasive evidence supporting a conclusion that the proponents of the evidence' are aware that [the] evidence is incorrect or that the evidence is offered in bad faith." *Black*, 835 F.3d at 372 (quoting *Halsey*, 750 F.3d at 295). The Court declines to depart from the law of the case to wholesale adopt the test set forth in the Third Circuit—the Fifth Circuit did not do so in *Cole I* or *Cole en banc*. But even if the Court did adopt the Third Circuit's standard, Hunter and Cassidy's argument is of no moment.

This is not a battle of facts; the summary-judgment record is littered with facts that could independently lead to the reasonable inference that Cassidy and Hunter fabricated evidence.[18] *See infra* Part III(D)(2). Hunter's and Cassidy's unequivocal Statements stand in stark contrast to the actual evidence in the ballistics analysis and the stippling observed around Cole's head wound. *Cole en banc*, 935 F.3d at 450. Neither officer was treated as a suspect, leaving Cole as the only potential suspect. *See* Pls.' App. 22–23, ECF No. 266 (The Officers actively participated in the walk throughs with investigators). Their interviews and writing of their Statements were not recorded like those of other witnesses. Defs.' App. 125, ECF No. 222. Neither Sachse PD Internal Investigator Chris Burns ("Burns") nor any Garland PD officer gave a *Garrity*

---

[18] The Court rejects Plaintiffs' attempts to extend liability to Carson, Hunter, and Cassidy for the alleged conduct of Detective Tooke, Investigator Burns, or any other state actor simply because Plaintiffs allege a conspiracy. *See* Pls.' Resp 20, ECF No. 265 (citing *Turner v. Upton Cty.*, 915 F.2d 133, 137 (5th Cir. 1990) (discussing whether a sheriff's and district attorney's alleged participation in a conspiracy will suffice to impose *liability on a county where the plaintiff sued all three*)). Those actions and related facts, assuming their truth, are not material with respect to the dispositive issue before the Court, whether Carson, Hunter, or Cassidy fabricated evidence for the purpose of charging Cole with a crime. *See, e.g.,* Pls.' App. 1125–28, 1130–32, ECF No. 266 (Tooke's "negligent" failure to produce Cole's medical records showing stippling on his head as part of the investigative file from Garland PD despite a court order to produce it entirely). Viewing the evidence in the light most favorable to Plaintiffs and drawing inferences in their favor, the evidence—even limited to Hunter's and Cassidy's actions, purpose, and the circumstances surrounding both—still persuasively leads to an inference that they acted with knowledge and in bad faith.

or *Miranda* warning to Hunter and Cassidy because, according to Burns, he "didn't believe they were the subject of a criminal investigation." Pls.' App. 1095, 1196, ECF No. 266. The evidence is persuasive. *See Black*, 835 F.3d at 372; *Halsey*, 750 F.3d at 295. Based on the foregoing, a reasonable jury could find that Hunter's and Cassidy's unequivocal Statements are demonstrably false and that Hunter and Cassidy, among others, knew their Statements were deceitful.

> ii.   Whether the Statements were for the Purpose of Charging Ryan Cole with a Crime

Hunter and Cassidy maintain that, even if a jury could find the evidence is false, they and Carson could not have conspired to fabricate statements for the purpose of charging Cole with a crime because they believed that they were participating solely in their own criminal investigation when they gave their Statements. Mot. for Summ. J. 8–10, ECF No. 221 (citing Defs.' App. 16–17, 20–21, 141–42, 98–99, 102, 110, 146, 25, 27–28, 30-32, 124–25, 164–530, 568–70, ECF No. 222). For the reasons that follow, the Court rejects this argument.

Cassidy and Hunter were involved actively in the immediate October 25, 2010, investigation cited readily in Cole's arrest affidavit. *See* Pls.' App. 19–23, ECF No. 266. Police officers like Cassidy and Hunter are aware that statements made as a witness and victim could result in the arrest and prosecution of another. Pls.' App. 267, 957-61, 962-63, ECF No. 266. In the Garland PD file, Cole is listed as both the only "Victim" and the only "Suspect[,]" and the Officers' statements were never placed in the statement of suspects' portion of the file. Defs.' App. 166, 305, 319, ECF No. 222. Cassidy and Hunter did not realize they were being investigated as suspects in any investigation until several days later when they invoked their *Miranda* rights. Pls.' App. 11–15, ECF No. 266 (at that time, they did not revise the relevant portions of their statements that led to Cole's arrest); *see id.* at 11 ("All I know is that when I saw him point the gun at me I was immediately in fear of my life as well as the lives of Lt Cassidy and [] Carson who were

somewhere behind me and also out in the open."). Even then, they invoked their rights for the Sachse PD *internal* investigation—not Garland PD's criminal investigation which the Officers contend proceeded separately. *See id.*; *see* Mot. for Summ. J. 8–10, ECF No. 221.

Viewing the evidence in the light most favorable to the non-movant Plaintiffs and drawing all reasonable inferences in their favor, on the summary judgment record before the it, the Court arrives at the opposite inference—that Hunter and Cassidy were participating in the walk throughs and offered statements *only* for the purpose of charging Ryan Cole at the time. Accordingly, the Court concludes that a genuine dispute of material fact exists as to whether Hunter's and Cassidy's purpose for making their statements was to charge Cole with a crime.

### iii.   Whether the Statements Influenced the Decision to Charge

Hunter and Cassidy's motion again invokes *Manuel* and *Melton* to argue that their Statements did not influenced the decision to charge Cole with aggravated assault of a peace officer. *See* Mot for Summ. J. 24–25, ECF No. 222. The Court again declines to re-evaluate the law of the case by injecting Fourth Amendment cases into the Fourteenth Amendment fabrication-of-evidence analysis. Viewing the arrest affidavit and indictment in the light most favorable to Plaintiffs leads to the reasonable inference that *only* Hunter's and Cassidy's Statements provided the factual underpinning to charge Cole with aggravated assault of a peace officer. *See* Tex. Penal Code 22.01, 22.02 (a)(2) ("A person commits an offense if the person . . . intentionally or knowingly threatens another with imminent bodily injury" and "the person . . . uses or exhibits a deadly weapon during the commission of the assault."); *see also* Pls.' App. 19–22, 23, ECF No. 266 ("Officer Michael Hunter saw Cole emerge from the treeline [sic] and lower his handgun, pointing it at Hunter. Hunter gave a command to Cole to drop his gun and then fired."). No other witnesses could corroborate the intentional or knowing threat made by Cole by allegedly pointing

his gun at Hunter. *See id.* ("[Other witnesses] observed the shooting but did not see Cole's gun and could not tell which officers [] fired how many shots."). Accordingly, based on this evidence and the summary judgment record as a whole, the Court finds that a genuine dispute of material fact exists as to whether Cassidy's and Hunter's Statements influenced the decision to charge Cole. *See* Pls.' App. 19–22, 23, ECF No. 266.

Based on the foregoing and the summary judgment evidence, the underlying dispute is beyond a "he-said, she-said" dispute, and is a question best left to a jury. *See Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). "It will be for a jury to resolve what happened on October 25, 2010." *Cole en banc*, 953 F.3d at 457. Thus, the Court concludes that Plaintiffs have shown a genuine dispute of material fact as to their Count Four, Fourteenth Amendment fabrication-of-evidence claim, against Hunter and Cassidy sufficient to survive summary judgment.

Because Plaintiffs carried their burden of showing a Fourteenth Amendment violation by fabrication of evidence and because no reasonable officer at the time could have believed fabricating evidence for the purpose of charging a citizen with a crime was lawful activity, *Cole I*, 802 F.3d at 777, the Court will deny Cassidy's and Hunter's requests for qualified immunity and will deny summary judgment as to Plaintiffs' fabrication-of-evidence claim against Cassidy and Hunter. Count Four will proceed to trial.

## IV.    CONCLUSION

Based on the foregoing, the Court finds (1) that Plaintiffs have failed to raise a genuine dispute of material fact as to Count Two under *Monell* against the City; (2) that Plaintiffs abandoned Count Three against the City; (3) that Plaintiffs have failed to raise a genuine dispute

of material fact as to Count Four against Carson; and (4) that Plaintiffs have raised a genuine dispute of material fact as to Count Four against Hunter and Cassidy for conspiring to fabricate evidence in violation of the Fourteenth Amendment, and, accordingly, they are not entitled to summary judgment based on qualified immunity or summary judgment based on the merits. Based on the reasoning above, the Court finds that Defendants' Motion for Summary Judgment (ECF No. 220) should be and is hereby **GRANTED in part** and **DENIED in part**.

The Court **GRANTS** the Motion as to Count Two against the City and Count Four as to Carson only. Because Plaintiffs abandoned Count Three, the Court **GRANTS** judgment as a matter of law in favor of the City as to Count Three. In light of the express abandonment of Count Three, the Court **DENIES as moot** the motion as to Count Three. Accordingly, Plaintiffs' section 1983 *Monell* claim (Count Two) against the City, section 1983 failure-to-train claim (Count Three) against the City, and fabrication-of-evidence claim (Count Four) against Carson are hereby **DISMISSED with prejudice**. The Court **DENIES** the motion as to Plaintiffs' fabrication-of-evidence claim (Count Four) against Hunter and Cassidy and **DENIES** the motion as to Hunter's and Cassidy's requests for qualified immunity as to Count Four.

Accordingly, the claims remaining for trial are (1) Count One against Hunter and Cassidy alleging use of excessive force in violation of the Fourth Amendment and (2) Count Four against Hunter and Cassidy alleging fabrication of evidence in violation of the Fourteenth Amendment.

**SO ORDERED** on this **29th day** of **October, 2020**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**